USDC SCAN INDEX SHEET

















CGL   8/18/05   9:58
3:05-CV-00940   THOMASSON V. GC SERVICES LTD PRT
*6*
*AMDCMP.*

1  ROBERT L. ARLEO, ESQ. (RA 7506)
   **LAW OFFICES OF ROBERT L. ARLEO**
2  225 East 79th Street, Suite 2B
3  New York, NY 10021
   Telephone: (212) 517-9967
4  Facsimile:  (212) 517-2919

5  ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
   ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
6  **SCHROTH & SCHROTH**
7  2044 First Avenue, Suite 200
   San Diego, CA 92101-2079
8  Telephone: (619) 233-7521
   Facsimile:  (619) 233-4516
9

10 CHRISTOPHER K. MONELT, ESQ. (SBN 224478)
   **LAW OFFICES OF CHRISTOPHER K. MONELT**
11 2044 First Avenue, Suite 200
   San Diego, CA 92101-2079
12 Telephone: (619) 233-8034
13 Facsimile:  (619) 233-4516

14 Attorneys for Plaintiffs, ANDREW T.
   THOMASSON, REBECCA J. THOMASSON,
15 MACDONALD P. TAYLOR JR., CHENOA R.
   TAYLOR, and all others similarly situated
16

17                    **UNITED STATES DISTRICT COURT**
18                   **SOUTHERN DISTRICT OF CALIFORNIA**
19

20 ANDREW T. THOMASSON, REBECCA J.        )   CASE NO.  3:05cv940 LAB (JFS)
   THOMASSON, MACDONALD P. TAYLOR        )
21 JR., and CHENOA R. TAYLOR on behalf of  )
   themselves and all others similarly situated, )  **FIRST AMENDED CLASS ACTION**
22                                          )   **COMPLAINT AND DEMAND FOR JURY**
                                           )   **TRIAL**
23              Plaintiffs,                 )
                                           )
24        vs.                              )
                                           )
25 GC SERVICES LIMITED PARTNERSHIP,       )
   and DOES 1 through 25 inclusive,        )
26                                          )
              Defendants.                   )
27 ─────────────────────────────────────── )

28 ///

                                -1-

1

**I.**

2

**PRELIMINARY STATEMENT**

3

1.    Plaintiffs, ANDREW T. THOMASSON, REBECCA J. THOMASSON,

4

MACDONALD P. TAYLOR JR., and CHENOA R. TAYLOR (collectively referred to as

5

"Plaintiffs"), on their own behalf and on behalf of the class they seek to represent, bring this

6

action for illegal practices of Defendant GC SERVICES LIMITED PARTNERSHIP

7

(hereinafter referred to as "Defendant" or "GC SERVICES") and those individual DOE

8

Defendants who control the illegal policies and practices used by GC SERVICES.

9

2.    Plaintiffs allege that Defendant GC SERVICES has violated the Fair Debt

10

Collection Practices Act ("FDCPA") and the laws of the States of California, Connecticut,

11

Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, Nevada, New Hampshire,

12

Pennsylvania, Washington, and Puerto Rico. Plaintiffs seek statutory damages for themselves

13

and the class, costs, attorneys fees under the FDCPA, and under the law of the foregoing listed

14

states and commonwealth. Plaintiffs further seek injunctive relief pursuant to the applicable

15

laws of the foregoing listed states and commonwealths.

16

**II.**

17

**JURISDICTION**

18

3.    Jurisdiction of this Court arises under 15 U.S.C. sec. 1692k and 28 U.S.C. sec.

19

1331. This Court also has jurisdiction over Plaintiffs' state/commonwealth statutory claims by

20

virtue of the federal supplemental jurisdiction statute, 28 U.S.C. sec. 1367(a). Furthermore, as

21

to those causes of action alleged pursuant to the laws of the states/commonwealth referenced

22

herein, the Court has original jurisdiction under the Class Action Fairness Act of 2005

23

(hereinafter "CAFA"), 28 U.S.C. sec. 1332(d)(2)(A). Venue is proper herein pursuant to 28

24

U.S.C. sec. 1391.

25

**III.**

26

**PARTIES**

27

4.    Plaintiffs ANDREW T. THOMASSON and REBECCA J. THOMASSON are

28

natural persons residing in the City of Oceanside, San Diego County, California.

-2-

1    5.    Plaintiffs MACDONALD P. TAYLOR JR. and CHENOA R. TAYLOR are

2  natural persons residing in the City of Middletown, New Castle County, Delaware.

3    6.    Defendant GC SERVICES is a legal partnership existing pursuant to the laws of

4  the State of Delaware.  Defendant GC SERVICES maintains a principal place of business

5  located in Houston, Texas.  Defendant GC SERVICES collects, and attempts to collect, debts

6  incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf

7  of creditors.

8    7.    The Defendants, DOES 1 through 25, are natural persons who all reside within

9  the United States and/or are business entities located within the United States.  Said Defendants

10  personally control the illegal practices invoked by Defendant GC SERVICES and are, therefore,

11  all personally liable for said wrongful action.  More particularly, said Defendants personally

12  created, instituted, and oversaw procedures used by persons employed by the defendant GC

13  SERVICES wherein said persons improperly monitored and/or recorded telephone

14  conversations with the Plaintiffs named herein and with the  members of the putative class

15  defined herein.

16    8.    Said Defendants, DOES 1 through 25, ordered and otherwise used funds

17  belonging to Defendant GC SERVICES to acquire the telephonic equipment necessary to

18  improperly record and/or monitor telephone conversations with the Plaintiffs named herein and

19  with the members of the putative class defined herein.  Said Defendants otherwise act, and

20  acted, as agents and/or servants and/or employees and/or representatives and/or affiliates and/or

21  partners and/or stockholders, all in relation to Defendant GC Services.

22                              **IV.**

23                     **FACTUAL ALLEGATIONS**

24    9.    Defendant GC SERVICES is one of the largest collection agencies in the world

25  in terms of monetary amount collected.

26    10.    Through call centers located throughout the United States, Defendant GC

27  SERVICES attempts to collect billions of dollars in actual and alleged debts via the use of

28  intrastate and interstate telephone lines.

-3-

11.    Each of the call centers operated by Defendant GC SERVICES constitutes a high-tech debt collection operation with scores of collectors located in cubicles initiating and receiving telephone contact with persons located in each of the United States and Puerto Rico.

12.    On January 13, 2005, the San Diego Union-Tribune published an article '*On hold? Hold On–Someone's listening. Firms' call monitors can tap in anytime.*" The article states (in part) "Call monitors eavesdrop on millions of exchanges a year.  Overall, about 2 per cent of the hundreds of millions of calls made to call centers are monitored by a company's own managers or, increasingly, by third-party monitoring companies....Most callers do not realize that they may be taped even while they are in hold....From any corner of the globe, call monitors with just a computer and an internet connection can oversee workers virtually anywhere."

13.    According to information published on the website operated by Defendant GC SERVICES, it acts as a third-party monitor as described in the newspaper article referenced above in Paragraph 11.

14.    Defendant GC SERVICES' debt collection and teleservices clients include money-center banks, credit card companies and telecommunications companies as well as federal, state, and municipal governments.  Defendant GC SERVICES has services contracts with Fortune 500 companies and industry participants in automotive, retail, telecommunications, banking, financial services, and other sectors.  Defendant GC SERVICES also has numerous contracts with federal, state, and municipal governments including courts, student loan programs, and utilities.  See Exhibit "A."

15.    Defendant GC SERVICES has been recognized as "a top provider of inbound and outbound call center management solutions" and provides, among other teleservices, "third party quality monitoring."

16.    Defendant GC SERVICES provides "call monitoring services" and has "over 100 quality observation analysts that evaluate more than 100,000 customer contacts monthly at hundreds of sites across the globe." See Exhibit "A."

17.    Clients who retain the Defendant GC SERVICES "may randomly select recorded contacts to verify that (Defendant's) analysts have scored them accurately." See Exhibit "A."

-4-

18.    Defendant GC SERVICES has "an extensive infrastructure and network monitoring process" which "maximizes" its "ability to capture, interpret, report, and protect client data."  See Exhibit "A."

19.    Defendant GC SERVICES also maintains several hi-tech calling centers within the State of California including offices located in San Diego, Laguna Hills, Irwindale, and Baldwin Park, California.

20.    Defendant GC SERVICES trains its telephone operators to use false, deceptive, and misleading collection tactics, which violates the prohibition under 15 U.S.C. 1692e against the use of false, deceptive, and misleading debt collection practices.  Defendant GC SERVICES also trains its telephone operators to violate the various two party telephone recording/monitoring statutes as described and set forth herein.

**V.**

**FACTS REGARDING PLAINTIFF ANDREW T. THOMASSON**

21.    Plaintiff, ANDREW T. THOMASSON, was alleged by Defendant GC SERVICES to have incurred a personal debt in the amount of $28.61 to MCI Company.

22.    Said alleged obligation is a "debt" as defined in the FDCPA.

23.    In the attempt to collect said alleged debt Defendant GC SERVICES sent a communication dated April 18, 2005 to Plaintiff, ANDREW T. THOMASSON.  A copy of said communication is attached hereto as Exhibit "B."

24.    That on or about April 25, 2005, Plaintiff, ANDREW T. THOMASSON, telephoned Defendant GC SERVICES at the toll-free 800 number set forth its April 18, 2005, correspondence attached hereto as Exhibit "B."  Said telephone number is answered at the Baldwin Park, California call center maintained by Defendant GC SERVICES.

25.    That at the time Plaintiff, ANDREW T. THOMASSON, telephoned Defendant GC SERVICES as described above in Paragraph 23, he spoke with a debt collector employed by Defendant GC SERVICES who identified herself as "Ashley."

26.    That during the telephone conversation with "Ashley," Plaintiff, ANDREW T. THOMASSON, inquired of her if the telephone conversation was being recorded or monitored.

-5-

27.     That in response to the inquiry described above in Paragraph 23, the person who identified herself as "Ashley" stated that the telephone conversation might be monitored by another person employed by Defendant GC SERVICES, but that she was not allowed to advise any debtor whether their call was being monitored.

28.     Plaintiff, ANDREW T. THOMASSON, terminated the above telephone conversation after being advised that the conversation may have been monitored.

## VI.

### FACTS REGARDING PLAINTIFF REBECCA J. THOMASSON

29.     On or about January 11, 2005 and February 15, 2005, Plaintiff, REBECCA J THOMASSON, received debt collection letters from the Defendant GC SERVICES, which alleged that Plaintiff, REBECCA J. THOMASSON, was indebted in the amount of $25.00 to an entity doing business as "Telecheck."

30.     That on or about January 11, 2005, Plaintiff, REBECCA J THOMASSON, contacted Defendant GC SERVICES via telephone to discuss the alleged debt referenced above in Paragraph 28.  At the time of said telephone call, Plaintiff, REBECCA J. THOMASSON, spoke with an unidentified female employed by Plaintiff, REBECCA J. THOMASSON.  At no time during said telephone conversation was Plaintiff, REBECCA J. THOMASSON, advised that the call might be recorded and/or monitored.

31.     On or about February 15, 2005, Plaintiff, REBECCA J. THOMASSON, contacted Defendant GC SERVICES via telephone.  At the time of said telephone call the Plaintiff, REBECCA J. THOMASSON, spoke with an unidentified female employed by Defendant GC SERVICES.  At no time during said telephone conversation was Plaintiff, REBECCA J. THOMASSON, advised that the call might be recorded and/or monitored.

## VII.

### FACTS REGARDING PLAINTIFF MACDONALD P. TAYLOR, JR.

32.     On or about July 13, 2005 Plaintiff, MACDONALD P. TAYLOR, JR., was contacted by a person employed by Defendant GC SERVICES who identified herself as "Deborah Robinson." Ms. Robinson advised Plaintiff, MACDONALD P. TAYLOR, JR., that

-6-

1   she was calling in conjunction with an attempt to collect an alleged debt owed to American

2   Express.

3         33.    In response to the demand for payment by Deborah Robinson, Plaintiff,

4   MACDONALD P. TAYLOR, JR., advised her that he disputed the claims for payment as he

5   had satisfied the alleged debt in full.

6         34.    Between July 13, 2005, and August 16, 2005, Plaintiff, MACDONALD P.

7   TAYLOR, JR., has received various debt collection telephone calls from persons employed by

8   Defendant GC SERVICES. Said persons employed by Defendant GC SERVICES have advised

9   Plaintiff, MACDONALD P. TAYLOR, JR., that he was being "investigated for fraud" and that,

10  pursuant thereto, he would be fired by his employer. Said persons employed by Defendant GC

11  SERVICES have also left threatening telephone messages stating that Plaintiff, MACDONALD

12  P. TAYLOR, JR., was being "investigated for fraud" and that, pursuant thereto, he would be

13  fired by his employer.

14        35.    As a result of the baseless threats described above in Paragraphs _____ , the

15  Plaintiff, MACDONALD P. TAYLOR, JR., has had his job placed in jeopardy and has

16  otherwise been compelled to disclose personal financial information to his employer that he

17  would not have otherwise chosen to disclose.

18        36.    At no time during any of said telephone conversations did Defendant GC

19  SERVICES ever advise Plaintiff, MACDONALD P. TAYLOR, JR., that the telephone calls

20  might be recorded and/or monitored.

21                                **VIII.**

22        **FACTS REGARDING PLAINTIFF CHENOA R. TAYLOR**

23        37    On August 8, 2005, Deborah Robinson of Defendant GC SERVICES contacted

24  the mother of Plaintiff, CHENOA R. TAYLOR, and advised her that she was searching for

25  Plaintiff, CHENOA R. TAYLOR. Deborah Robinson further led the mother of Plaintiff,

26  CHENOA R. TAYLOR, to believe that Plaintiff, CHENOA R. TAYLOR, was being

27  investigated for fraud.

28  / / /

-7-

38.     On August 16, 2005, Plaintiff, CHENOA R. TAYLOR, contacted Deborah Robinson of Defendant GC SERVICES via telephone.  During the ensuing telephone conversation, Deborah Robinson advised Plaintiff, CHENOA R. TAYLOR, that she was under "federal investigation" and "under investigation" by the parent of the entity which employs her husband, Plaintiff, MACDONALD P. TAYLOR, JR..

39.     At no time during said telephone conversation did Defendant GC SERVICES ever advise Plaintiff, CHENOA R. TAYLOR, that the telephone call might be recorded and/or monitored.

IX.

POLICIES AND PRACTICES COMPLAINED OF

40.     It the policy and practice of Defendant GC SERVICES to initiate telephone communications with persons, such as the Plaintiffs named herein, and to accept telephone communications from persons, such as the Plaintiffs named herein, and to record and/or monitor and/or eavesdrop upon said telephone calls, without advising these persons that said telephone calls are being recorded and/or monitored and/or eavesdropped upon, all in violation of the relevant state/commonwealth laws prohibiting same, and which conduct otherwise constitutes false, deceptive and misleading debt collection means in violation of the FDCPA.  Said false, deceptive, and misleading conduct occurs from the fact that persons engage in these telephone conversations, wherein said persons may have revealed personal financial information, without knowing that the telephone conversations may be recorded and/or monitored and/or eavesdropped upon.

X.

CLASS ALLEGATIONS

41.     This action is brought on behalf of a class consisting of all persons who engaged in at least one telephone conversation with a person employed by Defendant GC SERVICES participating therein and who have had said conversations with a GC SERVICES employee recorded and/or monitored and/or eavesdropped upon.

/ / /

-8-

42.   The class period is: a) in regard to the FDCPA claims, one year prior to May 4, 2005; and b) in regard to the claims brought under the laws of those states/commonwealth listed herein, in conjunction the statute of limitations relevant to each state/commonwealth statute concerning the recording and/or monitoring and/or eavesdropping upon telephone conversations.

43.   Plaintiffs allege, on information and belief, that the class is so numerous that joinder of all members is impractical.

44.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  The principal issue is whether Defendant GC SERVICES violated the FDCPA and the laws of the states/commonwealth named herein regarding recording and/or monitoring and/or eavesdropping upon telephone calls.  These common questions of law and fact include, for example:

(a)   whether the Defendant GC SERVICES has, within the statutory time periods, intentionally and systematically monitored and/or tape recorded and/or eavesdropped upon telephone conversations between alleged debtors and debt collectors employed by Defendant GC SERVICES; and

(b)   whether those recorded and/or monitored and/or eavesdropped upon telephone conversations, involved "confidential communications" within the meaning of the applicable states/commonwealth statutes.

45.   The Plaintiffs' claims are typical of the class members.  All are based upon the same facts and legal theories.

46.   The Plaintiffs will fairly and adequately protect the interests of the class.  They have retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions.  Neither Plaintiffs nor their counsels have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

47.   Certification of a class under Fed. R. Civ. P. 23(b)(3) is appropriate in that questions of law and fact common to the class defined herein predominate over any questions

-9-

1   affecting only individual members of the class and a class action is superior to other methods

2   for the fair and efficient adjudication of the herein controversy since individual joinder of all

3   members would be impracticable.  A class action will allow a large number of similarly situated

4   persons to prosecute their common claims in a single forum efficiently and without unnecessary

5   duplication of effort and expense that individual actions would create.   An important public

6   interest will be served by addressing the matter as a class action, substantial expenses to the

7   litigants and to the judicial system will be realized, and the potential inconsistent or

8   contradictory adjudications will be avoided.

9                                          XI.

10                          **CLASS CLAIMS FOR RELIEF**

11                                          A.

12                          **FIRST CAUSE OF ACTION**

13      **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
                          **(AGAINST ALL DEFENDANTS)**

14

15          48.     Plaintiffs reallege and incorporate by reference the allegations, as more fully set

16   forth above, Paragraphs One (1) through  Forty-Seven (47) of this Complaint as if set forth at

17   length herein.

18          49.     Defendant GC SERVICES violated the FDCPA.  Defendant's violations include,

19   but are not limited to, the following:

20          (a)     Defendant GC SERVICES violated 15 U.S.C. sec. 1692e by using false,

21                  deceptive and misleading means in an attempt to collect alleged

22                  consumer debts.  Specifically, Defendant GC SERVICES did not reveal

23                  to consumers that telephone conversations with collectors might be

24                  recorded and/or monitored and/or eavesdropped upon.  As a consequence,

25                  persons engaged in these telephone conversations, and may have revealed

26                  personal financial information to debt collectors employed by Defendant

27                  GC SERVICES more freely, all to the economic benefit of Defendant GC

28                  SERVICES.

                                          -10-

(b)     Defendant GC SERVICES violated 15 U.S.C. sec. 1692e(2)(A) by falsely
representing the character and legal status of alleged consumer debts.

**B.**

**SECOND CAUSE OF ACTION**

**STATUTORY DAMAGES AND INJUNCTIVE RELIEF
FOR ILLEGAL RECORDING OF CONVERSATIONS
(AGAINST ALL DEFENDANTS)**

50.     Plaintiffs reallege and incorporate by reference the allegations, as more fully set forth above, Paragraphs One (1) through Forty-Nine (49) of this Complaint as if set forth at length herein.

51.     At all times relevant herein the Defendant's collection personnel have routinely communicated with individuals in the United States and Puerto Rico in the course of attempting to collect debts.

52.     The Plaintiffs and other persons compose a class of all persons who had their telephone communications with individuals employed by Defendant GC SERVICES recorded without their consent, in violation of applicable state/commonwealth laws prohibiting the recording of telephone calls without two-party consent.

53.     These states/commonwealth laws include, but are not limited to:  Cal. Pen. Code sec. 630 et seq. (California); Conn. Gen. Stat. Ann. Sec. 52-570d, et seq. (Connecticut); Fla. Stat. Ann. Sec. 934.01, et seq. (Florida); 720 Ill. Comp. Stat. 5/14-1, et seq. (Illinois); Md. Code. Ann., Cts. & Jud. Proc. Sec. 10-401, et seq. (Maryland); Mass. Gen. Laws Ann ch. 272, sec. 99 (Massachusetts); Mich. Comp. Laws Ann. Sec. 750.539, et seq. (Michigan); Mont. Code Ann. Sec. 45-8-213, et seq. (Montana); Nev. Rev. Stat. Ann. Sec. 200.610, et seq. (Nevada); N.H. Rev. Stat. Sec. 570-A:1, et seq. (New Hampshire); 18 Pa. Cons. Stat. Ann. Sec. 5703, et seq. (Pennsylvania); Wash. Rev. Code Ann. Sec. 9.73.010, et seq. (Washington); PR Const. Art. II, sec. 10 (Puerto Rico); and any other similar or related law.

54.     The surreptitiously recorded telephone conversations were "confidential communications," within the meaning of the above applicable state/commonwealth statutes.

-11-

1   Each class member had an objectively reasonable expectation of privacy.  Each class member

2   further had an objectively reasonable expectation that his or her telephone conversation was not

3   being recorded.

4        55.   Pursuant to the applicable state/commonwealth statutes and case law interpreting

5   same, Plaintiffs and each class member has a cause of action for damages.

6        56.   Further, in addition to statutory damages, the Plaintiffs and the putative class

7   seeks and is entitled to a permanent injunction:  (1) to restrain GC Services from recording any

8   future telephone calls with any individual in violation of state/commonwealth law; and (2) to

9   compel GC Services to institute policies and procedures which will educate GC Services

10  employees as to applicable privacy laws and assure that such employees follow such privacy

11  laws.

12  **C.**

13  **THIRD CAUSE OF ACTION**

14  **STATUTORY DAMAGES AND INJUNCTIVE RELIEF**
**FOR ILLEGAL MONITORING/EAVESDROPPING OF CONVERSATIONS**

15  **(AGAINST ALL DEFENDANTS)**

16

17       57.   Plaintiffs reallege and incorporate by reference the allegations, as more fully set

18  forth above, Paragraphs One (1) through Fifty-Six (56) of this Complaint as if set forth at length

19  herein.

20       58.   At all relevant times herein, Defendant GC SERVICES has allowed, enabled, or

21  encouraged certain of its personnel employed by Defendant GC SERVICES to secretly listen in

22  on telephone conversations between persons who are alleged to owe money and individuals

23  employed by Defendant GC SERVICES.

24       59.   The Plaintiffs and others compose a class of all persons who have had their

25  telephone communications with individuals employed Defendant GC SERVICES  monitored

26  and/or eavesdropped upon, in violation of applicable state/commonwealth laws prohibiting the

27  monitoring/eavesdropping upon calls without two-party consent.

28  / / /

-12-

60.     These states/commonwealth laws include, but are not limited to:  Cal. Pen. Code sec. 630 et seq. (California); Conn. Gen. Stat. Ann. Sec. 52-570d, et seq. (Connecticut); Fla. Stat. Ann. Sec. 934.01, et seq. (Florida); 720 Ill. Comp. Stat. 5/14-1, et seq. (Illinois); Md. Code. Ann., Cts. & Jud. Proc. Sec. 10-401, et seq. (Maryland); Mass. Gen. Laws Ann ch. 272, sec. 99 (Massachusetts); Mich. Comp. Laws Ann. Sec. 750.539, et seq. (Michigan); Mont. Code Ann. Sec. 45-8-213, et seq. (Montana); Nev. Rev. Stat. Ann. Sec. 200.610, et seq. (Nevada); N.H. Rev. Stat. Sec. 570-A:1, et seq. (New Hampshire); 18 Pa. Cons. Stat. Ann. Sec. 5703, et seq. (Pennsylvania); Wash. Rev. Code Ann. Sec. 9.73.010, et seq. (Washington); PR Const. Art. II, sec. 10 (Puerto Rico); and any other similar or related law.

61.     The surreptitiously monitored telephone conversations were "confidential communications," within the meaning of the above applicable statutes.  Each class member had an objectively reasonable expectation of privacy.  Each class member further had an objectively reasonable expectation that his or her telephone conversations was not being monitored or eavesdropped upon.

62.     Pursuant to the applicable state/commonwealth statutes, and case law interpreting same, each class member has a cause of action for damages.

63.     Further, in addition to statutory damages, the Plaintiffs and the putative class seeks and is entitled to a permanent injunction: (1) to restrain Defendant GC SERVICES from monitoring and/or eavesdropping upon telephone calls with any persons in violation of state/commonwealth law; and (2) to compel GC SERVICES to institute policies and procedures which will educate GC SERVICES employees as to applicable privacy laws and assure that such employees follow such privacy laws.

## XII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and in favor of the putative class as follows:

/ / /

/ / /

-13-

**A.**

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

A.   Certification of the class pursuant to Rule 23(b)(3);

B.   Statutory damages for the class pursuant to 15 U.S.C. sec. 1692k;

C.   Statutory damages for the plaintiff pursuant to 15 U.S.C. sec. 1692k;

D.   Attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. sec. 1692k; and

E.   For such other and further relief as may be just and proper.

**B.**

## SECOND CAUSE OF ACTION

### STATUTORY DAMAGES AND INJUNCTIVE RELIEF
### FOR ILLEGAL RECORDING OF CONVERSATIONS
### (AGAINST ALL DEFENDANTS)

A.   For a determination that this second cause of action may be maintained as a class action;

B.   For statutory damages in the amounts proscribed by the relevant state/commonwealth statutes;

C.   For attorneys fees, litigation expenses and costs as allowed by the relevant state/commonwealth statutes;

D.   For a permanent injunction to restrain Defendant GC SERVICES from recording any future telephone calls with any person without two-party consent and ordering GC SERVICES to institute such other procedures to prevent further illegal recording activities; and

E.   For such other and further relief as may be just and proper.

/ / /

/ / /

/ / /

-14-

**C.**

**THIRD CAUSE OF ACTION**

**STATUTORY DAMAGES AND INJUNCTIVE RELIEF
FOR ILLEGAL MONITORING/EAVESDROPPING OF CONVERSATIONS
(AGAINST ALL DEFENDANTS)**

A.  For a determination that this second cause of action may be maintained as a class action;

B.  For statutory damages in the amounts proscribed by the relevant state/commonwealth statutes;

C.  For attorneys fees, litigation expenses and costs as allowed by the relevant state/commonwealth statutes;

D.  For a permanent injunction to restrain Defendant GC SERVICES from its monitoring and/or eavesdropping of any future telephone calls with any person without two-party consent and ordering GC SERVICES to institute such other procedures to prevent further illegal monitoring and/or eavesdropping activities; and

E.  For such other and further relief as may be just and proper.

DATED: August 11, 2005                **LAW OFFICES OF ROBERT L. ARLEO**

By: _PS Arleo_ FOR
ROBERT L. ARLEO, ESQ. (RA 7506)
225 East 79th Street, Suite 2B
New York, NY 10021
Telephone: (212) 517-9967
Facsimile:  (212) 517-2919

///

///

///

-15-

DATED:  August 16, 2005

SCHROTH & SCHROTH

By: _____

ROBERT E. SCHROTH, JR, ESQ.
(SBN 212936)
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-8034
Facsimile:  (619) 233-4516

CHRISTOPHER K. MONELT, ESQ.
(SBN 224478)
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-8034
Facsimile:  (619) 233-4516

Attorneys For Plaintiffs, ANDREW T.
THOMASSON, REBECCA J.
THOMASSON, and all others similarly
situated

///
///
///
///
///
///
///
///
///
///
///
///

-16-

## XIII.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE THAT Plaintiffs demand a trial by jury against the Defendants, and each of them, for each cause of action so triable.  Plaintiffs further demand an advisory jury for a factual determination on all equitable claims.

DATED:  August 11, 2005                    **LAW OFFICES OF ROBERT L. ARLEO**

By: _____ FOR

ROBERT L. ARLEO, ESQ. (RA 7506)
225 East 79th Street, Suite 2B
New York, NY 10021
Telephone: (212) 517-9967
Facsimile:  (212) 517-2919

DATED:  August 16, 2005                    **SCHROTH & SCHROTH**

By: _____

ROBERT E. SCHROTH, JR, ESQ.
(SBN 212936)
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-8034
Facsimile:  (619) 233-4516

CHRISTOPHER K. MONELT, ESQ.
(SBN 224478)
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-8034
Facsimile:  (619) 233-4516

Attorneys for Plaintiffs, ANDREW T. THOMASSON, REBECCA J. THOMASSON, MACDONALD P. TAYLOR JR., CHENOA R. TAYLOR, and all others similarly situated

-17-

**EXHIBIT A**



# GC Services™



**ABOUT US**
SOLUTIONS
TECHNOLOGY
NEWS
CAREERS
STAFF

○ our company  »
○ quality first™

**NEWS** ★————
GC captures Gold MVP
Quality Award..

**INTRODUCING**
Quality First™ Culture

LEARN
MORE..

## Quality friends come first.

GC Services enjoys contracts with many Fortune 100 companies, provides services to a wide variety of industries, and has hundreds of clients.

Top industry participants in automotive, retail, telecommunications, banking, financial services and other sectors have relied on GC's unparalleled account management expertise for nearly *half a century*. That same commitment to excellence is reflected in our numerous contracts with federal, state and municipal governments.

**Our Commitment to You**
- Integrity and Innovative Solutions
- Defined Process Controls and Quality Assurance
- Measurable Goals and Objectives to Meet Performance and Service Expectations
- Pricing and Staffing Flexibility

our client

contact
us

contact

*business*

# process

p a r t n e r s h i p s


our brochure

*Your partner since 15*

*A–1*




# GC Services™

we take care o...

ABOUT US
SOLUTIONS
TECHNOLOGY
NEWS
CAREERS
HOME

○ teleservices    »
○ receivables
  management

## Committed to Care.

Considering our diverse range of services, it's no wonder *Customer Inter@action Solutions* magazine consistently recognizes GC Services as a top provider of inbound and outbound call center management solutions:

- Customer care
- Third-party quality monitoring
- Billing and payment information
- SLAM resolution
- Relay services
- Executive escalation
- Directory assistance
- General operator assistance
- Text messaging
- Calling card customer service
- Order entry and application processing
- Back office processing

*business* **process** p a r t n e r s h i p s

NEWS ★
GC captures Gold MVP
Quality Award..

INTRODUCING
Quality First™ Culture



LEARN MORE..



*Your partner since 19*

A - 2

# GC Services™



ABOUT US
SOLUTIONS
TECHNOLOGY ○ architecture
          ○ core
            expertise
NEWS
CAREERS
HOME

**NEWS** ★

GC captures Gold MVP
Quality Award..

**INTRODUCING**
Quality First™ Culture



LEARN
MORE..

*business*
## process
p a r t n e r s h i p s

### Quality Assurance Call Monitoring

Fortune 100 companies and major utilities
have turned to GC Services to evaluate
agent performance in:

- Inbound customer care and sales
- Outbound sales and surveys
- Business-to-Business sales

In fact, GC is one of the most sought after
providers of call monitoring services in the
industry.  We have over 100 quality
observation analysts that evaluate more
than 100,000 customer contacts monthly
at hundreds of sites across the globe.

Our analysts evaluate courtesy, thorough
and accurate call handling, order entry,
sales effectiveness, CSR behaviors, and
use of legal verbiage.  We focus on high
priority calls, provide flexible formats, and

*Your partner since 19*

A - 3



# GC Services™



we take care of

ABOUT US
**SOLUTIONS**
TECHNOLOGY
NEWS
CAREERS
HOME

○ teleservices    >>
○ receivables
  management

**Quality Assurance Call Monitoring**

reports include aggregate quality scores, quality trending information, recommended coaching techniques, recommended strategies for overall quality improvement, and ideas for increasing efficiencies and enhancing revenue.

- Weekly calibration sessions are held with our clients to ensure we are in compliance with all scoring standards. Clients may randomly select recorded contacts to verify that our analysts have scored them accurately.
- We also hold a monthly conference call with our clients' program managers to review the information, answer questions, and ensure everyone understands the reports. This gives GC Services an

quali
monitorir

CRM quality

NEWS ✶

GC captures Gold MVP
Quality Award..

INTRODUCING
Quality First™ Culture



LEARN
MORE..

*business*
## process
### p a r t n e r s h i p s

*Your partner since 19*



A - 4



# GC Services™   Technology-Driven.



ABOUT US
SOLUTIONS
TECHNOLOGY
NEWS
CAREERS
HOME

○ architecture   »
○ core
   expertise

### Defining *what* you *know*
*(and putting it to work).*

Data control is crucial to GC Services' entire business. Our approach to CRM and collection information includes data security standards, data process management, data monitoring, and the tracking of data internally as well as to and from our clients.

This, coupled with an extensive infrastructure and network monitoring process (Firewall Access Control Lists, Automated Virus Update Detection and Distribution, and Intrusion Detection tools, etc.), maximizes our ability to capture, interpret, report, and protect client data.

NEWS ★

GC captures Gold MVP Quality Award..

INTRODUCING
Quality First™ Culture



LEARN MORE..

*business*
## process
### p a r t n e r s h i p s



*Your partner since 19*

A - 5

# GC Services™



...we take care of

ABOUT US
**SOLUTIONS**
TECHNOLOGY
NEWS
CAREERS
HOME

○ teleservices
○ receivables
  management

»

## The Nation's Leader.

**Customer relationships can't always be about TLC. So it helps that GC Services is the largest private collection agency in North America. Numerous private sector entities, including money-center banks, credit card companies, and telecommunications giants rely on GC Services' proven expertise in maximizing revenues from delinquent receivables. The same holds true for governmental entities, including federal, state, and numerous municipal governments.**

**That's why we're the nation's leader in:**

- Debt collection
- Collection technology
- Collection letters
- Skiptracing
- Diligence processes and reporting

NEWS ←————————

GC captures Gold MVP Quality Award..

**INTRODUCING**
Quality First™ Culture



LEARN MORE..

*business*
## process
p a r t n e r s h i p s

*Your partner since 19*

A - 6

**EXHIBIT B**



GC SERV... ...LIMITED PARTNERSHIP
COLLECTION AGENCY DIVISION
6330 GULFTON, HOUSTON, TX. 77081

**YOU OWE**
MCI

PO BOX 2667 (078)
HOUSTON TX 77252-2667
RETURN SERVICE REQUESTED
APRIL 18, 2005
**BALANCE DUE STATEMENT**

BALANCE DUE
$28.61

**ACCOUNT NUMBER**
7GG01067

USE ENCLOSED ENVELOPE AND SEND PAYMENT TO

0478105103025516-0151-01
ANDREW THOMASSON

4567 STRATFORD CIR
OCEANSIDE CA 92056-4905

PO BOX 7850
BALDWIN PARK CA 91706

(800) 811-0626

PLEASE DETACH AND RETURN UPPER PORTION OF STATEMENT WITH PAYMENT.

Dear Andrew Thomasson:
Avoid further collections.
Forward your overdue payment.

DELINQUENT ACCOUNT PLACED IN COLLECTIONS

Due to the seriously overdue status of your account, our
client, MCI, has placed your name with us
for collection activity. As a national collection agency, we
intend to pursue resolution of this debt with you.

The balance listed above is the current amount due and
includes a collection fee of $.00  added by
MCI in accordance MCI's
Tariff No. 1, Sec B7.09, filed with the Federal
Communications Commission.
This is a serious matter.

Resolve this issue by following these steps:
1). Write a check or money order payable to GC Services
for $28.61 .
2). Enclose your payment with the top part of this letter.
3). Mail it.
If you do not make full payment or call us at
(800) 811-0626, we will continue with scheduled collection
efforts per our obligation to MCI. It is in
your best interest to forward your payment.
Jess Moran
Collection Manager

P.S. We intend to continue with collection efforts until
this matter is handled. Fulfill your obligation and
forward your payment.

B-1

GC SERVICES LIMITED PARTNERSHIP

CALIFORNIA RESIDENTS:
THE STATE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT AND THE FEDERAL FAIR DEBT
COLLECTION PRACTICES ACT REQUIRE THAT, EXCEPT UNDER UNUSUAL CIRCUMSTANCES,
COLLECTORS MAY NOT CONTACT YOU BEFORE 8 A.M. OR AFTER 9 P.M. THEY MAY NOT HARASS
YOU BY USING THREATS OF VIOLENCE OR ARREST OR BY USING OBSCENE LANGUAGE.
COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS OR CALL YOU AT WORK IF THEY
KNOW OR HAVE REASON TO KNOW THAT YOU MAY NOT RECEIVE PERSONAL CALLS AT WORK. FOR
THE MOST PART, COLLECTORS MAY NOT TELL ANOTHER PERSON, OTHER THAN YOUR ATTORNEY
OR SPOUSE, ABOUT YOUR DEBT. COLLECTORS MAY CONTACT ANOTHER PERSON TO CONFIRM
YOUR LOCATION OR ENFORCE A JUDGMENT. FOR MORE INFORMATION ABOUT DEBT COLLECTION
ACTIVITIES, YOU MAY CONTACT THE FEDERAL TRADE COMMISSION AT 1-877-FTC-HELP OR
WWW.FTC.GOV.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE.
CONSUMER INFORMATION:
UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER YOUR RECEIPT OF GC SERVICES' INITIAL WRITTEN
NOTICE TO YOU CONCERNING THIS DEBT, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION
THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY GC SERVICES. IF YOU NOTIFY GC
SERVICES IN WRITING WITHIN THE ABOVE DESCRIBED THIRTY (30) DAY PERIOD THAT THE DEBT,
OR ANY PORTION THEREOF, IS DISPUTED, GC SERVICES WILL OBTAIN VERIFICATION OF THE DEBT
OR A COPY OF A JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION OR JUDGMENT
WILL BE MAILED TO YOU BY GC SERVICES. UPON YOUR WRITTEN REQUEST WITHIN THE ABOVE
DESCRIBED THIRTY (30) DAY PERIOD, GC SERVICES WILL PROVIDE YOU WITH THE NAME AND
ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THE DEMANDS FOR PAYMENT IN THIS LETTER DO NOT REDUCE YOUR RIGHTS TO DISPUTE THIS
DEBT, OR ANY PORTION THEREOF, AND/OR TO REQUEST VERIFICATION WITHIN THE THIRTY (30)
DAY PERIOD AS SET FORTH ABOVE.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ESTE ES UN INTENTO PARA COBRAR UNA DEUDA Y CUALQUIER INFORMACION OBTENIDA SERA
USADA CON ESE PROPOSITO.
INFORMACION AL CONSUMIDOR:
A MENOS QUE USTED, DENTRO DE LOS TREINTA (30) DIAS DE RECIBIR NOTIFICACION ESCRITA
INICIAL RELATIVA A ESTA DEUDA, DISPUTE LA VALIDEZ DE LA DEUDA, O CUALQUIER PARTE DE LA
MISMA, LA DEUDA SERA ASUMIDA COMO VALIDA POR GC SERVICES. SI USTED NOTIFICA A GC
SERVICES POR ESCRITO DENTRO DEL ANTES MENCIONADO PERIODO DE TREINTA (30) DIAS, QUE
LA DEUDA, O CUALQUIER PORCION DE LA MISMA, ES CUESTIONADA, GC SERVICES OBTENDRA
VERIFICACION DE LA DEUDA O UNA COPIA DE DICHA VERIFICACION O DICTAMEN. SI USTED LO
SOLICITA POR ESCRITO DENTRO DEL ANTES MENCIONADO PERIODO DE TREINTA (30) DIAS, GC
SERVICES LE COMUNICARA EL NOMBRE Y DIRECCION DEL ACREEDOR ORIGINAL, SI FUERA
DISTINTO DEL ACREEDOR ACTUAL.

LAS DEMANDAS DE PAGO DE ESTA CARTA NO REDUCEN SUS DERECHOS DE DISPUTAR ESTA
DEUDA, O CUALQUIER PORCION DE LA MISMA, Y/O A SOLICITAR VERIFICACION DENTRO DEL
PERIODO DE TREINTA (30) DIAS ANTES MENCIONADO.

B-2

1   ROBERT L. ARLEO, ESQ. (RA 7506)
    **LAW OFFICES OF ROBERT L. ARLEO**
2   225 East 79th Street, Suite 2B
3   New York, NY 10021
    Telephone: (212) 517-9967
4   Facsimile:  (212) 517-2919

5   ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
    ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
6   **SCHROTH & SCHROTH, LLC**
    2044 First Avenue, Suite 200
7   San Diego, CA 92101-2079
8   Telephone: (619) 233-7521
    Facsimile:  (619) 233-4516
9
10  CHRISTOPHER K. MONELT, ESQ. (SBN 224478)
    **LAW OFFICES OF CHRISTOPHER K. MONELT**
11  2044 First Avenue, Suite 200
    San Diego, CA 92101-2079
12  Telephone: (619) 233-8034
13  Facsimile: (619) 233-4516

14  Attorneys for Plaintiffs, ANDREW T.
    THOMASSON, REBECCA J. THOMASSON,
15  and all others similarly situated

16
                    **UNITED STATES DISTRICT COURT**
17
                  **SOUTHERN DISTRICT OF CALIFORNIA**
18

19
    ANDREW T. THOMASSON, and MARY JO  )  CASE NO.  3:05cv940 LAB (JFS)
20  MIAL, On Behalf of Themselves and All  )
    Others Similarly Situated,            )
21                                        )  **PROOF OF SERVICE BY U.S. MAIL**
                    Plaintiffs,           )
22                                        )
            vs.                           )  HON. LARRY ALLEN BURNS
23                                        )  Dept.: Courtroom 9, Second Floor
    GC SERVICES LIMITED PARTNERSHIP,      )  Hearing Date: August, 2005
24  and DOES 1 through 25 inclusive,      )  Hearing Time:  11:00 a.m.
                                          )
25                  Defendants.           )  Complaint Filed: May 4, 2005
                                          )
26  _____)

27  ///

28  ///

                              - 18 -

1

2      I, Christopher C. Saldaña, declare as follows:

3      I am, and was at the time of service of the papers herein referred to, over the age of 18

4   years, and not a party to the action. I am employed in the County of San Diego, California,

5   within which county the subject service occurred.    My business address is 2044 First Avenue,

6   Suite 200, San Diego, California 92101.    On August 2, 2005, I served the following

7   document(s):

8      1.      **FIRST AMENDED CLASS ACTION COMPLAINT**

9

10  [ ]     BY FACSIMILE TRANSMISSION. (Code of Civ. Proc. §§ 1013(e) and (f)): to the fax

11  numbers listed on the attached mailing list. The facsimile machine I used complied with Rule

12  2008 and no error was reported by the machine.

13  [ ]     BY CAUSING PERSONAL DELIVERY of the document(s) listed above to the

14  person(s) at the address(es) setforth below.

15  [ XX ] BY MAIL (Code of Civ. Proc. §§ 1013 and 1013(a) as follows:

16      [ ]     By placing a copy thereof for deliver by OVERNIGHT EXPRESS (Code of Civ.

17  Proc. §§ 103(c) and (d).

18      [XX]   By placing a copy thereof for delivery by FIRST CLASS MAIL in a separate

19  envelope addressed to each addressee, respectively listed on the attached mailing list.

20  [ ]     BY ELECTRONIC FILING/SERVICE. On the below date, I caused such document(s)

21  to be Electronically Filed and/or Served through the CourtLink System for the above entitled

22  case to those parties on the Service List maintained on CourtLink's Website for this case. This

23  service reported as complete and a copy of the "JusticeLink Filing Receipt" page will be

24  maintained with the original document(s) in our office.

25  [ ]     BY FEDERAL EXPRESS. (Code of Civ. Proc. §§ 1013 (c). of the document(s) listed

26  above to the person(s) at the address(es) setforth below.

27      I am readily familiar with the firm's practice of collection and processing

28  correspondence for mailing. Under that practice, it would be deposited with the United States

- 19 -

1  Postal Service on the same day with postage thereon fully prepaid at San Diego, California, in

2  the ordinary course of business.  I am aware that, on motion of the party served, service is

3  presumptively invalid if the postal cancellation date or postage meter date is more than once day

4  after the date of deposit for mailing in affidavit.

5         I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct.  Executed on this 16th day of August, 2005, at San Diego,

7  California.

8

9                                   _____

10                                  Christopher C. Saldaña

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

<u>**Andrew T. Thomasson, et. al. v. GC Services Limited Partnership**</u>

**United States District Court, Southern District of California,**

**Case No. 3:05cv940**

<u>**SERVICE LIST**</u>

<u>Counsel for Plaintiff Mary Jo Mial</u>

Ms. Elizabeth J. Arleo, Esq.
Law Offices of Elizabeth J. Arleo, PLC
10085 Carroll Canyon Road, Suite 210-A
San Diego, CA 92131
Telephone: (858) 547-9800
Facsimile:  (858) 547-9880

<u>Counsel for Plaintiff Mary Jo Mial</u>

Mr. Steven A. Wickman, Esq.
Law Offices of Steven A. Wickman
591 Camino De La Rena, Suite 800
San Diego, CA 92108
Telephone: (619) 291-7778
Facsimile:  (619) 278-0765

- 21 -