USDC SCAN INDEX SHEET

















CGL   11/23/05   15:21
3:05-CV-00940   THOMASSON V. GC SERVICES LTD PRT
*16*
*P/A.*

ORIGINAL

1  COLLIER SHANNON SCOTT, PLLC
   Thomas E. Gilbertsen (Pro Hac Vice)
2  3050 K Street, N.W., Suite 400
   Washington, D.C. 20007-5108
3  Telephone: (202) 342-8400
   Facsimile: (202) 342-8451
4
   WRIGHT & L'ESTRANGE
5  A Partnership Including
   Professional Corporations
6    John H. L'Estrange, Jr. (SBN 049594)
   San Diego, California 92101
7  Telephone: (619) 231-4844
   Facsimile: (619) 231-6710
8
9  Attorneys for Defendant GC Services Limited Partnership
10
11              UNITED STATES DISTRICT COURT
12           SOUTHERN DISTRICT OF CALIFORNIA
13
14  ANDREW T. THOMASSON, and MARY      )   CASE NO. 05cv940 LAB (blm)
    JO MIAL, On Behalf of Themselves and )
15  All Others Similarly Situated,       )   **DEFENDANT GC SERVICES L.P.'s**
                                         )   **MEMORANDUM OF POINTS AND**
16            Plaintiffs,                )   **AUTHORITIES IN SUPPORT OF**
                                         )   **MOTION FOR PARTIAL JUDGMENT**
17  v.                                   )   **ON THE PLEADINGS**
                                         )
18  GC SERVICES LIMITED                  )
    PARTNERSHIP, and DOES 1 through 25,  )
    inclusive,                           )
19                                       )   Date:   January 17, 2006
            Defendants.                  )   Time:  10:30 a.m.
20  _____ )   Courtroom:   9
21
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.    THE COMPLAINT'S "MONITORING" CLAIMS SHOULD
      BE DISMISSED BECAUSE CIPA DOES NOT APPLY TO
      CALLS MONITORED BY A PARTY TO THE CONVERSATION
      IN THE ORDINARY COURSE OF BUSINESS ........................................ 3

II.   THE SECOND AND THIRD CAUSES OF ACTION ARE
      PREEMPTED BY A FEDERAL STATUTE EXPRESSLY
      AUTHORIZING MONITORING AND RECORDING
      IN THE ORDINARY COURSE OF BUSINESS ........................................ 8

III.  PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION
      SHOULD FAIL BECAUSE THEY NEVER ALLEGE
      THAT THEIR OWN TELEPHONE CALLS WITH
      GC SERVICES WERE MONITORED OR RECORDED ........................... 10

CONCLUSION ................................................................................................. 11

i

1

## TABLE OF AUTHORITIES

2

3

### CALIFORNIA CASES

4
*Black v. Bank of America,*
   30 Cal.App.4th 1 (1994)...................................................................................... 4

5

*Freeman v. San Diego Ass'n of Realtors,*
6   77 Cal.App.4th 171 (1999)................................................................................. 5

7
*Friddle v. Epstein,*
   16 Cal.App.4th 1649 (1993).............................................................................. 10

8
*Halpin v. Superior Court,*
9   6 Cal.3d 885 (1972) ............................................................................................ 9

10
*People v. Mahoney,*
   47 Cal. App. 3d 699 (1975)................................................................................. 9

11

*Reynolds v. Bement,*
12   36 Cal.4th 1075 (2005) ....................................................................................... 4

13
*Ribas v. Clark,*
   38 Cal.3d 355 (1985) .................................................................................... 3, 10

14

*Rogers v. Ulrich,*
15   52 Cal.App.3d 894 (1975).................................................................................. 4

16
*Shoemaker v. Myers,*
   52 Cal.3d 1 (1990) ............................................................................................. 4

17

*Warden v. Kahn,*
18   99 Cal.App.3d 805 (1979)................................................................................. 4

19

### FEDERAL CASES

20
*Amati v. Woodstock,*
   176 F.3d 952 (7th Cir. 1999)............................................................................. 8

21

*Arias v. Mutual Cent. Alarm Serv., Inc.,*
22   202 F.3d 553 (2d Cir. 2000).............................................................................. 8

23
*Briggs v. American Air Filter Co., Inc.,*
   630 F.2d 414 (5th Cir. 1980).............................................................................. 9

24

*Conley v. Gibson,*
25   355 U.S. 41 (1957)............................................................................................. 3

26
*Copperweld Corp. v. Independence Tube Corp.,*
   467 U.S. 752 (1984)............................................................................................ 4

27

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,*
28   132 F.3d 526 (9th Cir.1997)............................................................................... 2

ii

*Frierson v. Goetz,*
    227 F. Supp. 2d 889 (M.D. Tenn. 2002) ................................................................ 9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542 (9th Cir.1990) .............................................................................. 2

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ............................................................................... 3

*Libas Ltd. v. Carillo,*
    329 F.3d 1128 (9th Cir. 2003) ............................................................................. 3

*Miller v. Indiana Hosp.,*
    562 F. Supp. 1259 (W.D. Pa. 1983) .................................................................... 2

*Moran v. Peralta Comm. College Dist.,*
    825 F. Supp. 891 (N.D. Cal. 1993) ..................................................................... 2

*Nix v. O'Malley,*
    160 F.3d 343 (6th Cir. 1998) ............................................................................... 9

*Tobman v. Cottage Woodcraft Shop,*
    194 F. Supp. 83 (S.D. Cal. 1961) ........................................................................ 4

*United States v. Butz,*
    982 F.2d 1378 (9th Cir. 1993) ............................................................................. 9

*United States v. Carrazana,*
    921 F.2d 1557 (11th Cir. 1991) ........................................................................... 9

*United States v. Hall,*
    543 F.2d 1229 (9th Cir. 1976) ............................................................................. 9

*Watkins v. L.M. Berry & Co.,*
    704 F.2d 577 (11th Cir. 1983) ........................................................................... 9

**CALIFORNIA STATUTES**

Cal. Penal Code § 632(a) ............................................................................................ 3

Cal. Penal Code § 632(b) ............................................................................................ 3

Cal. Penal Code § 637.2 ............................................................................................ 10

Cal. Penal Code § 653j(a) ........................................................................................... 5

Cal. Penal Code §§ 630 *et seq* .................................................................................. 1

**FEDERAL STATUTES**

15 U.S.C. § 1692e ....................................................................................................... 1

18 U.S.C. § 2510 *et seq.* ........................................................................................... 2

18 U.S.C. § 2510(4) .................................................................................................... 8

1    18 U.S.C. § 2510(5)(a) ............................................................................................... 8

2    Fed. Rule of Civil Proc. 12(b)(6) ............................................................................. 2

3    Federal Rule of Civil Procedure 12(c) ...................................................................... 1

4                                    **OTHER STATE CASES**

5    *Barasch v. Pennsylvania Pub. Util. Comm'n,*
        576 A.2d 79 (Pa. Commw. Ct. 1990) ................................................................... 7
6
     *Bloom v. Pegasus Investigations, Inc.,*
7       No. 227731, 2002 WL 1375726, at *1 (Mich. App. June 25, 2002) ..................... 7

8    *Commonwealth v. Hyde,*
        750 N.E.2d 963 (Mass. 2001) ............................................................................ 7
9
     *O'Sullivan v. NYNEX Corp.,*
10      687 N.E.2d 1241 (Mass. 1997) ........................................................................... 7

11   *People v. Calvert,*
        629 N.E.2d 1154 (Ill. App. 1994) ...................................................................... 7
12
     *Pueblo v. De Leon Martinez,*
13      N. CR-88-15, 1993 WL 839866 (P.R. Feb 16. 1993) ......................................... 7

14   *State v. Faford,*
        910 P.2d 447 (Wash. 1996) ................................................................................ 7
15
     *State v. Grullon,*
16      562 A.2d 481 (Conn. 1989) ................................................................................ 7

17   *State v. Lamontagne,*
        618 A.2d 849 (N.H. 1992) .................................................................................. 7
18
     *State v. Tsavaris,*
19      394 So.2d 418 (Fla. 1981) .................................................................................. 8

20   *Sullivan v. Gray,*
        324 N.W.2d 58 (Mich. App. 1982) ..................................................................... 7
21
                                      **MISCELLANEOUS**
22
     Md. Code. Ann. Cts. & Jud. Proc. § 10-401(5) ........................................................ 8
23
     Mont. Code Ann. § 45-8-205(6) ............................................................................... 8
24

25

26

27

28

iv

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), defendant GC Services L.P. ("GC Services"), respectfully submits this memorandum of points and authorities in support of its motion for partial judgment on the pleadings. The First Amended Complaint ("Complaint") was filed on August 17, 2005, and GC Services answered and asserted affirmative defenses on October 17, 2005.[1] This motion seeks judgment on the Second and Third Causes of Action in the Complaint, asserting violations of the California Invasion of Privacy Act ("CIPA"), California Penal Code sections 630 *et seq*, and similar statutes in 12 other states or territories.[2]

This case is a purported class action alleging that GC Services violates state eavesdropping and wiretapping statutes, like CIPA, whenever GC Services monitors its own telephone calls in the ordinary course of business. Plaintiffs are debtors residing in California and Delaware, and GC Services is a Texas-based company providing nationwide debt collection and call center services to corporate and governmental clients. Complaint at ¶¶ 1, 9-11, 14. Each of the individual plaintiffs alleges telephone conversations with GC Services about alleged debts, and claim that an alleged GC Services policy of monitoring and/or recording such calls violates CIPA and similar "two-party" consent statutes in 12 other states or territories. Complaint at ¶ 40. The complaint seeks class-wide aggregation of statutory penalties and injunctive relief. Complaint at 14-15 (Prayer for Relief).

The Complaint presents a novel misapplication of CIPA and its counterparts in other states. According to the Complaint, GC Services is "eavesdropping" in violation of Section 632 of the Act whenever GC Services monitors its *own* telephone communications in the ordinary course of business. *See* Complaint at ¶ 40 ("It is the policy and practice of Defendant GC Services to initiate telephone communications with persons . . . and to accept telephone communications from persons . . . and to . . . monitor and/or eavesdrop upon said telephone calls . . .."); Complaint at ¶¶ 57-61 (Third Cause of Action). This is a perverse interpretation of CIPA,

---

[1]     The initial complaint in this matter, filed on May 4, 2005, was never served.

[2]     The Complaint also asserts claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, related to allegations that GC Services has "falsely represent[ed] the character and legal status of alleged consumer debts." Complaint at § 49(b). This motion does not seek judgment on the pleadings on that claim.

1

1   contradicted by a plain reading of the statute. Eavesdropping requires a third party under CIPA,

2   and California courts have held that a party monitoring its own calls is not "eavesdropping" under

3   the Act. Because the Complaint alleges no "third party" eavesdropping or wiretapping, GC

4   Services should be granted judgment on the pleadings on the Third Cause of Action.

5          Moreover, Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510

6   *et seq.* ("Title III"), provides a comprehensive regulatory scheme governing the interception of

7   both interstate and intrastate oral and wire communications. In Title III, Congress provided a

8   "business use exception" that preempts contrary state law according to well-established federal

9   precedent. Because GC Services' conduct falls squarely within Title III's "business use

10  exception," the Complaint's Second and Third Causes of Action should fail on the pleadings.

11         The Complaint's Second and Third Causes of Action also fail because the individual

12  plaintiffs never allege that their own telephone conversations with GC Services were monitored

13  or recorded. Plaintiffs present as individuals seeking to vindicate the rights of others, without

14  alleging that their own rights were violated by the conduct pled. Because none of the plaintiffs

15  alleges sufficient facts to sustain a cause of action under CIPA or its foreign state counterparts,

16  GC Services' motion for judgment on the pleadings should be granted.

17                                          **ARGUMENT**

18         Judgment on the pleadings is appropriate under Federal Rule of Civil Procedure 12(c)

19  "when the moving party clearly establishes on the face of the pleadings that no material issue of

20  fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil*

21  *Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir.1997); *Hal Roach*

22  *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1990). While Rule 12(c)

23  does not expressly authorize "partial" judgments, it does not bar them, and it is "common practice

24  to apply Rule 12(c) to individual causes of action." *Moran v. Peralta Comm. College Dist.*, 825 F.

25  Supp. 891, 893 (N.D. Cal. 1993).

26         And although Rule 12(c) differs in some particulars from Rule 12(b)(6), "the standard

27  applied is virtually identical." *Id.*; *See Miller v. Indiana Hosp.*, 562 F. Supp. 1259, 1266 (W.D.

28  Pa. 1983). When all facts and inferences are construed in favor of the nonmoving party and it

                                                 2

1   appears beyond doubt that the nonmoving party can prove no set of facts to support its claims, a

2   12(b)(6) motion should be granted. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Libas Ltd. v.*

3   *Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003). Conclusory allegations of law are insufficient to

4   support a claim. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

5   **I.     THE COMPLAINT'S "MONITORING" CLAIMS SHOULD BE DISMISSED**
        **BECAUSE CIPA DOES NOT APPLY TO CALLS MONITORED BY A PARTY**
6       **TO THE CONVERSATION IN THE ORDINARY COURSE OF BUSINESS.**

7           Each of the named plaintiffs bases his/her claims on telephone conversations with GC

8   Services. Complaint at ¶¶ 21-39. The Complaint's Third Cause of Action alleges that GC

9   Services is "secretly listen[ing] in" on its own telephone calls in violation of CIPA: "[d]efendant

10  GC Services has allowed, enabled, or encouraged certain of its personnel employed by Defendant

11  GC Services to secretly listen in on telephone conversations between persons who are alleged to

12  owe money and individuals employed by Defendant GC Services." Complaint at ¶ 58.

13  Elsewhere, the Complaint alleges that GC Services is placing and accepting telephone calls, then

14  monitoring or eavesdropping upon these telephone calls. Complaint at ¶ 40. If GC Services

15  monitors its own telephone calls, as alleged, the plain language of CIPA confirms that this

16  conduct does not constitute "eavesdropping."

17          Section 632 of CIPA provides that "[e]very person who, intentionally and without the

18  consent of all parties to a confidential communication, by means of any electronic amplifying or

19  recording device, eavesdrops upon or records the confidential communication, whether the

20  communication is carried on among the parties in the presence of one another or by means of a

21  telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding

22  two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one

23  year, or in the state prison, or by both fine and imprisonment." Cal. Penal Code § 632(a). The

24  Act defines "person" as including an "individual, business association, partnership [such as GC

25  Services], corporation, limited liability company, or other legal entity . . .." Cal. Penal Code §

26  632(b).

27          For a CIPA violation to exist, there must be at least three parties: Speaker A, Speaker B,

28  and a "third party" wiretapper or eavesdropper. *See Ribas v. Clark*, 38 Cal.3d 355, 363 (1985)

3

1    (CIPA is "designed to protect a person placing or receiving a call from a situation where the

2    person on the other end of the line permits an outsider to tap his telephone or listen in on the

3    call"); *Warden v. Kahn*, 99 Cal.App.3d 805, 811 (1979) (Section 631 of CIPA applies only to

4    eavesdropping by a third party); *Rogers v. Ulrich*, 52 Cal.App.3d 894, 899 (1975) "[I]t is never a

5    secret to one party to a conversation that the other party is listening to the conversation; only a

6    third party can listen secretly to a private conversation.").

7        GC Services is a sole "person" under the Act.  The Complaint alleges that GC Services

8    conducted telephone conversations with the Thomassons and Taylors.  As a corporate entity, GC

9    Services is capable of making these telephone calls *only* through its employees. *See Tobman v.*

10    *Cottage Woodcraft Shop*, 194 F. Supp. 83, 87 (S.D. Cal. 1961) ("the acts of a corporation's agents

11    are the acts of the corporation."); *Reynolds v. Bement*, 36 Cal.4th 1075, 1089-1090 (2005) (same).

12    GC Services and its employees are not legally distinct individuals when acting in the ordinary

13    course of GC Services business.

14        When acting in the ordinary course of business, GC Services and its employees are one

15    "person" under CIPA and every other legal regime.  For example, the United States Supreme

16    Court recognizes that two employees of the same corporate entity are incapable of forming an

17    "intra-agency" conspiracy in violation of the Sherman Act, because they constitute part of one

18    legal entity. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770-72 (1984).  Nor

19    can a corporation conspire with its own employees because, again, they constitute one legal

20    entity. *Black v. Bank of America*, 30 Cal.App.4th 1, 6 (1994).  In *Black*, the California Court of

21    Appeals held that

22          A corporation is, of course, a legal fiction that cannot act at all
             except through its employees and agents.  When a corporate

23          employee acts in the course of his or her employment, on behalf of
             the corporation, *there is no entity apart from the employee with*

24          *whom the employee can conspire.*

25    *Id.* (citations omitted) (emphasis added); *see also Reynolds*, 36 Cal.4th at 1090 ("Agents and

26    employees of a corporation cannot conspire with their corporate principal or employer where they

27    act in their official capacities on behalf of the corporation and not as individuals for their

28    individual advantage."); *Shoemaker v. Myers*, 52 Cal.3d 1, 25 (1990) (affirming demurrer against

4

1   tortious interference claim that corporation's employees interfered with plaintiff's contract with

2   corporation, because the employees did not constitute a third person and "the employer – the

3   other party to the supposed contract – cannot act except through such agents."); *Freeman v. San*

4   *Diego Ass'n of Realtors*, 77 Cal.App.4[th] 171, 189 (1999) ("the 'agent immunity rule' deems

5   agents incapable of conspiring with their principal").

6        A straight reading of the Act compels the conclusion that no "third party" eavesdropping

7   or wiretapping occurred in the plaintiffs' telephone conversations with GC Services.  That

8   conclusion is bolstered by CIPA's legislative history and the public record surrounding its

9   enactment and subsequent amendments.  Most of CIPA's modern form can be traced to Section

10  653j of the California Penal Code.  When published in 1963, the statute was characterized as

11  "relating to the overhearing and recording of communications," and made it illegal for a "person"

12  to intentionally eavesdrop or record a "confidential communication" by using an electronic

13  amplifying or recording device, when that person was not a party to the communication.  Cal.

14  Penal Code § 653j(a) (1963) (lodged herewith as Exhibit A).  Even forty years ago, the Assembly

15  Interim Committee on Criminal Procedure ("Committee") recognized the social utility of

16  businesses monitoring their own telephone communications in the ordinary course for quality-

17  control purposes.  The Committee distinguished "monitoring" from abuses such as wiretapping,

18  and characterized the use of monitoring devices to train employees and evaluate customer service

19  as "commercially valuable." *Report of the Assembly Interim Comm. on Criminal Procedure*, Part

20  6, Telephone Monitoring Devices, Vol. 22 p. 82 (1963-1965) (separately lodged herewith as

21  Exhibit B).  The Complaint here alleges nothing more than ordinary course of business

22  monitoring for quality control purposes.  Complaint at ¶¶ 13-18; 21-39; *see also* Complaint at

23  Exhibit "A."

24        A few years after enactment in 1963, California's eavesdropping statute was consolidated

25  into one chapter with all of the state's various wiretapping and eavesdropping laws.  Bill Digest,

26  Assembly Committee on Criminal Procedure, A.B. 860 (1967) (lodged herewith as Exhibit C).

27  Along with this consolidation, Bill AB 360 authorized civil actions for violations of the chapter,

28  and made California a two-party consent state.  *Id.* at 3-4.  Relevant documentation indicates that

5

1  the civil action was intended, in large part, to deter "business piracy" and "industrial espionage."

2  Memorandum from Clyde Blackmon, Consultant, Committee on Criminal Procedure, on

3  Eavesdropping and Industrial Espionage, to Mike Manley, Legislative Assistant to the Speaker

4  (Separately lodged herewith as Exhibit D).  On June 29, 1967, the *San Francisco Examiner*

5  published an editorial critical of the bill, fearing it would

6         extend to monitoring done in the business world to protect
       consumers. In many business fields personnel are carefully trained

7         to carry on transactions with the general public via incoming or
       outgoing phone calls, or sometimes both.  But experience has

8         taught all businesses that a small percentage of employees will
       ignore their standing instructions and conduct themselves in a

9         manner that takes advantage of the customer.

10  "Goes Too Far," San Francisco Examiner, June 29, 1967 (separately lodged herewith as Exhibit

11  E).  Speaker Jesse Unruh replied, writing that according to "the attorneys for the Pacific

12  Telephone Company, legislative committee lawyers and the State Legislative Counsel," the law

13  would not reach this far.  Unruh stated that the legislation "specifically exempts from the anti-

14  eavesdropping ban any licensed telephone equipment regulated by the Public Utilities

15  Commission. Under my bill, *it would continue to be perfectly legal to monitor business calls, to*

16  *insure proper services of customers by employees*."  Letter from Jesse M. Unruh, Speaker,

17  California Assembly, to Charles Gould, Publisher, San Francisco Examiner (June 30, 1967)

18  (lodged herewith as Exhibit F).

19      After passage, Speaker Unruh conveyed the bill to then-Governor Ronald Reagan for

20  signature, again clarifying that the legislation did not reach business monitoring:

21         In the course of the bill through the Legislature, there was some
       misunderstanding about its effect upon the common practice in both

22         government agencies and businesses of observing calls between
       employees and the public or customers.  This is for training

23         purposes as well as to protect customers and insure courteous
       treatment. In essence, it is a form of quality control.

24         There was some concern that the "anti-eavesdropping" provision
       would outlaw this practice.  Such is not the case.  New penal code

25         Section 631(b) clearly provides that the section shall not apply
       either to service observing by telephone companies or to the similar

26         practice of customers using servicing equipment furnished by
       telephone companies pursuant to filed tariffs.

27

28  Letter from Jesse M. Unruh, Speaker, California Assembly, to Honorable Ronald Reagan,

1   Governor of California (Aug. 4, 1967) (lodged herewith as Exhibit G).

2          In 1967, the California Assembly recognized the "common practice" of businesses

3   "observing calls between employees and the public or customers."   Since that time, both the

4   Federal Trade Commission ("FTC") and federal courts, including the Southern District of

5   California, have often *required* businesses to conduct the very monitoring challenged in the case

6   at bar. *See, e.g.*, Stipulated Permanent Injunction and Final Order of Dismissal at 5-6, *FTC v.*

7   *West Coast Advertising & Marketing, Inc.*, Docket No. 03-CV-00980 (S.D. Cal. Jan. 3, 2005)

8   (lodged herewith as Exhibit H) (ordering defendant to conduct "daily random monitoring of

9   solicitation calls made by each solicitor."); Stipulated Final Judgment and Order for Permanent

10  Injunction and Monetary Settlement at 34-38, *FTC v. Smolev*, Docket No. 01-CV-8922 (S.D. Fla.

11  Filed Nov. 28, 2001) (lodged herewith as Exhibit I) (ordering companies charged with violating

12  the Telemarketing Sales Rule to retain a third-party monitor for "monitoring on a monthly basis a

13  random sample consisting of at least 250 or 1% of such telemarketing calls per month . . . .").[3]

14         Because GC Services is one "person" under the Act, when operating in the ordinary

15  course of business, no "eavesdropping" or "wiretapping" results when GC Services monitors its

16  own telephone calls.[4]   The Third Cause of Action should be dismissed on the pleadings.

17  _____
    [3]      Monitoring and recording business telephone calls for quality control are "legitimate
18  business interest[s]" and "accepted business practice[s]." *O'Sullivan v. NYNEX Corp.*, 687
    N.E.2d 1241, 1246 (Mass. 1997) (upholding summary judgment in favor of defendant and
19  holding that telemarketing calls recorded without the customers' knowledge was done in the
    ordinary course of business for the legitimate business activity of monitoring employees'
20  performance and, therefore, did not violate Massachusetts' wiretapping statute).

    [4]      The same result obtains under the other state statutes pled (Complaint at ¶ 60), under
21  which neither the Thomassons nor Taylors have pled standing. *See, e.g.*, *Bloom v. Pegasus*
    *Investigations, Inc.*, No. 227731, 2002 WL 1375726, at *1 (Mich. App. June 25, 2002) (citing
22  *Sullivan v. Gray*, 324 N.W.2d 58, 60 (Mich. App. 1982) ("The statute contemplates that a
    potential eavesdropper must be a third party not otherwise involved in the conversation being
23  eavesdropped on.")); *Commonwealth v. Hyde*, 750 N.E.2d 963, 966 (Mass. 2001) (eavesdropping
    statute is aimed at "prohibit[ing] [the public from] electronic eavesdropping and wiretapping of
24  other persons' conversations"); *State v. Faford*, 910 P.2d 447, 452 (Wash. 1996) ("eavesdropping
    on *another's* private affairs personifies the very activity the privacy act seeks to discourage.")
25  (emphasis added); *People v. Calvert*, 629 N.E.2d 1154, 1161 (Ill. App. 1994) ("eavesdropping
    does not occur when the person recording the conversation is...a party to the conversation");
26  *Pueblo v. De Leon Martinez*, No. CR-88-15, 1993 WL 839866 (P.R. Feb 16. 1993) (violation of
    Puerto Rico law occurs where a third-party records a "communication [intended to] be confined
27  to [the participants]"); *State v. Lamontagne*, 618 A.2d 849, 851 (N.H. 1992) (violation of state
    statute requires undisclosed call "monitor[ing] by a third person..."); *Barasch v. Pennsylvania*
28  *Pub. Util. Comm'n*, 576 A.2d 79, 85 (Pa. Commw. Ct. 1990) (agreeing that Pennsylvania Wiretap
    Act "applies only to third party interception"); *State v. Grullon*, 562 A.2d 481, 489 (Conn. 1989)

                                              7

1    II.    **THE SECOND AND THIRD CAUSES OF ACTION ARE PREEMPTED BY A**
       **FEDERAL STATUTE EXPRESSLY AUTHORIZING MONITORING AND**
2      **RECORDING IN THE ORDINARY COURSE OF BUSINESS.**

3            Via Title III, Congress erected a comprehensive federal regulatory scheme that generally

4    prohibits the interception of oral and wire communications, with certain exceptions that apply

5    here.  Title III defines an unlawful interception as "the aural or other acquisition of the contents of

6    any wire, electronic, or oral communication through the use of any electronic, mechanical, or

7    other device."  18 U.S.C. § 2510(4).  Title III further defines "electronic, mechanical, or other

8    device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic

9    communication *other than*

10                   (a) any telephone or telegraph instrument, equipment or facility, or any
                     component thereof, (i) furnished to the subscriber or user by a provider
11                   of wire or electronic communication service in the ordinary course of
                     its business and being used by the subscriber or user in the ordinary
12                   course of its business or furnished by such subscriber or user for
                     connection to the facilities of such service and used in the ordinary
13                   course of its business; . . .."

14   18 U.S.C. § 2510(5)(a).

15           Federal courts refer to Section 2510(5)(a) variously as the "business use exception," "safe

16   harbor," or "statutory exclusion" for interceptions made in the ordinary course of business.  *See*

17   *Arias v. Mutual Cent. Alarm Serv., Inc.*, 202 F.3d 553, 557 (2d Cir. 2000) ("any interception is

18   not actionable under Title III if the 'aural or other acquisition' of the contents of plaintiffs'

19   telephone conversations occurred...in the ordinary course of business...and used by [the

20   defendant] in the ordinary course of its business"); *Amati v. Woodstock*, 176 F.3d 952, 954 (7th

21   Cir. 1999) ("Title III also contains an exclusion for interceptions made in the 'ordinary course of

22   business.' This is intended for situations in which a business or other entity . . . records calls to or

23

24   ─────────────────────────────────────────────

25   ("eavesdropping occurs only when there is an 'intentional overhearing or recording of a
     conversation' which is carried out 'by a person other than a sender or receiver thereof'"); *State v.*
26   *Tsavaris*, 394 So.2d 418, 423 (Fla. 1981) ("The significant fact in the cases where eavesdropping
     has been approved is that a third person is listening to a conversation").  *See also* Md. Code. Ann.
27   Cts. & Jud. Proc. § 10-401(5) (defining "person" as including "any individual, partnership,
     association, joint stock company, trust, or corporation."); Mont. Code Ann. § 45-8-205(6)
28   ("'Person' means any individual, partnership, association, corporation, or other legal entity of any
     kind.").

CASE NO. 05cv940 LAB (blm)

1  from its premises in order to monitor performance by its employees") (citations omitted).[5]

2  Both federal and state courts hold that Title III generally preempts state wiretapping and

3  eavesdropping laws. *See, e.g., United States v. Butz*, 982 F.2d 1378, 1382 (9th Cir. 1993) ("we

4  generally interpret Title III as preempting state law . . .."); *People v. Mahoney*, 47 Cal. App. 3d

5  699, 717 (1975) ("the federal statutes have preempted the fields of wiretapping and electronic

6  surveillance"); *Halpin v. Superior Court*, 6 Cal.3d 885, 900 (1972) ("we hold that Title III has

7  preempted particular fields of wiretapping and electronic surveillance").[6]  Title III preempts

8  contrary state law in all cases except interceptions made by state law officers used in state

9  criminal prosecutions. *Butz*, 982 F.2d at 1382 ("With the lone exception concerning interception

10  by state officers for state prosecutions, the federal statute [Title III] does not defer to the states.")

11  (citing *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976)).

12  Title III's preemptive power was recognized and applied by the Ninth Circuit in *United*

13  *States v. Hall*, where the court summarized the interplay between Title III and CIPA. *See Hall*,

14  543 F.2d at 1232-33.  *Hall* involved a wiretap that led to the arrest and subsequent conviction of

15  defendant for possession of heroin.  The defendant was arrested based on information obtained

16  from a federal wiretap duly authorized under Title III. *Id.* at 1231.  The defendant argued, and the

17  United States conceded, that the wiretap violated CIPA. *Id.*  Thus, the court was presented with

18  conduct that was lawful under the federal statute, but which violated California's wiretap statute.

19  Upholding the interception's validity under Title III, the Ninth Circuit emphasized:

20      It may well be true, as the California courts have held, that the federal act does not
        preclude the states from enacting more restrictive wiretapping statutes of their
21      own.  To the extent that there is a conflict between the state and federal legislation,
        though, the federal statute controls under the Supremacy Clause of the
22      Constitution....[It is] [t]he legislative intent that federal law is to prevail in case of

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5]   *Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414, 417 (5th Cir. 1980) (dismissal of
    alleged Title III violations is warranted if the telephone used by the defendant to listen into a
24  conversation was "being used by the subscriber or user in the ordinary course of its business");
    *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983) ("business extension exemption"
25  shields a business from liability for listening to conversations where the parties did not consent to
    such monitoring).

26  [6]   *See also Nix v. O'Malley*, 160 F.3d 343, 347 n.4 (6th Cir. 1998) (assuming without
    deciding that Title III preempted Ohio's wiretapping law*); United States v. Carrazana*, 921 F.2d
27  1557, 1562 (11th Cir. 1991) ("In 1968, Congress preempted the field of interception of wire and
    oral communications by enacting Title III); *Frierson v. Goetz*, 227 F. Supp. 2d 889, 902 (M.D.
28  Tenn. 2002) (same).

conflict . . . .

*Id.* at 1232.

The Complaint asserts that CIPA and other state eavesdropping or wiretapping statutes prohibit GC Services from monitoring or recording its own telephone communications in the ordinary course of business. If the Complaint's legal conclusion is correct, those state statutes must yield to conflicting federal statutory law. Title III expressly authorizes the challenged conduct, and preempts the basis for plaintiffs' claims.

## III.  PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION SHOULD FAIL BECAUSE THEY NEVER ALLEGE THAT THEIR OWN TELEPHONE CALLS WITH GC SERVICES WERE MONITORED OR RECORDED

To proceed under CIPA, a private plaintiff must demonstrate that the defendant violated his privacy by intentionally tapping into, surreptitiously listening to, or actually recording a confidential conversation. Cal. Penal Code § 637.2 ("Any person who *has been injured* by a violation of this chapter may bring an action against the person who committed the violation") (emphasis added); *Friddle v. Epstein*, 16 Cal.App.4th 1649, 1661 (1993) (holding that the plaintiff "invaded defendants' privacy and violated the privacy act at the moment he began *making his secret recording*") (emphasis added); *Ribas v. Clark*, 38 Cal.3d 355, 365 (1985) ("the right to [statutory damages under CIPA] accrues at the moment of the violation").

The Complaint never alleges that GC Services recorded or monitored plaintiffs' telephone conversations. The Complaint states that in April 2005, Andrew T. Thomasson, a California resident, received a debt-collection letter from GC Services, to which he responded by calling GC Services' toll-free telephone number. Complaint at ¶¶ 23-24. During that call, Mr. Thomasson spoke with "Ashley," a GC Services employee working in a California call center. *Id.* at ¶¶ 24-25. Thomasson asked Ashley whether their telephone call would be monitored or recorded, and Ashley responded that GC Services might monitor the call. *Id.* at ¶¶ 26-27.

According to the Complaint, Rebecca J. Thomasson received two debt-collection letters from GC Services. Complaint at ¶ 29. Ms. Thomasson twice called GC Services, and she spoke with a GC Services employee both times. *Id.* at ¶¶ 30-31. On August 16, 2005, Chenoa Taylor

10

1    also called GC Services.  Complaint at ¶ 38.  The Complaint alleges that, during their respective

2    phone conversations, neither Ms. Thomasson nor Ms. Taylor was "advised that the call might be

3    recorded and/or monitored."  *Id.* at ¶¶ 30-31, 38-39.

4         According to the Complaint, GC Services called Macdonald P. Taylor, Jr. several times

5    during a one-month period, regarding a debt that Taylor owed to American Express.  Complaint

6    at ¶¶ 32, 34.  The Complaint alleges that GC Services never advised Mr. Taylor that those calls

7    might be recorded and/or monitored.  *Id.* at 36.

8         Plaintiffs' allege no violation of CIPA.  They never allege that their calls with GC

9    Services were monitored or recorded.  They simply allege GC Services failed to inform them that

10   the calls might be monitored or recorded.  The Second and Third Causes of Action should be

11   dismissed on the pleadings for failure to state a claim upon which relief can be granted.

12                                   **CONCLUSION**

13        For the foregoing reasons, the Court should grant partial judgment on the pleadings in

14   favor of defendant GC Services on the Second and Third Causes of Action asserted in the

15   Complaint.

16

17   Dated:  November 23, 2005              COLLIER SHANNON SCOTT, PLLC
                                                        -and-
18                                         WRIGHT & L'ESTRANGE
                                           Attorneys  for  defendant  GC  Services  Limited
19                                         Partnership

20                                         By: _____
21                                             John H. L'Estrange, Jr.

22

23

24

25

26

27

28

                                        11