USDC SCAN INDEX SHEET

















R1R    1/4/06    15:01
3:05-CV-00940   THOMASSON V. GC SERVICES LTD PRT
*19*
*OPPM.*

1   ROBERT L. ARLEO, ESQ. (RA 7506)
2   **LAW OFFICES OF ROBERT L. ARLEO**
    225 East 79th Street, Suite 2B
3   New York, NY 10021
    Telephone: (212) 517-9967
4   Facsimile:  (212) 517-2919

5   ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
    ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
6   **SCHROTH & SCHROTH, LLC**
    2044 First Avenue, Suite 200
7   San Diego, CA 92101-2079
    Telephone: (619) 233-7521
8   Facsimile:  (619) 233-4516
9
10  CHRISTOPHER K. MONELT, ESQ. (SBN 224478)
    **LAW OFFICES OF CHRISTOPHER K. MONELT**
11  2044 First Avenue, Suite 200
    San Diego, CA 92101-2079
12  Telephone: (619) 233-8034
    Facsimile:  (619) 233-4516
13

14  Attorneys for Plaintiffs, ANDREW T.
    THOMASSON, REBECCA J. THOMASSON,
15  MACDONALD P. TAYLOR JR., CHENOA R.
    TAYLOR, and all others similarly situated
16

17              **UNITED STATES DISTRICT COURT**

18          **SOUTHERN DISTRICT OF CALIFORNIA** 05cy940 · LAB (BLM)

19
20  ANDREW T. THOMASSON, REBECCA J.   ) CASE NO.  05cv1736 MLH (BLM)
    THOMASSON, MACDONALD P. TAYLOR    )
21  JR., and CHENOA R. TAYLOR on behalf of )
    themselves and all others similarly situated, ) **PLAINTIFFS' MEMORANDUM OF**
22                                     ) **POINTS AND AUTHORITIES IN**
              Plaintiffs,              ) **OPPOSITION TO DEFENDANT'S FED.**
23                                     ) **R. CIV. P. 12(c) MOTION FOR PARTIAL**
          vs.                          ) **JUDGMENT ON THE PLEADINGS**
24                                     )
    GC SERVICES LIMITED PARTNERSHIP,   )
25  and DOES 1 through 25 inclusive,   ) HON. LARRY ALAN BURNS
                                       ) Dept.: Courtroom 9, Second Floor
26            Defendants.              ) Hearing Date:  January 17, 2006
                                       ) Hearing Time:  10:30 a.m.
27                                     )
                                       )
28  ///

                                       Thomasson, et. al. v. GC Services
                                       05cv940 LAB (BLM)

## TABLE OF AUTHORITIES

**Federal Cases**

*Ali v. Douglas Cable Communications*, 929 F. Supp. 1362 (D. Kan. 1996) .................................... 5

*Brooks v. American Broadcasting Cos.*, 932 F.2d 495 (6th Cir. 1991)........................................... 14

*Deteresa v. American Broadcasting Co.*, 121 F.3d 460 (9th Cir. 1997) .......................................... 14

*Fajardo v. County of Los Angeles*, 179 F.3d 698 (9th Cir. 1999)................................................... 2

*Pacific Gas & Electric Co.* v. *State Energy Resources Conservation and Development Comm'n*,

  461 U.S. 190 (1983) ................................................................................................................. 12

*United States v. Hall* 543 F.2d 1229 (9th Cir. 1976)................................................................... 13

*Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238 (1984) ................................................................. 12

*United States v. County of San Diego*, 53 F.3d 965 (9th Cir. 1995) ................................................ 2

*United States v. County of San Diego*, 516 U.S. 867 (1995) .......................................................... 2

*United States v. McIntyre*, 582 F.2d 1221 (9th Cir. 1978) ............................................................ 5

*Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1 (1986).................................... 11, 12

**Federal Statutes**

18 USCS § 2510, *et seq.*...................................................................................... 1, 11, 13, 14

18 U.S.C. §2511(2)(d)................................................................................................................ 4

18 U.S.C. §2516 ....................................................................................................................... 14

**Federal Rules**

Fed. R. Civ. P. 12(c). .............................................................................................................. 1,

**State Cases**

*California Teachers Assn. v. San Diego Community College Dist.*, (1981) 28 Cal. 3d 692 .............. 8

*Coulter v. Bank of America*, (1994) 28 Cal. App. 4th 923 ............................................................ 4

*Dwyer v. Lanan & Snow Lumber Co.*, (1956) 141 Cal. App. 2d 838 .............................................. 7

*Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal. App. 3d 188 ............................................. 4

*Frances T. v. Vill. Greem Owners Ass'n*, (1986) 42 Cal. 3d 490 .................................................... 7

*Frio v. Superior Court* (1988) 203 Cal. App. 3d 1480.................................................................. 4

*Fuentes v. Workers' Comp. Appeals Bd.*, (1976) 16 Cal. 3d 1 ...................................................... 6

-ii-

1   *Halpin v. Superior Court*, (1972) 6 Cal. 3d 885 ................................................................. 13, 14

2   *Landrum v. Superior Court*, (1981) 30 Cal. 3d 1, 14 ........................................................ 6

3   *O'Brien v. Dudenhoeffer*, (1993) 16 Cal. App. 4th 327 .................................................. 6

4   *People v. Conklin*, (1974) 12 Cal. 3d 259 .......................................................... 4, 12, 13

5   *People v. Cruz*, (1996) 13 Cal. 4th 764 ........................................................................ 8

6   *People v. Stevens*, (1995) 34 Cal. App. 4th 56 ........................................................ 12

7   *People v. Wyrick* (1978) 77 Cal. App. 3d 903 .......................................................... 4

8   *Ribas v. Clark* (1985) 38 Cal. 3d 355 ...................................................................... 4, 9

9   *Rogers v. Ulrich*, (1975) 52 Cal. App. 3d 894 ........................................................ 7

10   *State v. Siegel* (1972) 266 Md. 256 ...................................................................... 14

11   *Tavernetti v. Superior Court* (1978) 22 Cal. 3d 187, 192 ...................................... 4

12   *Tbg Ins. Servs. Corp. v. Superior Court*, (2002) 96 Cal. App. 4th 443 ................ 5

13   *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal. 3d 586 ......... 7

14   *Vannier v. Superior Court* (1982) 32 Cal. 3d 163 ................................................ 12

15   *Warden v. Kahn*, 99 Cal. App. 3d 805 ................................................................ 6, 8

16   *Williams v. Garcetti*, (1993) 5 Cal. 4th 561 ........................................................ 8

17   **State Statutes**

18   Cal. Pen. Code §§ 630, *et seq* ............................................................... 1, 6, 7, 13

19   Cal. Pen. Code § 631 ............................................................................................ 5

20   Cal. Pen. Code § 632 ............................................................... 3, 4, 6, 7, 8, 14

21   Cal. Pen. Code § 633.5 ...................................................................................... 5

22   Fla R. Stat. § 934.03, *et seq.* ............................................................................. 5

23   **Treatises**

24   *4 Witkin, Cal. Crim. Law 3d*, § 338 (2005) .................................................... 12

25   **Miscellaneous**

26   82 Op. Atty Gen. Cal. 148 .......................................................................... 4, 9, 12

27   *Assembly Committee on Public Safety Bill No. AB 1589*, heard May 7, 1991 .......... 9

28   *Senate Committee on Judiciary Bill No. SB 1124* ............................................ 9

1

S. Rep. No. 1097, 90th Cong., 2d Sess. (1968)................................................................ 12

1968 U.S. Code Cong. & Admin. News, 2181-87 ......................................................... 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    The Plaintiffs, ANDREW T. THOMASSON, REBECCA J. THOMASSON,

2    MACDONALD P. TAYLOR JR., and CHENOA R. TAYLOR (collectively referred to as

3    "Plaintiffs"), on their own behalf and on behalf of the class they seek to represent, by and through

4    their attorneys of record, The Law Offices of Robert L. Arleo and Schroth & Schroth, respectfully

5    submit the following memorandum of points and authorities in opposition to Defendant, GC

6    SERVICES LIMITED PARTNERSHIP'S ("GCS" or "Defendant"), Fed. R. Civ. P. 12(c) Motion

7    for Partial Judgment on the Pleadings.

## I.

## INTRODUCTION

10    GCS requests by way of its motion that the Court enter judgment in favor of the Defendant

11    corporation on the Second and Third Causes of Action contained in Plaintiffs' First Amended

12    Complaint ("FAC") for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal

13    Code §§630, *et seq.*, and similar statutes enacted by the legislatures of myriad other states,

14    commonwealths, and United States territories.

15    The bases for Defendant GCS' motion can be reduced to three arguments: (1) the theory

16    underpinning the claims for relief in the FAC are a "novel" and "perverse" "misapplication" of the

17    CIPA based on the plain meaning of the statute[1]; (2) the legislatures of each state, commonwealth,

18    and territory at issue here were collectively mistaken in their belief their monitoring and recording

19    statutes were operative because the federal "Omnibus Crime Control and Safe Streets Act," 18 USC

20    §2510, *et seq.* preempts all such laws despite a lack of authority in support; and (3) the Plaintiffs

21    failed to allege their own conversations were monitored or recorded.  The Plaintiffs vehemently

22    dispute the propriety of GCS' arguments and therefore submit this memorandum in opposition to

23    the Defendant's motion for judgment on the pleadings.

24    / / /

25    ─────────────────

26    [1] Though the Plaintiffs take exception to such hyperbole, in response to it they note only that the
vast majority of the Defendant's "plain meaning argument" is based on purported communications
27    by the law's author with a Northern California newspaper publisher, correspondence between
politicians, and misconstrued digests and reports.  If GCS' legal arguments were, as claimed, clear
28    from a "plain reading of the statute," it would obviously be unnecessary to supply such information.

-1-

## II.

## RELEVANT FACTUAL AVERMENTS CONTAINED IN PLAINTIFFS' FAC

Plaintiffs' FAC alleges GCS violated CIPA and other similar states' statutes requiring the consent of all parties to a communication as a prerequisite to a person monitoring or recording the communication ("two-party" consent statutes).    [Complaint, 2:9-15; 5:9-8:21; and 11:3-13:22]. Plaintiffs' FAC also alleges that GCS monitors and records -- without obtaining consent from all parties -- its inbound and outbound telephonic communications with purported debtors and other individuals. [Complaint, 2:9-15; 5:9-8:27; and 11:3-13:22].

The Plaintiffs further contend, upon information and belief that they, and others similarly situated, were monitored and recorded during various inbound and outbound telephone calls conducted between GCS and themselves.    [Complaint, 2:9-15; 5:9-8:27; and 11:3-13:22].    The Plaintiffs believe such conduct by GCS, acting by and through its executives, agents, and employees, is violative of the laws as alleged in the FAC. The Plaintiffs have, therefore, sought statutory penalties and injunctive relief on a class-wide basis. [Complaint, 13:23-15:16].

## III.

## STANDARD OF REVIEW APPLIED BY THE COURT IN RULING ON A MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS MADE PURSUANT TO FED. R. CIV. P. 12(c)

Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999). A court abuses its discretion in not providing leave to amend, unless any amendment would be futile because there are no facts or legal theories upon which a litigant may state a claim. *United States v. County of San Diego*, 53 F.3d 965 (9th Cir. 1995), *review denied*, *United States v. County of San Diego*, 516 U.S. 867 (1995).

///
///
///
///

## IV.

## ARGUMENT

### A.

### PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION ARE PROPERLY STATED BECAUSE CIPA APPLIES TO RECORDED AND MONITORED CALLS SUCH AS THOSE ALLEGED IN PLAINTIFFS' FAC

#### 1.     The Statutory Language of CIPA is Clear and Unambiguous

Defendant GCS argues, unpersuasively, that the "plain meaning" of the CIPA requires a finding by this Court that no monitoring or eavesdropping violation may occur unless there are three parties to such a conversation.  Defendant GCS's tortured analysis, while inventive, loses sight of the "big picture;" that is, GCS fails to see the forest for the trees.  The statute at issue here reads, in relevant part, as follows:

> *(a)* Every *person* who, intentionally and *without the consent of all parties to a confidential communication*, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio [commits a violation]....

> *(b)* The term *"person" includes an individual*, business association, *partnership*, corporation, limited liability company, *or other legal entity*, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

(Emphasis added).  Cal. Penal Code §632.

Thus, whether or not GCS consents to monitoring or recording of its own telephone calls is of no consequence; the dispositive fact here is that the ***Plaintiffs and other similarly situated individuals in telephonic communications did not consent to being monitored or recorded by GCS or its employees***.  GCS' consent to such monitoring or recording has no bearing on this motion in the absence of consent by all "parties" (i.e. Plaintiffs and others) to the communication.  Indeed, the "plain meaning" of the statute compels such a result, lest the Court promote a "novel" and "perverse" "misapplication" of the CIPA.

-3-

1    California's decisional law and the official opinion of its Attorney General are in accord.

2  "The Act is applicable to a confidential telephone call, and prevents one party to a conversation

3  from recording it without the other's consent." 82 Op. Atty Gen. Cal. 148  *citing Ribas v. Clark*

4  (1985) 38 Cal. 3d 355 and *Frio v. Superior Court* (1988) 203 Cal. App. 3d 1480. "In any event, to

5  the extent that the broad language and purposes of the Privacy Act may encompass conduct that

6  some people believe should not be proscribed, their remedy is to ask the legislature to draft a statute

7  they find more palatable." *Ribas*, 38 Cal. 3d at 362. The *Ribas* court further held that:

8
>    We have read section 631 as prohibiting far more than illicit wiretapping.
>    (*Tavernetti v. Superior Court* (1978) 22 Cal. 3d 187, 192-193.)… Additionally, the
9
>    Privacy Act has long been held to prevent one party to a conversation from
>    recording it without the other's consent. (*People v. Wyrick* (1978) 77 Cal. App. 3d
10
>    903, 909; *Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal. App. 3d 188, 191.)
>    While one who imparts private information risks the betrayal of his confidence by
11
>    the other party, a substantial distinction has been recognized between the
>    secondhand repetition of the contents of a conversation and its simultaneous
12
>    dissemination to an unannounced second auditor, whether that auditor be a person or
>    mechanical device. (*Warden v. Kahn, supra*, 99 Cal. App. 3d 805, 813-814.)
13

14

15  *Ribas*, 38 Cal.3d at 360-361.   Accordingly, Defendant GCS' argument that a "third party" is

16  necessary to trigger liability under the CIPA is mistaken and even the authority it supplies in its

17  moving papers, when read in their entirety, requires the same conclusion.[2]

18    **2.    GCS'S Analysis of Corporate Law is Inapposite to the Facts of This Case**

19    In an attempt to defeat well-settled law to the contrary, GCS next argues that judgment

20  should be entered against the Plaintiffs on their monitoring and recording claims because GCS

21  cannot monitor itself under an analysis of corporate law. GCS is mistaken on that score as well.

22    In *Coulter v. Bank of America*, the defendant bank and 11 of its employees filed a cross-

23  complaint for violations of Cal. Penal Code §632 alleging that Cross-Defendant Coulter -- an

24

---

25  [2] The same result obtains from the statutory and decisional law of the jurisdictions stated in the

26  Plaintiffs' FAC. Florida: Section 934.03(d), Fla. Stat: "It is lawful under ss. 934.03-934.09 for a
   person to intercept a wire, oral, or electronic communication when all of the parties to the

27  communication have given prior consent to such interception."  This necessarily means it is
   *unlawful* to "intercept" such communications when all parties have not provided consent.

28

-4-

1   employee of the Defendant's -- illegally monitored or recorded conversations with those employees

2   and the bank's executives. (1994) 28 Cal. App. 4th 923925, n. 3.   As the appellate court discussed

3   in *Coulter*, each of the confidential conversations upon which the individual employees sued were

4   directly related to bank business and Coulter's employment.  In other words, each conversation

5   between the bank and its employees was conducted in the "ordinary course of business."  Despite

6   this finding, the *Coulter* court held that liability existed under CIPA and entered judgment

7   accordingly.  In light of the foregoing, it simply defies logic that a bank and its employees may each

8   individually pursue liability based upon a tortfeasor's actions during the ordinary course of business,

9   but that a limited partnership may not incur liability when the same circumstances are reversed.

10       Furthermore, CIPA notably discusses acts constituting liability in terms that are distinct

11   from those advanced by GCS.  Specifically, CIPA (quoted in relevant part above) states that a

12   "person" is liable for monitoring or recording when the consent of "*all parties*" has not first been

13   obtained.  GCS devotes a significant amount of time discussing whether GCS and its employees

14   may be considered independent *persons*; however, such an inquiry is unnecessary for a

15   determination of Plaintiffs' claims.  Rather, the inquiry is whether a *person* (in this case GCS),

16   obtained the consent of all *parties* (i.e. its employees, Plaintiffs, and putative class members) to the

17   telephonic communications prior to monitoring and/or recording same.  Under CIPA, a *party* is not

18   the same as a "*person*" and the plain meaning of the statute does not indicate that such a contrary

19   result was intended or required.

20       There are still other illustrations of GCS's misinterpretation of the law in this regard.  For

21   example, the court in *Tbg Ins. Servs. Corp. v. Superior Court* determined that employees have a

22   reasonable expectation of privacy in internet and e-mail communications.  (2002) 96 Cal. App. 4th

23   443 (Holding that this privacy interest can be overcome by consent or waiver of the constitutional

24   protected executed by the employee in writing).  If business entities and their employees are one in

25   the same, why would it ever be necessary for such an employer to require its employees to sign a

26   written waiver or otherwise obtain their prior consent?  Indeed, by way of limited example only,

27   other courts have come to similar conclusions: *United States v. McIntyre*, 582 F.2d 1221 (9th Cir.

28   1978) (criminal liability under OCCSSA for employer's surreptitiously "bugging" employee's

-5-

1   office.); and *Ali v. Douglas Cable Communications,* 929 F. Supp. 1362, 1382 (D. Kan. 1996)

2   (Employees maintain a reasonable expectation of privacy as to unannounced recording of personal

3   telephone calls.). As set forth above, however, the question for determination in this action is

4   whether another "party" surreptitiously monitored or recorded the subject telephonic

5   communications with Plaintiffs and others for which the "person" GCS may be held to account for

6   violation under CIPA.

7        The cases cited by GCS are in direct accord with Plaintiffs' opposition argument, despite its

8   attempt to interject various "red herrings." For example, GCS argues that *Warden v. Kahn,* (1979)

9   99 Cal.App.3d 805, 811, announces the proposition that "Section 631 of the CIPA applies only to

10  eavesdropping by a third party." Plaintiffs do *not* dispute *Warden* posited such a theory; however,

11  Plaintiffs' FAC does not allege recovery for eavesdropping under this statute. Instead, Plaintiffs

12  have requested recovery under Cal. Penal Code §632, which *Warden* states is less ambiguous and

13  applies to *__any party__* who, without consent of the other, "*eavesdrops upon or records*" any

14  confidential communication. (Emphasis in original). *Warden,* 99 Cal. App. 3d at 812 *quoting* Cal.

15  Penal Code §632.

16       As the *Warden* court also stated, "...the presence of section 633.5 in the Invasion of Privacy

17  Act is inexplicable except on the assumption that the legislature intended at least some portion of

18  the act to apply to participant [monitoring or] recording." *Id.* As discussed below, the foregoing

19  analysis by the *Warden* court is particularly germane considering California's rules of statutory

20  interpretation.

21       **(a)  CIPA Must be Applied in Conformity with Other California Statutes**

22       Defendant's interpretation would necessarily create a conflict among other California laws.

23  Every statute should be construed with reference to the whole system of law of which it is a part so

24  that all may be harmonized and have effect. *Landrum v. Superior Court,* (1981) 30 Cal. 3d 1, 14;

25  *O'Brien v. Dudenhoeffer,* (1993) 16 Cal. App. 4th 327, 332. Whenever possible, statutes must be

26  reconciled and interpretations that would require one or another to be ignored must be avoided. *Id.*

27  When the relevant statutes may be reconciled, their provisions cannot be disregarded. *Fuentes v.*

28  *Workers' Comp. Appeals Bd.,* (1976) 16 Cal. 3d 1, 7.

-6-

1    GCS's citation of *Rogers v. Ulrich*, (1975) 52 Cal. App. 3d 894, suffers from the identical

2    deficiency as the other cases cited in support of its motion.  Specifically, *Rogers* dealt with a trial

3    court's refusal to allow amendment of a complaint at the beginning of trial and later at the close of

4    evidence to state a claim under Cal. Penal Code §632 rather than Cal. Penal Code §631.  Thus,

5    GCS's arguments and its citations to decisional authority concerning section 631 of CIPA are

6    irrelevant and misplaced.   Furthermore, any proposed counterargument that section 632 is

7    susceptible of the same analysis is wrong in light of the authority and discussion provided above.

8    **3.   Even Assuming *Arguendo* that GCS'S Analysis of the Corporate Shield Doctrine is**
     **Correct It Still Would not Apply to the Factual Circumstances of this Lawsuit**
9

10    Defendant GCS strenuously argues that because corporations may only act by and through

11    its employees and agents they are one "…'person' under CIPA and every other legal regime."  GCS

12    then goes on to cite a number of cases dealing with the law of conspiracy which stand for the

13    proposition that a corporation cannot "conspire" with its employees.  Plaintiffs concede that a

14    "corporation" may not "conspire" with its employees in most circumstances; however, Plaintiffs

15    note the following three critical points of error.

16    First, GCS admittedly is a limited partnership, not a corporation.  Despite this distinction,

17    GCS has offered no authority as to the applicability of its legal theories to its actual form of business

18    entity.  Without more, GCS's argument on this point is nothing more than the advocate's version of

19    *dicta*.  Secondly, the claims alleged in Plaintiffs' FAC are intentional torts dealing with readily

20    identifiable actions; they are not, as GCS apparently believes, actions founded on the law of

21    conspiracy or contract.   That fact alone makes each portion of GCS's "corporate conspiracy"

22    analysis completely useless to a determination of Plaintiffs' claims for relief under CIPA.

23    Finally, corporate directors, officers, and employees have for some time been held liable to

24    third parties for their own criminal or tortuous conduct.  California case law is legion with

25    circumstances in which an individual and a corporation may both be held liable for torts or crimes

26    committed in furtherance of a business objective. *See e.g., Frances T. v. Vill. Greem Owners Ass'n*,

27    (1986) 42 Cal. 3d 490, 508; *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal. 3d

28    586; and *Dwyer v. Lanan & Snow Lumber Co.*, (1956) 141 Cal. App. 2d 838.  The Defendant's

-7-

1    "contract with corporation" argument is similarly distinguishable as the cases above -- dealing with

2    analysis of tort liability (not contractual liability) -- demonstrate.

3        **4.**    **Plaintiffs Agree that CIPA's Meaning is Plain and Clear Thereby Rendering a**
     **Review of Its Legislative History and Public Record Analysis Unnecessary**

4

5        Defendant GCS supplies the Court with a well-constructed history of communications

6    between various individuals regarding the CIPA.  At the same time, GCS states "A straight reading

7    of the Act compels the conclusion that no 'third party' eavesdropping or wiretapping occurred..."

8    *under the facts alleged in the FAC.  The arguments advanced by GCS clearly are logically*

9    *inconsistent.*

10       If CIPA is clear and unambiguous on its face, then there is no need to review its legislative

11   history.  Conversely, if a review of the legislative history is needed, then the CIPA is neither clear

12   nor unambiguous.  The Plaintiffs concede the CIPA is unmistakably clear, but find a conclusion

13   contrary to GCS's argument is necessitated by the terms of the statute and decisional law of

14   California's appellate courts interpreting the same.

15       As stated above, the *Warden* Court has lain to rest any ambiguity concerning the scope of

16   Section 632 of the CIPA, the statute upon which the Plaintiffs request recovery.  Moreover, in

17   interpreting a statute, courts will not rely on evidence of the individual views of proponents of the

18   legislation.  *People v. Cruz*, (1996) 13 Cal. 4th 764, 780, n.9.  Nor is there any exception to this

19   principle simply because the legislator whose motives are proffered actually authored the bill in

20   controversy, as there is no guarantee that those who supported the proposal shared the author's view

21   of its compass.  *Williams v. Garcetti*, (1993) 5 Cal. 4th 561, 569; *California Teachers Assn. v. San*

22   *Diego Community College Dist.*, (1981) 28 Cal. 3d 692, 699-701.

23       With these rules in mind, the Defendant's discussion of the statute's legislative history is yet

24   *another attempt to interject irrelevant material into the Court's consideration of this motion;*

25   determining whether the Honorable Mr. Unruh intended the statute to have a particular effect is

26   unnecessary.  What matters for purposes of this case is the meaning the statute conveys, not what

27   the bill's author intended before or after it was written.  Notably, no other legislator's comments on

28   the bill are offered by GCS.  Hence, by applying the authority set forth above the information

-8-

1    supplied by GCS cannot, as a matter of law, illuminate the statute's meaning.  The same conclusion

2    results even assuming clarification of the statute is necessary (although the Plaintiffs contend, and

3    GCS concedes, it is not).

4         **5.**    **CIPA Does not Contain a "Business Exception" Nor did the California**
              **Legislature Intend for Such an Exception to Exist**

5

6         GCS goes on to argue that because the "common practice" of businesses surreptitiously

7    recording or monitoring phone calls existed at the time the statute was enacted, and because it was

8    recognized as a "common practice" by the California Assembly (the Defendant apparently has no

9    opinion on the State Senate's consideration of the bill) there should be some sort of "business

10   exception" exonerating it from liability.  However, as discussed above, "... to the extent that the

11   broad language and purposes of the Privacy Act may encompass conduct that some people believe

12   should not be proscribed, their remedy is to ask the Legislature to draft a statute they find more

13   palatable." *Ribas*, 38 Cal.3d at 362.

14        Remarkably, given the extensive nature of GCS' investigation of the Legislative history of

15   the CIPA, GCS failed to mention to the Court that an exception identical to the one proclaimed by

16   GCS was proposed as an amendment to the CIPA in 1991.  The exception was not voted into law,

17   which begs the question:  Why would a "business exception" need to be considered by the

18   Legislature, after *Ribas* and long after the passage of section 632 of the CIPA, if one already

19   existed?  As the Court can see from the *Assembly Committee on Public Safety Bill No. AB 1589*,

20   heard May 7, 1991, no "business exception" ever existed under the CIPA.  In the same month and

21   year, the California Senate took on for consideration in the Senate Judiciary Committee chaired by

22   then-Senator Bill Lockyer (the same Bill Lockyer who later became the California Attorney General

23   and authored 82 Op. Atty Gen. Cal. 148 cited above) a bill (*Senate Committee on Judiciary Bill No.*

24   *SB 1124*) to extend eavesdropping privileges to all *California State-employed Peace Officers*, which

25   did not pass.

26        Not even all California State-employed Peace Officers have the right to surreptitiously

27   monitor telephone calls.  Nevertheless, Defendant GCS submits to this Court it has the right to do

28   so, despite the fact no such exception appears from the face of the statute, and even after an identical

-9-

1   exception to the CIPA was considered in 1991 and failed.  The truth of the matter is that GCS's

2   contentions on this point are contrary to law and entirely misguided.

3         **6.**      **More Slight of Hand:  The Court Orders & Other Misguided Defense Exhibits**

4         As its final lesson in methods of obfuscation, Defendant GCS attaches as exhibits an order

5   of this Court and an order of a federal court in Florida as proof-positive that eavesdropping and

6   recording of telephonic conversations must be appropriate.  After all, this Court has previously

7   ordered a defendant to do precisely that.  However, as has been the case throughout, GCS's analysis

8   again misses the mark.

9         While the Plaintiffs concede both this Court and a federal Court in Florida have ordered

10   Defendants in FTC cases to monitor or record conversations, the Plaintiffs note one crucial point:

11   No where in those orders are the Defendants required to break the law.  *That is, at no time did*

12   *either Court order the Defendants to monitor or record telephone conversations without*

13   *providing the required disclosure to procure informed consent of the "customer" to monitoring or*

14   *recording, if necessary under the law of the state being called.*

15         The Plaintiffs do not propose that any and all monitoring or recording is outlawed by the

16   State, Commonwealth, and territorial law cited in the FAC.  Instead, the Plaintiffs position is that all

17   monitoring or recording done by any party to a conversation, without the consent of the other party,

18   is illegal.  The cure is obvious and has been a business practice of most reputable companies for a

19   very long time: Provide an oral disclosure to the alleged debtor prior to monitoring or recording the

20   conversation.  That's it.  That's all that is necessary to comply with the CIPA, or any other similar

21   law.  The Plaintiffs note that nowhere in either Defendant's Exhibit H or Exhibit I, does either Court

22   require, or even suggest, that the ordered monitoring not comply with the relevant State law.  These

23   orders therefore have no bearing on this motion and should be disregarded by the Court.

24                                   **B.**

25   **PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION ARE NOT PREEMPTED BY**

26   **CONGRESS'S ENACTMENT OF TITLE III OF THE OMNIBUS CRIME CONTROL AND**
                                     **SAFE STREET ACT OF 1968**

27

28

-10-

1    In short, Defendant, GCS advances the argument that Plaintiffs' Second and Third Causes of

2    Action for respective violations of CIPA and other states' similar two-party wiretapping statutes are

3    preempted by Title III of the Omnibus Crime Control and Safe Street Act of 1968, which Act,

4    Defendant contends, contains a "business use exception" that applies to the factual circumstances of

5    the instant lawsuit.[3]   Defendant cites a bevy of inapplicable federal and state *criminal* and other

6    cases in support of its "preemption" argument.[4]

7    At the outset, Plaintiffs acknowledge that Congress enacted extensive legislation regulating

8    electronic surveillance in the Omnibus Crime Control and Safe Street Act of 1968, which is often

9    referred to as "Title III".  18 USCS § 2510, *et seq.*  As discussed below, however, well-settled state

10   and federal decisional authority clearly demonstrates that the Defendant's "preemption" argument

11   fails as a matter of law.

12   **1.    Congress did not Intend for Title III to Occupy the Field of Wiretapping Such
         that It Would Preempt CIPA or Any Other Similar State Statute**

13

14   Defendant has failed to meet the necessary burden required to establish that Title III

15   preempts CIPA and other similar states' statutes.  Plaintiffs agree that Congress has the authority, in

16   exercising its U.S. Const. art. I powers, to preempt state law; however, as the party arguing for

17   preemption, Defendant bears the burden of demonstrating clear evidence of Congress's intent to

18   displace state law.  *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 6 (1986).  No

19   demonstration of the required clear evidence is proffered by GCS because it does not exist.

20

21

22   [3] It is unclear from Defendant's "preemption" argument whether it claims that Plaintiffs' Second
     and Third Causes of Action are preempted because Congress intended for Title III to occupy the
23   entire field of wiretapping or whether Title III preempts CIPA and other similar state statutes
     because they conflict with Title III.  Notwithstanding this ambiguity, Defendant's "preemption"
24   argument fails in both regards.

25   [4] The Defendant cites a number of cases for the proposition that Title III completely preempts state
26   law.  The actual rule to be derived from the Defendant's citations is that the federal Title III is
     applied, irrespective of state laws, in *federal criminal prosecutions* where the monitoring or
27   recording is not conducted by state law enforcement for purposes of state prosecution.  *See e.g.,*
     *United States v Morrison*, 153 F3d 34 (2d. Cir. 1998).
28

1    The United States Supreme Court has consistently emphasized that the primary, and indeed

2  fundamental, inquiry in any preemption analysis is whether Congress intended to displace state law.

3  *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. at 6 *citing  Pacific Gas & Electric Co.*

4  v. *State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190 (1983); *Silkwood*

5  v. *Kerr-McGee Corp.*, 464 U.S. 238 (1984).  Where a federal statute does not expressly declare that

6  state law is to be preempted, and where there is no actual conflict between the mandates of federal

7  and state law, a proponent must provide evidence of congressional intent to preempt the specific

8  field covered by the state law. *Id.*

9    It has long been well established that Title III was not an attempt by Congress occupy the

10  field, but merely an attempt to establish *minimum* standards to protect a citizens' constitutionally

11  protected right to privacy.  *People v. Conklin*, (1974) 12 Cal.3d 259, 271; *People v. Stevens*, (1995)

12  34 Cal.App.4th 56, 60; *See also, Vannier v. Superior Court* (1982) 32 Cal. 3d 163, 176 (Holding:

13  "Congress had not preempted the field so as to prohibit the states from adopting further limitations

14  on electronic surveillance."); and *4 Witkin, Cal. Crim. Law 3d*, § 338 (2005).[5]  What is more, the

15  legislative history of the wiretapping and eavesdropping provisions contained in Title III suggests

16  that states may impose more stringent standards to protect their citizens' privacy, although it does

17  not suggest that *states must make the violation of such standards criminal. See* S. Rep. No. 1097,

18  90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S. Code Cong. & Admin. News, 2181-87.

19    Here, Defendant has offered absolutely no evidence supporting its argument that, by

20  enacting Title III, Congress intended occupy the specific field of wiretapping.  Nor does it appear

21  from the face of Title III that Congress intended to preempt the CIPA or any other similar state law.

22  Consequently, Defendant's argument, if any, that Plaintiffs claims are preempted because Congress

23  intended for Title III to occupy the specific field of wiretapping must fail.

24    **2.    CIPA and Other Similar State Statutes are not Preempted Because They Do
       Not Conflict with Title III**

25

26  _____

27  [5] The same rule has been applied by other courts who have taken up the issue. *See e.g., In re Cook
    County Grand Jury*, 113 Ill. App. 3d 639 (Ill. Ct. App. 1st Dist. 1983).

28

-12-

1    Defendant's argument that CIPA is preempted by Title III by virtue of a conflict is not

2    supported by decisional authority on-point with the facts of this case.  In fact, Defendant cites at

3    least two cases in support of its "preemption" argument which plainly controvert any theory based

4    upon the doctrine of conflict preemption (*See, Halpin v. Superior Court*, (1972) 6 Cal.3d 885, 899

5    holding that Congress "left room for the states to supplement [Title III] in certain areas"; *see also,*

6    *United States v. Hall* 543 F.2d 1229, 1232 (9th Cir. 1976) (repeating the long-standing rule that

7    federal criminal procedure such as found in Title III applies in federal criminal prosecutions

8    notwithstanding more protective state laws).  The State of California, as it is authorized to do under

9    Title III, has promulgated the CIPA for both criminal and civil purposes.  That federal *criminal*

10   procedure applies in federal *criminal* prosecutions is not reasonably open to dispute.  However,

11   neither is relevant to the claims at issue in this *civil* case.

12    The fact that federal law may be more protective of privacy rights in some circumstances

13   merely means that, in such cases, federal law preempts the more permissive state law.  *People v.*

14   *Conklin*, (1974) 12 C.3d at 271 [concluding that in state criminal proceedings, Title III does not

15   preempt the more restrictive California privacy law codified in Cal. Pen. Code, §§ 630, *et seq.*].  In

16   *People v. Conklin*, a unanimous California Supreme Court held (1) Congress did not intend to

17   occupy the entire field involving the interception of communications, and (2) there was no conflict

18   between federal legislation and the CIPA that would require the state statute to yield under the

19   supremacy clause.  *Conklin*, 12 Cal.3d at 273.  The court in *Conklin* conducted an exhaustive

20   analysis of Title III's legislative history and concluded that Title III revealed a congressional intent

21   that the states are free to adopt more restrictive laws designed to protect the right of privacy.  *Id.*, at

22   271-272.  The court reasoned Congress was not expressing intent to **preempt** the field, but was

23   emphasizing the need to insure nationwide compliance with standards then newly declared by the

24   United States Supreme Court.  *Id.*, at p. 269.

25    The legislative history of title III reveals that Congress intended for states to determine for

26   themselves whether to enact more restrictive laws designed to protect the right of privacy. In section

27   2516, paragraph (2) of the federal act, Congress provided that a state judge may authorize the

28   interception of  wire and oral communications by state law enforcement officers where prior court

-13-

1   approval is obtained under federal standards <u>and</u> "*in conformity with . . . the applicable State*

2   *statute.*" (Italics added.) Thus the language of this section indicates that Congress anticipated state

3   criminal regulation in the field of intercepting communications, including wiretapping.

4          The Senate Report exposes the purpose of Congress in enacting paragraph (2) of section

5   2516. It states, "No applications may be authorized unless a specific State statute permits it. The

6   State statute must meet the minimum standards reflected as a whole in the proposed chapter [title

7   III]. The proposed provision envisions that States would be free to adopt more restrictive legislation,

8   or no legislation at all, but not less restrictive legislation." (Sen. Rep. at p. 2187.)  In other words,

9   "Congress left room for the states to supplement the law in certain areas, provided the regulations

10  are not more permissive." *Halpin v. Superior Court supra*, 6 Cal.3d at pp. 898-899, *fn. omitted*; *see*

11  *also State v. Siegel* (1972) 266 Md. 256 [292 A.2d 86, 94], n. 12 (Md. Ct. App. 1972).

12         Additionally, the statute itself makes this fact abundantly clear even in civil cases such as

13  this one. At 18 U.S.C. §2511(2)(d), Congress created another method of establishing liability under

14  Title III based on violations of the laws of *any state.  See also, Deteresa v. American Broadcasting*

15  *Co.*, 121 F.3d 460, 466-467 (9th Cir. 1997).  Indeed, the *Deteresa* Court even acknowledged that a

16  civil claim may be stated under 18 U.S.C. §2511(2)(d) where the Plaintiff avers a concomitant

17  violation of Cal. Penal Code §632.  *Deteresa*, 121 F.3d at 467, n. 4 ("...Deteresa had to come

18  forward with evidence to show that Radziwill taped the conversation for the purpose of violating

19  Cal. Penal Code § 632...."); *See also, Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500

20  (6th Cir. 1991)  (...section 2511 serves to outlaw surveillance undertaken to violate state law.").

21  Congress clearly did not intend for 18 U.S.C. §2511 to preempt all state law, civil or criminal.

22  Nevertheless, even assuming for the sake of argument Congress did intend to preempt (which the

23  Plaintiffs deny), a claim could in any event be stated under section 2511(2)(d) for violation of the

24  CIPA, which legal theory was expressly recognized by the Ninth Circuit in *Deteresa*.  Hence, under

25  any analysis judgment on the pleadings based upon preemption is inappropriate.

26         CIPA, and each of the state two-party consent statutes at issue in this lawsuit, impose more

27  restrictive rules than Title III.  Specifically, CIPA and each of the two-party state statutes provide

28

-14-

1  for civil *and* criminal penalties if violated.  Accordingly, neither CIPA nor any other similar state

2  statute is preempted by Title III.

3  C.

4  **PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO SUPPORT THEIR
SECOND AND THIRD CAUSES OF ACTION**

5

6  Contrary to GCS's argument, the Plaintiffs indeed alleged in the FAC, upon information and

7  belief, that they were monitored and recorded without their consent.  *See* Complaint: 2:9-15; 5:9-

8  8:27; and 11:3-13:22.  Accordingly, this argument fails as well.

9  **VI.**

10  **CONCLUSION**

11  As set forth above, Plaintiffs' second and third causes of action are legally viable.

12  Furthermore, Plaintiffs have adequately pleaded facts that establish, if proven, liability on the claims

13  contained in their FAC.  Accordingly, Plaintiffs respectfully request that the Court deny Defendant's

14  Motion for Partial Judgment on the Pleadings as to Plaintiffs' First and Second Causes of Action

15  contained in their FAC.  Alternatively, Plaintiffs respectfully request that the Court provide

16  Plaintiffs leave to amend their FAC in the event it finds any of Defendant's arguments for dismissal

17  persuasive.

18  DATED:  January 3, 2006                     **LAW OFFICES OF ROBERT L. ARLEO**

19                                                         - AND -

20                                                         **SCHROTH & SCHROTH**

21                                                         Attorneys for Plaintiffs, ANDREW T.
                                                             THOMASSON, REBECCA J.
22                                                         THOMASSON, MACDONALD P. TAYLOR
                                                             JR., CHENOA R. TAYLOR, and all others
23                                                         similarly situated

24

25

26  By:/_____
                                                             ROBERT E. SCHROTH, JR, ESQ.

27                                                         2044 First Avenue, Suite 200
                                                             San Diego, CA 92101-2079
28                                                         Telephone:  (619) 233-7521
                                                             Facsimile:  (619) 233-4516

-15-

1  ROBERT L. ARLEO, ESQ. (RA 7506)
   **LAW OFFICES OF ROBERT L. ARLEO**
2  225 East 79th Street, Suite 2B
3  New York, NY 10021
   Telephone: (212) 517-9967
4  Facsimile: (212) 517-2919

5  ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
   ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
6  **SCHROTH & SCHROTH, LLC**
7  2044 First Avenue, Suite 200
   San Diego, CA 92101-2079
8  Telephone: (619) 233-7521
   Facsimile: (619) 233-4516
9

10 CHRISTOPHER K. MONELT, ESQ. (SBN 224478)
   **LAW OFFICES OF CHRISTOPHER K. MONELT**
11 2044 First Avenue, Suite 200
   San Diego, CA 92101-2079
12 Telephone: (619) 233-8034
13 Facsimile: (619) 233-4516

14 Attorneys for Plaintiffs, ANDREW T.
   THOMASSON, REBECCA J. THOMASSON,
15 MACDONALD P. TAYLOR JR., CHENOA R.
   TAYLOR, and all others similarly situated
16

17              **UNITED STATES DISTRICT COURT**

18           **SOUTHERN DISTRICT OF CALIFORNIA**

19
   ANDREW T. THOMASSON, REBECCA J. ) CASE NO.  05cv1736 MLH (BLM)
20 THOMASSON, MACDONALD P. TAYLOR )
   JR., and CHENOA R. TAYLOR on behalf of )
21 themselves and all others similarly situated, ) **PROOF OF SERVICE BY PERSONAL**
                                            ) **SERVICE AND U.S. MAIL**
22          Plaintiffs,                     )
                                            )
23          vs.                             ) HON. LARRY ALAN BURNS
                                            ) Dept.: Courtroom 9, Second Floor
24 GC SERVICES LIMITED PARTNERSHIP,  ) Hearing Date:  January 17, 2006
   and DOES 1 through 25 inclusive,         ) Hearing Time:  10:30 a.m.
25                                          )
           Defendants.                      ) Complaint Filed:  May 4, 2005
26                                          )
                                            )
27 _____ )

28 ///

                            - 16 -

*Noreen Santz*

1   I, ~~Christopher C. Saldaña~~, declare as follows:

2       I am, and was at the time of service of the papers herein referred to, over the age of 18 years,

3   and not a party to the action.  I am employed in the County of San Diego, California, within which

4   county the subject service occurred.    My business address is 2044 First Avenue, Suite 200, San

5   Diego, California 92101.

6       On January 3, 2006, I served the following document(s):

7   **1. PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
8   **OPPOSITION TO DEFENDANT'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS FIRST CLAIM FOR RELIEF**

9   **2. EXHIBITS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO**
10  **DEFENDANT'S FED. R. CIV. P. 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

11  [ ]    BY FACSIMILE TRANSMISSION.  (Code of Civ. Proc. §§ 1013(e) and (f)): to the fax

12  *numbers listed on the attached mailing list.  The facsimile machine I used complied with Rule 2008*

13  *and no error was reported by the machine.*

14  [ XX ] BY CAUSING PERSONAL DELIVERY of the document(s) listed above to the person(s) at

15  the address(es) setforth below.

16  [ XX ] BY MAIL (Code of Civ. Proc. §§ 1013 and 1013(a) as follows:

17      [ ]    *By placing a copy thereof for deliver by OVERNIGHT EXPRESS (Code of Civ.*

18  *Proc. §§ 103(c) and (d).*

19      [XX]   *By placing a copy thereof for delivery by FIRST CLASS MAIL in a separate*

20  *envelope addressed to each addressee, respectively listed on the attached mailing list.*

21  [ ]    BY ELECTRONIC FILING/SERVICE. On the below date, I caused such document(s) to be

22  Electronically Filed and/or Served through the CourtLink System for the above entitled case to

23  those parties on the Service List maintained on CourtLink's Website for this case.  This service

24  reported as complete and a copy of the "JusticeLink Filing Receipt" page will be maintained with

25  the original document(s) in our office.

26  [ ]    BY FEDERAL EXPRESS. (Code of Civ. Proc. §§ 1013 (c). of the document(s) listed above

27  to the person(s) at the address(es) setforth below.

28  / / /

*Thomasson, et. al. v. GC Services*
05cv940 LAB (BLM)

1    I am readily familiar with the firm's practice of collection and processing correspondence

2   for mailing.  Under that practice, it would be deposited with the United States Postal Service on the

3   same day with postage thereon fully prepaid at San Diego, California, in the ordinary course of

4   business.  I am aware that, on motion of the party served, service is presumptively invalid if the

5   postal cancellation date or postage meter date is more than once day after the date of deposit for

6   mailing in affidavit.

7    I declare under penalty of perjury under the laws of the State of California that the foregoing

8   is true and correct.  Executed on this 3rd day of January 2006, at San Diego, California.

9

10

11   Christopher C. Saldana, J.D.

   Noreen Santz

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Andrew T. Thomasson, et. al. v. GC Services Limited Partnership
United States District Court, Southern District of California,
Case No. 05cv940 LAB (BLM)

## SERVICE LIST

Attorneys for Defendant
GC SERVICES LIMITED PARTNERSHIP

COLLIER SHANNON SCOTT, PLLC
Thomas E. Gilbertsen, Esq.
3050 K Street, N.W., Suite 400
Washington, D.C. 20007-5108
(VIA – U.S. MAIL)

WRIGHT & L'ESTRANGE
John H. L'Estrange, Jr., Esq.
701 B. Street, Suite 1550
San Diego, CA 92101
(VIA – PERSONAL SERVICE)

- 19 -