








```
CGL    1/11/06    8:02
3:05-CV-00940    THOMASSON V. GC SERVICES LTD PRT
*22*
*RPLYOPPM.*
```

| | |
|---|---|
| 1 | COLLIER SHANNON SCOTT, PLLC |
| | Thomas E. Gilbertsen (Pro Hac Vice) |
| 2 | 3050 K Street, N.W., Suite 400 |
| | Washington, D.C. 20007-5108 |
| 3 | Telephone: (202) 342-8400 |
| | Facsimile: (202) 342-8451 |
| 4 | |
| | WRIGHT & L'ESTRANGE |
| 5 | A Partnership Including |
| | Professional Corporations |
| 6 | John H. L'Estrange, Jr. (SBN 049594) |
| | San Diego, California 92101 |
| 7 | Telephone: (619) 231-4844 |
| | Facsimile: (619) 231-6710 |

FILED

06 JAN 10 PM 3:13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

Attorneys for Defendant GC Services Limited Partnership

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW T. THOMASSON, and MARY JO MIAL, On Behalf of Themselves and All Others Similarly Situated,<br><br>  Plaintiffs,<br>v.<br><br>GC SERVICES LIMITED PARTNERSHIP, and DOES 1 through 25, inclusive,<br><br>  Defendants. | CASE NO. 05cv940 LAB (CAB)<br><br>**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Date: January 17, 2006<br>Time: 10:30 a.m.<br>Courtroom: 9 |

DEFENDANT REQUESTS ORAL ARGUMENT

///
///
///
///
///
///
///

CASE NO. 05cv940 LAB (CAB)

**TABLE OF CONTENTS**
INTRODUCTION.................................................................................... 1

ARGUMENT......................................................................................... 2

I. A PERSON LISTENING TO ITS OWN TELEPHONE CALLS IS NOT "EAVESDROPPING" UNDER SECTION 632................................. 2

II. FEDERAL LAW PREEMPTS COUNTS TWO AND THREE..................... 3

    A. Title III Preempts the Field on the Definition of "Intercept"................. 3

    B. California May Not "Supplement" Title III in Other areas Resulting in a Conflict With Congressional Purpose........................ 6

III. THE SECOND AND THIRD CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THEIR CALLS WERE EAVESDROPPED UPON OR RECORDED............. 8

CONCLUSION....................................................................................... 8

# TABLE OF AUTHORITIES

## CALIFORNIA CASES

*Coulter v. Bank of America*, 28 Cal.App.4th 923 (1994) ............................................................ 2

*Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171 (1999) ........................................ 3

## FEDERAL CASES

*Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999) ......................................................... 2

*Betancourt v. Nippy, Inc.*, 137 F. Supp.2d 27 (D.P.R. 2001) ....................................................... 7

*Boddie v. Amer. Broadcasting Cos.*, 731 F.2d 333 (6th Cir. 1984) ............................................. 7

*Campbell v. Hussey*, 368 U.S. 297 (1961) .................................................................................. 5

*Deteresa v. American Broadcasting Cos.*, 121 F.3d 460 (9th Cir. 1997) .................................... 7

*Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ................................... 6

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) .............................................................................. 3

*Holiday Airlines Corp. v. World Airways, Inc.*, 647 F.2d 977 (9th Cir. 1981) ........................... 7

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ............................................................................. 8

*United States v. Hall*, 543 F.2d 1229 (9th Cir. 1976) ................................................................. 6

*United States v. Butz*, 982 F.2d 1378 (9th Cir. 1993) ................................................................. 6

## CALIFORNIA STATUTES

Cal. Penal Code § 632(a). ............................................................................................................ 2

Cal. Penal Code § 632(b) ............................................................................................................. 3

## FEDERAL STATUTES

18 U.S.C. § 2510(4) ................................................................................................................. 3, 5

18 U.S.C. § 2510(5) ................................................................................................................. 5, 7

18 U.S.C. §§ 2510-2520 ............................................................................................................... 4

18 U.S.C. §§ 2511, 2516 .............................................................................................................. 4

Omnibus Crime Control and Safe Streets Act, Pub. L. No. 90-351, Title III,
§ 801(b) ........................................................................................................................................ 4

# INTRODUCTION

Plaintiffs' Third Cause of Action alleges that GC Services violates Section 632 of CIPA by "eavesdropping" upon or "monitoring" its own telephone calls without the consent of debtors.[1] But Section 632 prohibits "eavesdropping," and says nothing about "monitoring." In its initial brief, GC Services demonstrated that it is a "person" under Section 632, capable of acting only through its authorized officers, agents and employees. GC Services was a party to the telephone calls alleged in the Complaint, and California courts hold that a person listening in to its own telephone communications is not "eavesdropping" under CIPA. *See* Defendants' Memorandum of Points and Authorities in Support of Motion, filed Nov. 23, 2005 ("Initial Brief") at 3-4.

Plaintiffs' Opposition Brief argues that even if GC Services is one entity acting through its employees, CIPA still requires the consent of all parties for a person to eavesdrop on a telephone call. Opposition Brief at 3. That argument misses the point. No "eavesdropping" occurs when GC Services "listens in" on its own ordinary course of business telephone calls, so CIPA's two-party consent rules are never triggered.

Even if CIPA were construed to prohibit GC Services from listening to its own ordinary course of business telephone calls, federal law preempts that construction. Title III defines "intercept" and "device" to exclude ordinary course of business call monitoring and recording. Congress adopted this definition, pursuant to its Commerce Clause powers, to provide a uniform definition that eliminates confusion about what conduct is authorized. Contrary to plaintiffs' argument, no state may "supplement" Title III by adopting conflicting laws that criminalize interceptions that the federal statute authorizes.

///
///
///

---

[1] The Complaint alleges violations of "Cal. Penal Code Section 630 et seq.," but the opposition to this motion abandons any claims under Section 631, emphasizing that only Section 632 is at issue. *See* Complaint at ¶ 60; Plaintiffs' Memorandum of Points and Authorities, filed January 3, 2006 ("Opposition Brief") at 6.

1

## ARGUMENT

### I. A PERSON LISTENING TO ITS OWN TELEPHONE CALLS IS NOT "EAVESDROPPING" UNDER SECTION 632

A Section 632 violation arises wherever a person "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . .." Cal. Penal Code § 632(a). For a violation of Section 632 to arise, there must be a third-party eavesdropper because a party cannot eavesdrop upon itself. *See* Initial Brief at 3-5. Plaintiffs argue that "[u]nder CIPA, a *party* is not the same as a '*person*' . . .." Opposition Brief at 5 (emphasis original). But GC Services was the "party" on the line with the Thomassons and Taylors in the telephone calls alleged. Complaint at ¶¶ 21-39.[2] The Complaint references a number of "persons employed by defendant GC Services" who telephoned the plaintiffs. Complaint at ¶¶ 25-37. The Complaint establishes that these GC Services employees were acting in the ordinary course of GC Services business in each telephone call alleged. *Id.* GC Services was a "party" to the communications, incapable of "eavesdropping" upon them. *Id.* at ¶ 40.[3]

Plaintiffs also argue that GC Services cannot rely on its "corporate" form because it is a limited partnership. Opposition Brief at 7. But GC Services is a single entity under CIPA because Section 632 defines "person" as including a "partnership" or "limited liability company." Cal. Penal Code § 632(b). Even if CIPA did not expressly capture limited partnerships within the definition of "person," California courts recognize that "[w]hether separate entities are present

---

[2] This distinguishes the facts alleged from plaintiffs' cited cases about employee privacy rights. Opposition Brief at 5-6. An employer is not a "party" to personal employee telephone calls, but is a "party" to telephone calls made in the ordinary course of business. *Cf. Amati v. City of Woodstock*, 176 F.3d 952, 955-56 (7th Cir. 1999).

[3] Plaintiffs cite *Coulter v. Bank of America*, 28 Cal.App.4th 923 (1994), as holding that confidential communications conducted in the ordinary course of business may not be monitored or recorded under CIPA without the consent of all parties. Opposition Brief at 4-5. The *Coulter* case did not involve eavesdropping or telephone call monitoring conducted in the ordinary course of business. That case involved an ATM technician who secretly *recorded* over 160 private conversations with his supervisors and coworkers in anticipation of future litigation. *Coulter*, 28 Cal.App.4th at 924-27. There was no argument or finding that Coulter recorded these conversations in the ordinary course of the bank's business.

requires analysis not of the corporate formalities but of the economic realities under which the entities operate." *Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 189 (1999) (emphasizing that a partnership and its agents should be treated as a single entity). GC Services and its employees are a single "party" and "person" under Section 632 when acting in the ordinary course of GC Services business, and the Complaint therefore fails to allege third-party "eavesdropping."

## II.  FEDERAL LAW PREEMPTS COUNTS TWO AND THREE

Title III prohibits some "interceptions" of wire communications while authorizing others. 18 U.S.C. § 2511. The statute emphasizes Congressional intent to define on a nationwide, uniform basis what an "interception" is (18 U.S.C. § 2510(4)), and authorizes ordinary course of business monitoring and recording from the nationwide definitions of "intercept" and "device." *Id.* at 2510(5); *see also* Initial Brief at 8-9. In these matters, the federal statute preempts the field: states may not supplement Section 2510 by outlawing conduct that Congress authorized by expressly excluding it from the definition of "device." Plaintiffs' application of Section 632 also conflicts with federal law because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"[4] – to establish uniform and comprehensive definitions of "intercept" and "device" that resolve confusion about the conduct permitted by law.

### A.  Title III Preempts the Field on the Definition of "Intercept."

In Title III, Congress expressed a design to preempt states from redefining either authorized or prohibited types of wire interceptions. Congress established a comprehensive statutory program[5] to govern "interceptions" of "any wire, oral, or electronic communication," and penalize unauthorized violators. 18 U.S.C. §§ 2511, 2516. One of Title III's stated purposes is "to prevent the obstruction of interstate commerce . . . ." Omnibus Crime Control and Safe Streets Act, Pub. L. No. 90-351, Title III, § 801(b), 1968 U.S.C.C.A.N. 237, 253.

---

[4]   *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

[5]   *See* 18 U.S.C. §§ 2510-2520.

3

To accomplish this goal, Congress expressly declares in the statute: "it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be *authorized* to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings." *Id.* (emphasis added). This statutory declaration of Congress's intent to "define on a uniform basis" what interceptions may be "authorized," based on Congress's plenary power under the Commerce Clause, is repeatedly confirmed by the Senate Report.[6] That Congress championed nationwide uniform standards defining what interceptions would be permitted is not left to doubt: Congress made that declaration in the statute, and if further confirmation were needed, the Senate Report provides it.

Under federal law there can be but one "uniform" definition that eliminates all "confusion" over what constitutes authorized or unlawful interceptions, and Congress provides it by defining precisely the terms "intercept" and "device." Section 2510(4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The statute defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* --

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; . . .

---

[6] *See* Senate Report No. 1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2177 ("it is necessary for Congress to *define on a uniform basis* the circumstances and conditions under which the interception of wire or oral communications may be authorized") (emphasis added); *id.* at 2154 ("Both proponents and opponents of wiretapping and electronic surveillance agree that the present state of the law in this area is extremely unsatisfactory and that the Congress should act to clarify the resulting confusion"); *id.* at 2156 ("The need for comprehensive, fair and effective reform setting *uniform standards* is obvious") (emphasis added); *id.* at 2180 ("[s]ince the facilities used to transmit wire communications form part of the interstate or foreign communications network, Congress has plenary power under the commerce clause to prohibit all interception of such communications, whether by wiretapping or otherwise").

18 U.S.C. § 2510(5) (emphasis added).[7]

Federal courts call this provision the business use "safe harbor." *See* Initial Brief at 8-9. Title III's business use "safe harbor" is no mere defense, but a statutory definition that evidences Congress's use of its Commerce Clause powers to provide businesses – uniformly across the nation – the ability to monitor or record their own phone conversations undertaken in the ordinary course of business.

Plaintiff argues that states are free to supplement Title III's one-party consent provisions, but the issue of consent does not even come into play under the statute's definition of "intercept." When Congress acts under the Commerce Clause to effect its design of a national "uniform" definition that eliminates all "confusion" over what conduct is authorized, it preempts the field. There is no room for supplemental state regulation redefining the conduct authorized by that comprehensive federal regime. *See Campbell v. Hussey*, 368 U.S. 297, 298-301 (1961) (examining the statutory language and history of the Federal Tobacco Inspection Act and holding that Congress's call for a "uniform" national standard to clarify a confused area of law resulted in field preemption with respect to that standard, and any state supplementation necessarily rejected); *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 147 (1963) (the holding of field preemption in *Campbell* resulted from a federal statutory declaration for "uniform" standards, supported by a legislative history "replete with references to a need for 'uniform' or 'official' standards, which could harmonize" varying state standards "at all markets throughout the country").

The Ninth Circuit has reached the same conclusion. Title III preempts state law "generally" – not just in "certain cases" as plaintiffs suggest – allowing state supplementation only where the statute expressly authorizes it. *See United States v. Butz*, 982 F.2d 1378, 1382 (9th Cir. 1993). In *Butz*, the Court recognized that section 2516(2) of Title III, which regulates electronic surveillance by state officers, authorizes judges to approve an interception "in conformity with . . . this chapter and with the applicable State statute . . . ." *Id.* (quoting 18 U.S.C.

---

[7] The Complaint makes no allegation that removes the alleged conduct from the purview of Title III's business use "safe harbor."

5

§ 2516(2)). Other than this "lone exception concerning interception by state officers for state prosecutions, the federal statute does not defer to the states." *Id.* (quoting *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976))). Title III calls for a "uniform" definition of what "interceptions" are "authorized," and nowhere does Title III invite states to redefine the standard of what constitutes an authorized or prohibited interception. Congress preempted the field in this regard.

### B. California May Not "Supplement" Title III in Other Areas Resulting in a Conflict With Congressional Purpose.

Plaintiffs argue, without citing controlling authority, that California may enact and enforce a statute (§ 632) that prohibits and criminalizes wire interceptions within Title III's "safe harbor." According to plaintiffs, California state courts have held that Title III does not preclude a state from supplementing Title III "in certain areas." Opposition Brief at 12-14. But defendant's preemption argument does not rely on whether California may or may not supplement 18 U.S.C. § 2511(d) (the one-party consent provision) with a more restrictive two-party consent rule. GC Services' conduct has been expressly excluded from Title III's definition of "intercept" via the business use "safe harbor." By excluding the conduct alleged from the definition of "intercept," Title III's one-party consent provision (18 U.S.C. § 2519(d)) does not apply and any state "supplement" to this consent provision does not apply to the federally-authorized activity.

Nowhere does Title III invite states to prohibit and criminalize interceptions specifically authorized by Title III. *See Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976) ("The state law cannot preempt the federal unless the federal act itself sanctions the application of state standards.").[8] Congress, wielding its constitutional power over interstate commerce, determined that businesses like GC Services should be authorized to monitor and record telephone calls to which they are a

---

[8] Plaintiffs misplace reliance on *Deteresa v. American Broadcasting Cos.*, 121 F.3d 460 (9th Cir. 1997) for the proposition that they could amend their complaint to assert a claim under 18 U.S.C. § 2511(2)(d) for violation of CIPA Section 632. Opposition Brief at 14. Plaintiffs have not and cannot allege that GC Services is "intercepting" telephone calls for the purpose of committing criminal or tortious acts. 121 F.3d at 467. Other courts confirm that plaintiffs must rely on a statute violated or tort committed separate from the allegedly unlawful interception itself. *Boddie v. Amer. Broadcasting Cos.*, 731 F.2d 333, 339 (6th Cir. 1984); *Betancourt v. Nippy, Inc.*, 137 F. Supp.2d 27, 32 n. 5 (D.P.R. 2001).

party in the ordinary course of business. 18 U.S.C. § 2510(5)(a)(i). Plaintiffs cite no authority for their argument that a state may eviscerate a federally enacted safe harbor by simply passing a statute purporting to do so.[9]

Plaintiffs claim there is no conflict between Title III and CIPA's Section 632 and therefore no resulting preemption. One way that conflict preemption arises is where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) (quoting *Hines*, 312 U.S. at 67). Plaintiffs' interpretation of Section 632 directly conflicts with Title III's definitional standard that Congress ordained, pursuant to its Commerce Clause power, to establish nationwide "uniformity" concerning which types of wire interceptions are prohibited and which are authorized: standards that expressly permit entities to monitor or record their own phone calls in the ordinary course of their businesses. The federal regime does not merely establish a defense for "business use" monitoring and recording, but insures the availability of such monitoring by defining it out of the term "device." Plaintiffs' interpretation of Section 632 interferes with Congress's authority to determine how inter- and intrastate business may be conducted over the nation's telephonic facilities by penalizing interceptions authorized by Congress. Such a state law, criminalizing the same conduct that Congress authorized on a nationwide and uniform basis to "prevent the obstruction of interstate commerce," stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and thereby presents an actual conflict with Title III. *See supra* at 5.

///

///

///

///

---

[9] The authority upon which plaintiffs rely consists largely of California and other state court decisions addressing the question of federal preemption. State decisions interpreting the preemptive scope of federal statutes have no binding authority on this Court. *Holiday Airlines Corp. v. World Airways, Inc.*, 647 F.2d 977, 980 (9th Cir. 1981).

III. **THE SECOND AND THIRD CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT THEIR CALLS WERE EAVESDROPPED UPON OR RECORDED.**

A private plaintiff cannot assert a CIPA claim unless his or her own privacy was violated (see Initial Brief at 10). The Complaint alleges particularized facts about each of the named plaintiffs (Complaint at ¶¶ 21-39) without ever alleging that any of their telephone calls with GC Services were "eavesdropped upon" or "recorded." *See* Initial Brief at 10-11. The only claims of actual eavesdropping or recording that the Complaint alleges – and merely upon "information and belief" – are contained in the class definition. *Id.* at ¶¶ 52, 59. Nor do the Thomassons and Taylors have any Rule 11 basis for pleading more, thus making amendment futile.

## CONCLUSION

For the foregoing reasons, the Court should grant partial judgment on the pleadings in favor of defendant GC Services of the Second and Third Causes of Action asserted in the Complaint. Defendant respectfully requests oral argument on this motion.

Dated: January 10, 2006

COLLIER SHANNON SCOTT, PLLC
-and-
WRIGHT & L'ESTRANGE
Attorneys for defendant GC Services
Limited Partnership

By: _____
John H. L'Estrange, Jr.

**Thomasson, et al. v. GC Services Limited Partnership**
U.S. District Court, Southern District, Case No. 05cv940 LAB (CAB)

**CETIFICATE OF SERVICE BY FACSIMILE AND U.S. MAIL**

I, the undersigned, declare as follows:

I am a citizen of the United States and am employed in the County of SanDiego, California. I am over the age of 18 and not a party to the within action. My business address is 701 B Street, Suite 1550, San Diego, California 92101. On January 10, 2006, I serve the within **DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** on the parties shown below by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully pre-paid in the United States Mail at San Diego, California, addressed as follows:

Robert L. Arleo
Law Offices of Robert L. Arleo
225 E. 79th Street, Suite 2B
New York, New York 10021
Fax: (212) 517-2919

Robert E. Schroth
Robert E.Schroth, Jr.
2044 First Avenue, Suite 200
San Diego, CA  92101
Fax: (619) 231-6710

Christopher K. Monelt
Law Offices of Christopher K. Monelt
2044 First Avenue, Suite 200
San Diego, CA 92101
Fax: (619) 233-4516

[ x ]   BY MAIL: I am readily familiar with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business pursuant to CivLR 7.1.e.4.

[ x ]   BY FACSIMILE: In addition to service by mail as set forth above, a copy of said document(s) were also delivered by facsimile transmission to the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 10, 2006 at San Diego, California.

Peggy Fisher

PROOF OF SERVICE BY U.S. MAIL