USDC SCAN INDEX SHEET

















KAJ   5/31/06   8:02

3:05-CV-00940   THOMASSON V. GC SERVICES LTD PRT

*52*

*O.*

FILED

06 MAY 30 PM 2:37

DEPUTY

1

2

3

4

5

6

7

8

9 # UNITED STATES DISTRICT COURT

10 ## SOUTHERN DISTRICT OF CALIFORNIA

11

12 | ANDREW T. THOMASSON, REBECCA J. THOMASSON, MACDONALD P. TAYLOR JR., and CHENOA R. TAYLOR, on behalf of themselves and all others similarly situated, | CASE NO. 05cv0940-LAB (CAB) |

13 **ORDER DENYING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

14

15                                   Plaintiffs,

       vs.                                   [Dkt No. 15]

16

17 GC SERVICES LIMITED PARTNERSHIP, and DOES 1 through 25, inclusive,

18

                                  Defendants.

19      This matter is before the court on defendant GC Services Motion For Partial Judgment On The

20 Pleadings pursuant to FED.R.CIV.P. 12(c) ("Motion") seeking to eliminate the state law claims in this

21 putative class action challenging defendant's debt collection practices.  A First Amended Class Action

22 Complaint ("FAC") filed August 17, 2005 alleges causes of action for violations of the federal Fair

23 Debt Collection Practices Act, with two pendant state law claims (illegal recording of conversations,

24 and illegal monitoring/eavesdropping of conversations) alleged as violations of specific laws of

25 various states.  Plaintiffs seek statutory damages, costs, attorneys' fees, and injunctive relief.  Plaintiffs

26 filed an Opposition, and GC Services filed a Reply.  Pursuant to Civil Local Rule 7.1(d)(1), the court

27 finds the issues appropriate for decision on the papers and without oral argument.  For the reasons

28 discussed below, the Motion is **DENIED**.



## I.   BACKGROUND

Plaintiffs originally were two California residents and two Delaware residents purporting to sue on behalf of themselves and all others similarly situated, described as "a class consisting of all persons who engaged in at least one telephone conversation with a person employed by Defendant GC SERVICES participating therein and who have had said conversations with a GC SERVICES employee recorded and/or monitored and/or eavesdropped upon."[1]  FAC ¶ 41.  The FAC alleges GC Services operates call centers located throughout the United States.  Each call center is staffed with scores of collectors operating out of cubicles where they initiate and receive telephone contacts with persons located in each of the United States and Puerto Rico.  GC Services uses intrastate and interstate telephone lines to attempt to collect billions of dollars in actual and alleged debts on behalf of its clients. It has contracts with companies in such industry sectors as automotive, retail, telecommunications, and financial for collections on behalf of banks, credit card companies, telecommunications companies, utilities, and federal, state, and municipal governments, courts, and student loan programs, among others.  FAC. ¶ 14; FAC Exh. A.

Plaintiffs allege a January 2005 San Diego Union-Tribune article described the proliferation of call monitoring by "a company's own managers or, increasingly, by third-party monitoring companies." FAC ¶ 12.  The article characterized the practice as call monitors "eavesdrop[ing] on millions of exchanges a year," while "[m]ost callers do not realize that they may be taped even while they are in [sic] hold." Id.  "According to information published on the website operated by Defendant GC SERVICES, it acts as a third-party monitor as described in the newspaper article. . . ."[2] FAC ¶ 13.

\\

\\

---

[1]  On May 18, 2006, the two Delaware plaintiffs submitted a Stipulation Of Voluntary Dismissal of their FAC claims.

[2]  GC Services also offers "third party quality monitoring."  FAC ¶ 15.  It advertises its "call monitoring services" as having "over 100 quality observation analysts that evaluate more than 100,000 customer contacts monthly at hundreds of sites across the globe."  FAC ¶15; FAC Exh. A.  It has "an extensive infrastructure and network monitoring process" which "maximizes its ability to capture, interpret, report, and protect client data." FAC ¶ 18; FAC Exh. A.  Clients "may randomly select recorded contacts to verify that [GC Services] analysts have scored them accurately."  FAC ¶ 17; FAC Exh. A.  The effect of those services on the state law claims is not elaborated in the Motion.

1    The FAC alleges as its First Cause of Action violations of the federal Fair Debt Collections

2    Practices Act ("FDCPA"), 15 U.S.C. § 1692e.[3]  Plaintiffs state the FDCPA violations as: (1) using

3    false, deceptive, and misleading means in an attempt to collect alleged consumer debts, including

4    among other things **not revealing "to consumers that telephone conversations with collectors**

5    **might be recorded and/or monitored and/or eavesdropped upon,"** so that "persons engaged in

6    these telephone conversations, . . . may have revealed personal financial information to debt collectors

7    employed by Defendant GC Services more freely, all to the economic benefit of Defendant GC

8    Services;" and (2) falsely representing the character and legal status of alleged consumer debts," in

9    particular violation of 15 U.S.C. § 1692e(2)(A).  FAC ¶ 49 (emphasis added).

10    The Second Cause of Action alleges illegal recording of conversations between the consumer

11    putative class members and GC Services' collection personnel, "in violation of applicable

12    state/commonwealth laws prohibiting the recording of telephone calls without two-party consent."

13    FAC ¶ 52.    Plaintiffs allege the "surreptitiously recorded telephone calls were 'confidential

14    communications,' within the meaning of" the state/commonwealth statutes, and plaintiffs had a

15    reasonable expectation of privacy and "an objectively reasonable expectation that his or her call was

16    not being recorded."  FAC ¶ 54.  The Third Cause of Action alleges GC Services illegally monitors

17    or eavesdrops on its own telephone conversations without the consent of the class member participant,

18    in violation of various state statutes criminalizing invasions of privacy.

19    The issues raised in this Motion relate to the recording and eavesdropping allegations.  The

20    state laws are all alleged to be similar in material respects to Cal. Penal Code §§ 630, *et seq.*(the

21    California Invasion of Privacy Act) ("CIPA").  FAC ¶¶ 52-53.  The Motion relies on the CIPA

22    provisions as representative legislation.  GC Services moves for judgment on the pleadings of the two

23    state law causes of action on grounds:  the federal Omnibus Crime Control and Safe Streets Act, 18

24    USC § 2510, *et seq.*("Title III") preempts the state laws, relying in particular on the "business use

25

---

26    [3]  The FDCPA provides, in pertinent part:  "A debt collector may not use any false, deceptive, or
misleading representation or means in connection with the collection of any debt. Without limiting the general
27    application of the foregoing, the following conduct is a violation of this section: . . . (2) The false
representation of -- (A) the character, amount, or legal status of any debt; . . . (10) The use of any false
28    representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning
a consumer." 15 U.S.C. § 1692e.

05cv0940

1   exception" provision of "the comprehensive regulatory scheme enacted as Title III" governing "the

2   interception of both interstate and intrastate oral and wire communications;" the Third cause of action

3   must be decided in its favor because GC Services monitors only its own telephone conversations in

4   the ordinary course of business, whereas "eavesdropping requires a third party," so that failure to allege

5   "third party" eavesdropping is fatal to the claim; and it is entitled to judgment on the pleadings of the

6   Second and Third causes of action because Plaintiffs fail to allege their own conversations were

7   actually monitored or recorded, and they have no standing to seek to vindicate the rights of others.

8   **II.     DISCUSSION**

9           **A.     Legal Standards**

10          Federal Rule of Civil Procedure ("Rule") 12(c) authorizes the court to render judgment on the

11  pleadings upon a motion by any party after the pleadings are closed.  When the party moving under

12  Rule 12(c) "clearly establishes on the face of the pleadings that no material issue of fact remains to be

13  resolved and that it is entitled to judgment as a matter of law," judgment on the pleadings is properly

14  granted.  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd., 132 F.3d 526, 529 (9th Cir.

15  1997).  If the parties present matters outside the pleadings in connection with the motion, and the court

16  does not exclude those matters, the motion must be treated as one for summary judgment and disposed

17  of as provided in Rule 56.  Rule 12(c);  Fajardo v County of Los Angeles, 179 F.3d 698, 699 (9th Cir.

18  1999);  see also Moran v. Peralta Comm. College Dist., 825 F.Supp. 891, 893 (N.D.Cal. 1993)

19  (although Rule 12(c) does not expressly authorize "partial" judgments, it does not bar them, and it is

20  "common practice to apply rule 12(c) to individual causes of action").

21          Despite procedural differences from a Rule 12(b)(6) motion for dismissal for failure to state

22  a claim, the standards applied to Rule 12(c) and Rule 12(b)(6) motion are "virtually identical."  Moran,

23  825 F.Supp. at 893;  see Qwest Comm. Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D.Cal.

24  2002).  Such motions are properly granted when it appears beyond doubt, after construing all facts and

25  inferences in favor of the nonmoving party, that the nonmoving party can prove no set of facts to

26  support its claim.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);  Libas Ltd. v. Carillo, 329 F.3d 1128,

27  1130 (9th Cir. 2003);  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th

28  Cir. 1989) (judgment on the pleadings is appropriate when, even if all material facts in the pleading

1   under attack are true, the moving party is entitled to judgment as a matter of law).  Legal conclusions

2   cast in the form of factual allegations need not be taken as true.  <u>Lee v. City of Los Angeles</u>, 250 F.3d

3   668, 679 (9th Cir. 2001); <i>see</i> <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).  If the

4   complaint raises issues of fact which, if proven, would support recovery, a defendant is not entitled

5   to judgment on the pleadings.  <u>General Conference Corp. of Seventh-Day Adventists v. Seventh-Day</u>

6   <u>Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).

7        GC Services submits nine Exhibits in support of its Motion.  Courts do not convert Rule 12(c)

8   or Rule 12(b)(6) motions into ones for summary adjudication of issues (governed by Rule 56)  by

9   considering matters of which the court can take judicial notice, but the court does not undertake that

10   analysis in this Order.  The court also does not consider at this time the correspondence submitted as

11   exhibits in support of the congressional intent arguments as beyond the pleadings and inappropriate

12   for consideration in deciding a Rule 12(c) or Rule 12(b)(6) motion.

13        **B.    <u>Preemption Issue</u>**

14        Preemption of state law under Congress' U.S. Constitution Article I powers is demonstrated

15   either by showing Congress intended the federal legislation to occupy the entire field at issue, or by

16   showing that a state's statute actually conflicts with the federal legislation and must therefore yield to

17   federal law. The party arguing for preemption has the burden to demonstrate clear evidence of

18   congressional intent to displace state law.  <u>Wardair Canada, Inc. v. Florida Dep't of Revenue</u>, 477 U.S.

19   1, 6 (1986) (upholding a Florida tax on air travel against a preemption challenge); <i>see also</i> <u>Silkwood</u>

20   <u>v. Kerr-McGee Corp.</u>, 464 U.S. 238 (1984) (where the federal statute does not expressly declare state

21   law to be preempted, and where there is no actual conflict between the mandates of the federal and the

22   state law, a preemption proponent must provide evidence of congressional intent to preempt the

23   specific field covered by the state law); <i>see also</i> <u>Pacific Gas & Electric Co. v. State Energy Resources</u>

24   <u>Conservation and Development Comm'n</u>, 461 U.S. 190 (1983).

25        Title III prohibits the interception of oral and wire communications, with certain exceptions.

26   It defines an unlawful interception as "the aural or other acquisition of the contents of <i>any</i> wire,

27   electronic, or oral communication through the use of any electronic, mechanical, or other device." 18

28   U.S.C. § 2510(4) (emphasis added).

1          As used in this chapter -- . . . (5) 'electronic, mechanical, or other
device' means **any device** or apparatus which can be used to **intercept**
2          a wire, oral, or electronic communication *other than* -- (a) **any
telephone** or telegraph instrument, equipment or facility, or any
3          component thereof, (i) **furnished to the subscriber or user** by a
provider of wire or electronic communication service **in the ordinary
4          course of its business** and being **used by the subscriber or user in
the ordinary course of its business** *or* furnished by such subscriber or
5          user for connection to the facilities of such service **and used in the
ordinary course of business**; or (ii) being used by a provider of wire
6          or electronic communication service **in the ordinary course of its
business**, or by an investigative or law enforcement officer **in the
7          ordinary course** of his duties . . . ."

8    18 U.S.C. § 2510(5) (emphasis added).

9        Section 632 of the CIPA criminalizes eavesdropping or recording of **confidential**

10   communications[4] when all parties to the communication have not consented to the monitoring or

11   recording.  That section provides, in pertinent part (emphasis added):

12          a)  Every person who, intentionally and **without the consent of all
parties** to a **confidential communication**, by means of any **electronic**
13          **amplifying or recording device**, *eavesdrops upon or records* the
14          confidential communication, whether the communication is carried on
among the parties in the presence of one another or **by means of a
15          telegraph, telephone, or other device**, except a radio, shall be
16          punished by a fine not exceeding two thousand five hundred dollars
($2,500), or imprisonment in the county jail not exceeding one year, or
17          in the state prison, or by both that fine and imprisonment. . . .

18          (b)  The term **"person"** includes an **individual, business association,
19          partnership,** corporation, **limited liability company,** or **other legal
entity,** and an individual acting or purporting to act for or on behalf of
20          any government or subdivision thereof, whether federal, state, or local,
**but excludes an individual known by all parties to a confidential
21          communication to be overhearing or recording the communication.**
22          . . .

23   The codified objective of CIPA is privacy protection for confidential communications.

24          The  Legislature  hereby  declares  that  advances  in science and
25          technology have led to the development of new devices and techniques
for the purpose of eavesdropping upon private communications and that
26

27      [4]  "The term 'confidential communication' includes any communication carried on in circumstances
as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto,
28   but excludes a communication made . . .in any other circumstance in which the parties to the communication
may reasonably expect that the communication may be overheard or recorded. . . ."  CIPA § 632(c).

                                 05cv0940

the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.  [¶]  **The Legislature by this chapter intends to protect the right of privacy of the people of this state.**

Cal. Penal Code § 630 (emphasis added).

GC Services cites federal and state cases for the proposition that "Title III generally preempts state wiretapping and eavesdropping laws," and that Congress intended to occupy "the fields of wiretapping and electronic surveillance."[5] Mot. 9:2-10:2; Mot. 8:3-5.  It contends Title III identifies interceptions which are "authorized" by the uniform standards the federal legislation enacted, in particular "ordinary course of business" call monitoring,[6] so that state statutes like the CIPA are purportedly preempted if they purport to criminalize interceptions the federal law authorizes, warranting disposal of Plaintiffs Second and Third causes of action in its favor.  Reply 7:16-18 (state laws cannot "criminaliz[e] the same conduct that Congress authorized on a nationwide and uniform basis").  In particular:

> The Complaint asserts that CIPA and other state eavesdropping or wiretapping statutes prohibit GC Services from monitoring or recording its own telephone communications in the ordinary course of business.  If the Complaint's legal conclusion is correct, those state statutes must yield to conflicting federal statutory law. Title III expressly authorizes the challenged conduct, and preempts the basis for plaintiffs' claims.

Mot. 10:3-7.

\\

---

[5]  In their Opposition to this Motion, Plaintiffs expressly confine their claims: "Plaintiffs' FAC does not allege recovery for eavesdropping under" section 631 of the CIPA. . . ." Opp. 6:11-11. Plaintiffs are proceeding only under Section 632.

[6]  "Ordinary course of business" under the Title III exception has been found to have "very much the same meaning in this statute as it does in the myriad of other legal contexts in which it is used -- an action is taken in the ordinary course of business if it is a routine activity of the business in furtherance of a legitimate business goal." Arias v. Mutual Central Alarm Services, Inc., 182 F.R.D. 407, 416, 417 (S.D.N.Y. 1998).

GC Services contends its position is further supported by the Title III definitions of "electronic, mechanical, or other device" and "interception" in the "ordinary course of its business" because such express authorization to monitor or record business telephone conversations precludes enforcement of CIPA or other state law provisions which interfere or conflict with that portion of Title III. GC Services characterizes that exception as a "safe harbor" and as "a statutory definition . . . evidenc[ing] Congress's use of its Commerce Clause powers to provide businesses -- uniformly across the nation -- the ability to monitor or record their own phone conversations undertaken in the ordinary course of business."[7]  Reply 5:2-7.  "Under federal law there can be but one 'uniform' definition that eliminates all 'confusion' over what constitutes authorized or unlawful interceptions, and Congress provides it by defining precisely the terms 'intercept' and 'device'" at 18 U.S.C. § 2510(4).  Reply 4:11-5:1.

GC Services also argues states cannot "supplement" the federal statute in a manner that conflicts with the federal law.  Reply 1:19-21, 5:9-12 (there "is no room for supplemental state regulation redefining the conduct authorized by that comprehensive federal statute").  In reliance on United States v. Butz, 982 F.2d 1378, 1382 (9th Cir. 1993), GC Services argues the only exception to the preclusion of "supplemental" state law associated with Title III is in the area of electronic surveillance, where express deference is recited in 18 U.S.C. § 2516(2), addressing interception by state officers for state criminal prosecutions. See Butz, 982 F.2d at 1382 (addressing the introduction of electronic surveillance evidence in a federal criminal case where state standards were violated, concluding that although "we generally interpret Title III as preempting state law, we have suggested that [Section 2516(2)] requires further authorization by state statute").

\\

---

[7]   See Amati v. Woodstock, 176 F.3d 952, 954 (7th Cir. 1999) (citations omitted) ("Title III also contains an exclusion for interceptions made in the 'ordinary course of business.' This is intended for situations in which a business or other entity . . . . records calls to or from its premises in order to monitor performance by its employees").

Purportedly protected by the "business use exception," GC Services argues it cannot be liable for monitoring or recording conversations involving its employees, warranting judgment on the pleadings in its favor of the Second and Third causes of action. It disputes that the issue of consent, Plaintiffs' primary argument, even comes into play "under the statute's definition of 'intercept.'" Reply 5:7-8. However, the California statute is privacy legislation prohibiting the eavesdropping or recording of "confidential communications." Cal. Penal Code § 632(a) and (c). The codified purposes of CIPA and Title III differ. Preemption is not self-evident on the bases argued by GC Services.

Moreover, CIPA does not appear to be wholly representative of all the state laws cited in the FAC. *Cf., e.g.*, the Massachusetts statute G.L. c. 272, § 99 (strictly prohibiting the secret electronic recording by a private individual of *any* oral communication), discussed in Commonwealth v. Hyde, 750 N.E.2d 963, 967, fn. 5 (Mass. 2001) (noting "[e]very State, with the exception of Vermont, has some type of eavesdropping or wiretapping statute," but observing the Massachusetts "commission clearly designed the 1968 amendments to create a *more restrictive* electronic surveillance statute than comparable statutes in other States") (emphasis added). While not binding on this court, the Hyde observations support rejection of GC Services' "occupation of the field" Title III preemption argument, as well as calling into question whether CIPA is actually co-extensive with the other state statutes, so that even if GC Services demonstrated CIPA preemption, not all the bases for the state law claims would necessarily also be eliminated.[8] GC Services' reliance on California criminal cases to

---

[8] The Hyde court compares the Massachusetts statute cited in the FAC to Cal. Penal Code § 632(a), (c), observing: "The California electronic surveillance statute prohibits only the recording of 'confidential communications.'" Hyde, 750 N.E.2d at 970-71. The Hyde court affirmed convictions on charges a defendant unlawfully intercepted the oral communications of another when the defendant, a motorist stopped by police officers, surreptitiously tape recorded the encounter. The Massachusetts electronic surveillance statute (Mass. G.L. c.272, § 99) prohibited secret electronic recording by a private individual of any oral communication. The Massachusetts statute provides, in pertinent part: "Except as otherwise specifically provided in this section any person who willfully commits an interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication shall be fined . . . or imprisoned. . . ." Hyde, 750 N.E. at 966, fn. 3. Had the defendant in Hyde "simply informed the police of his intention to tape record the encounter, or even held the tape recorder in plane sight,

1  demonstrate Title III has preemptive effect in that context is not dispositive of the issue in the civil

2  context of surreptitious recording and eavesdropping. *See, e.g.*, Butz, 982 F.2d at 1382 ("we *generally*

3  interpret Title III as preempting state law") (emphasis added); Halpin v. Superior Court, 6 Cal.3d 885,

4  900 (1972) ("we hold that Title III has preempted *particular fields* of wiretapping and electronic

5

6  surveillance") (emphasis added).

7      Plaintiffs dispute GC Services' preemption theories. They argue it is well settled "that Title III

8  was not an attempt by Congress [to] occupy the field, but merely an attempt to establish *minimum*

9  standards to protect a citizens' constitutionally protected right to privacy." Opp. 12:9-11, 11:12-18.

10

11 *See* People v. Conklin, 12 Cal.3d 259, 271 (1974) (in state criminal proceedings, Title III does not

12 preempt the more restrictive California law codified at Cal. Penal Code §§ 630, *et seq.)*; People v.

13 Stevens, 34 Cal.App.4th 56, 60 (1995); Vannier v. Superior Court, 32 Cal.3d 163, 176 (1982)

14 ("Congress has not preempted the field so as to prohibit the states from adopting further limitations

15

16 on electronic surveillance").[9]  While not binding on this court, the Conklin opinion extensively

17 analyzes Title III's legislative history to conclude Congress did not intend to occupy the entire field of

18 communications interception, and there was no conflict between federal legislation and the CIPA that

19 _____

20 . . . his recording would not have been secret, and so would not have violated G.L. c.272 21 99," which
   "unequivocally ban[s]" secret tape recording by private individuals. Id. at 971.
21

22     [9] *See* Vannier at 175-76 (footnote and parallel citations omitted). "Both the Congress and our
   Legislature have enacted statutes regulating electronic surveillance. 'Although some differences in scope exist,
   the federal and state acts regulate the same area. In general terms, [T]itle III prohibits the interception of wire
23 and oral communications (18 U.S.C.A. § 2511(1)(a)) and their disclosure or use (18 U.S.C.A. § 2511(1)(c)(d))
   except where court authorization is obtained by a law enforcement official (18 U.S.C.A. §§ 2516-2518) and
24 with other limited exceptions. The state Invasion of Privacy Act ([Cal. Pen. Code,] §§ 630-637.2) forbids
   wiretapping (§ 631) and electronic eavesdropping (§ 632) except by law enforcement officers . . . with other
25 limited exceptions (*see, e.g.*, § 633.5).  Thus the scheme of the federal act is based on **the type of
   communication**, that is, whether it is wire or oral; the state act, by contrast, on **the type of surveillance**, that
26 is, whether it is wiretapping or eavesdropping. . . . Where evidence is obtained by unlawfully intercepting a
   communication, both acts make it inadmissible in any judicial, administrative, legislative, or any other
27 proceeding. (18 U.S.C.A. § 2515; [Pen. Code,] §§ 631, 632.)' (People v. Conklin (1974) 12 Cal.3d 259, 263
   (fn. omitted).) Recognizing that the federal prohibitions were binding on the state, Conklin held that Congress
28 had not preempted the field so as to prohibit the states from adopting further limitations on electronic
   surveillance. (12 Cal.3d 259, 262 et seq.)."

would require the state statute to yield under the Supremacy Clause. Rather, that analysis demonstrates Congress intended states to be free to adopt more restrictive privacy laws while ensuring nationwide compliance with minimum standards emerging from United States Supreme Court decisions at the time. Conklin, 12 Cal.3d at 269-273; see also Halpin, 6 Cal.3d at 898-99 ("Congress left room for the states to supplement the law in certain areas, provided the regulations are not more permissive").

Plaintiffs also dispute that the CIPA and other similar state statutes conflict with Title III, the other avenue for GC Services to demonstrate preemption of the state laws. Relying on GC Services own cited authority, they argue first that the rule which actually emerges is that in federal *criminal* prosecutions federal *criminal procedure* applies, an undisputed premise. *See* United States v. Hall, 543 F.2d 1229, 1232-33 (9th Cir. 1977) (notwithstanding more protective state laws, federal criminal procedure such as that embodied in Title III applies **in federal criminal prosecutions**).[10] The Hall case was decided by analyzing Title III and Cal. Penal Code § 631 (prohibiting wiretapping and the use of any information so obtained and making such evidence inadmissible in state court proceedings), whereas Plaintiffs' Opposition emphasizes that of the CIPA provisions, only Cal. Penal Code § 632 is at issue in this case. Moreover, the conflict here is not based on an inconsistency in evidence admissibility between federal and state law.

Plaintiffs recite the rule which emerges from the authority GC Services cites as that Title III applies in federal criminal prosecutions where the monitoring or recording is not conducted by state

---

[10]   The Hall court, deciding an appeal from an arrest and criminal conviction for possession of heroin, addressed "the question of the admissibility in federal court of evidence seized pursuant to an arrest by California officers when that arrest was based on the state agents' use of information gathered by wiretaps authorized under federal law but illegal under California law," holding such evidence to be admissible in federal court, even if excludable in state court. The wiretap was duly authorized by Title III and was lawful by federal standards, but it violated CIPA. The court held the evidence so seized was admissible in federal court, even if excludable in state court, acknowledging: "It may well be true, as the California courts have held, that the federal act does not preclude the states from enacting more restrictive wiretapping statutes of their own," noting only that "[t]o the extent there is a conflict between the state and federal legislation, . . . the federal statute controls under the Supremacy Clause of the Constitution . . . ." Hall, 543 F.2d at 1232.

law enforcement for purposes of state prosecution, although the states are not precluded from legislating in the area with respect to state prosecutions. *See, e.g.*, United States v. Morrison, 153 F.3d 34 (2nd Cir. 1998). They argue that because the state statutes impose more restrictive rules than Title III, no preemption theory prevents their stating a claim under CIPA, precluding judgment on the pleadings of their state law claims on that basis. Opp. 14:26-15:2 ("CIPA, and each of the state two-party consent statutes at issue in this lawsuit, impose more restrictive rules than Title III. Specifically, CIPA and each of the two-party state statutes provide for civil *and* criminal penalties if violated. Accordingly, neither CIPA nor any other similar state statute is preempted by Title II").

Moreover, the Ninth Circuit has addressed both a claim for violation of the federal eavesdropping statute and a claim for Cal. Penal Code § 632 violation arising out of the same conduct, without troubling over preemption issues. *See, e.g.*, Deteresa v. American Broadcasting Companies, Inc., 121 F.3d 460, 466-67 (9th Cir. 1997) (upholding district court's grant of summary judgment for defendants on *both* a Cal. Penal Code § 632 cause of action *and* a cause of action under the federal eavesdropping statute (18 U.S.C. §§ 2511(2)(d),[11] 2520) where plaintiff sued a television network and a producer for surreptitiously taping a conversation to which the individual defendant was a party). The Deteresa court held as a matter of law, on undisputed material facts, that under 18 U.S.C. § 2511(2)(d), defendants would be liable for a violation of section 2511 only if they recorded the conversation "for the purpose of committing any criminal or tortious act." Deteresa, 121 F.3d at 466-67 (emphasizing the distinction between a taping that is itself tortious or criminal and one carried out for the purpose of committing some other crime or tort). In the absence of such evidence, the court

---

[11]  "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person **is a party to the communication *or* where one of the parties to the communication has given prior consent to such interception *unless* such communication is intercepted for the purpose of committing any criminal or tortious act** in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).

- 12 -

granted defendant summary judgment on the federal eavesdropping cause of action. The CIPA section 632 claim also failed because plaintiff had no reasonable expectation the conversation would not be divulged to anyone else. Id. at 463-64 (if defendant did not audiotape a "confidential communication," Section 632 "does not apply"); see also Sussman v. American Broadcasting Companies, Inc., 186 F.3d 1200, 1202-03 (9th Cir. 1999) ([w]here the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies," but "[w]here the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere . . . ") (emphasis added). The "elsewhere" may be state statutes like CIPA, which make illegal the recording of confidential communications without the consent of all parties to the communication . Cases like Sussman and Deteresa courts leave little doubt state privacy laws regulating eavesdropping and recording of conversations are not necessarily preempted by Title III.

Without expressing any opinion on the merits of any of the causes of action, and without reaching the ultimate question whether the manner in which GC Services monitors or records its debt collection calls violates either federal or state laws, the court perceives the CIPA presents no "obstacle to accomplish" Congress' objectives.  CG Services has not identified language in Title III that articulates legislative intent to occupy the entire field of regulating communication monitoring, eavesdropping, or recording. Any finding of "conflict" between the CIPA and Title III will depend in on an evidentiary showing from facts establishing GC Services' actual conduct, the "devices" employed, the modes and uses of the "interceptions," and the like.  Rule 12(c) review is limited to a determination from the face of the pleadings whether "no material issue of fact remains to be resolved and that [the moving party] is entitled to judgement as a matter of law." Enron Oil, 132 F.3d at 529. The court is unable to find as a matter of law the Second and Third causes of action are necessarily preempted by federal law and **DENIES** judgment on the pleadings on that theory.

## C.    State Law Claims

### 1.    The Laws

GC Services moves for judgment on the pleadings of the state law claims alleging illegal recording of conversations (Second Cause Of Action) and illegal monitoring/eavesdropping (Third Cause Of Action). Those causes of action are alleged to arise under particular laws of California, Connecticut, Florida, Illinois, Maryland, Massachusetts, Michigan, Montana, Nevada, New Hampshire, Pennsylvania, Washington, Puerto Rico, "and any other similar or related law." FAC ¶¶ 53, 60. The parties rely on provisions of California's CIPA as representative of the "similar statutes in 12 other states or territories."[12] Mot. 1:6-8. By its terms,"[e]very person who, intentionally and without the consent of all parties to a confidential communication . . . eavesdrops upon or records such confidential communication" violates Cal. Penal Code § 632. "This language has uniformly been construed to prohibit one party to a confidential communication from recording that communication without knowledge or consent of the other party," based not only on the language of that section but also "upon legislative history and other provisions of the statute."[13] Warden v. Kahn, 99 Cal.App.3d 805, 812 (1979) (citations omitted).

### 2.    Calls Monitored In The Normal Course Of Business

The FAC alleges GC Services "secretly listen[s] in" on telephone calls between its employees and persons who are alleged to owe money to GC Services' clients, in violation of state statutes like

---

[12]  Although neither side suggests the other state statutes cited in the FAC deviate in any material way from California law on the same issue, cases such as Hyde, 750 N.E.2d 963 suggest that generalization may be overstated. See fn 8, above. No state statutory detail is before the court at this time other than the CIPA.

[13]  The Warden court decided issues presented under Section 631 in the context of a civil dispute for damages brought by an attorney against a former client, but stated Section 632 "is less ambiguous and applies to any party who, without consent of the other, 'eavesdrops upon or records' any confidential communication." Opp. 5:10-19, 6:11-15 (emphasis added). Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation," distinguishing Section 632. Warden , 99 Cal.App.3d at 811. Plaintiffs here do not rely on Section 631.

1  Cal. Penal Code § 632. GC Services argues that conduct amounts to "nothing more than ordinary

2  course of business monitoring for quality control purposes." Mot. 5:21-22, *citing* FAC ¶¶13-18,21-39;

3  FAC Exh. A. "When acting in the ordinary course of business, GC Services and its employees are one

4  'person' under CIPA and every other legal regime."[14] Mot. 4:14-15, 4:22-24 ("When a corporate

5

6  employee acts in the course of his or her employment, on behalf of the corporation there is no entity

7  apart from the employee with whom the employee can conspire"), *quoting* Black v. Bank of America,

8  30 Cal.App.4th 1, 6 (1994). GC Services argues "[f]or a CIPA violation to exist their must be at least

9

10 three parties: Speaker A, Speaker B, and a 'third party' wiretapper or eavesdropper." Mot. 3:27-28,

11 *citing* Ribas v. Clark, 38 Cal.3d 355, 363 (1985) (CIPA is "designed to protect a person placing or

12 receiving a call from a situation where the person on the other end of the line permits an outsider to

13 tap his telephone or listen in on the call"); *see* Rogers v. Ulrich, 52 Cal.App.3d 894, 899 (1975) ("it

14 is never a secret to one party to a conversation that the other party is listening to the conversation; only

15

16 a third party can listen secretly to a private conversation"). "GC Services and its employees are not

17 legally distinct individuals when acting in the ordinary course of GC Services' business," therefore

18 "[n]o 'eavesdropping' occurs when GC Services 'listens in' on its own ordinary course of business

19 telephone calls, so CIPA's two-party consent rules are never triggered."[15] Reply 1:12-14, 3:3-6;

20

21 Mot. 4:7-13. Absent "third-party 'eavesdropping,'" GC Services contends the Third cause of action

22

23

24  [14]  Plaintiffs take issue with GC Services' reliance on authority involving corporate entities because it is a limited partnership. Opp. 7:16-19. However, the company's organizational form is immaterial for these purposes. The CIPA expressly defines "person" as "an individual, **business**, association, partnership, corporation, limited liability company, **or other legal entity**, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof." Cal. Penal Code § 632(b) (emphasis added).

25

26

27  [15]  GC Services distinguishes Coulter v. Bank of America, 28 Cal.App.4th 923 (1994), relied on by Plaintiffs for the proposition confidential communications conducted in the ordinary course of business may not be monitored or recorded under CIPA without the consent of all parties (*see* Opp. pp. 4-5), on grounds the "Coulter case did not involve eavesdropping or telephone call monitoring conducted in the ordinary course of business." Reply p. 2, fn. 3, *citing* Coulter, 28 Cal.App.4th at 924-27.

28

1    must be dismissed."[16]

2        The parties dispute whether the CIPA contains a "business exception" and whether the

3    Legislature intended to recognize such an exception. Opp. pp. 8-10; Mot. pp. 3-7; Reply pp. 2--3; *cf.*

4    Title III. The resolution of whether GC Services operates within an ordinary course of business

5    exception to CIPA *or the other statutes* identified in the FAC will turn on factual determinations from

6    

7    evidence not presently before the court of GC Services' actual methods, purposes, and uses of

8    monitored or recorded confidential communications. The court declines to apply a definitive statutory

9    construction to the undeveloped facts of this case at this point in the proceedings. The court similarly

10   

11   declines Plaintiffs' invitation at this procedural juncture to construe the CIPA "with reference to the

12   whole system of law of which it is a part."[17] Opp. 6:22-24. The court confines its decision here to

13   whether the state law claims must be decided in GC Services' favor from the face of the pleadings.

14   

15       Even were they to concede the CIPA contains an ordinary course of business exception

16   applicable to GC Services, which they do not, Plaintiffs assert the "dispositive fact" with respect to

17   survival of the CIPA claims is *"Plaintiffs and other similarly situated individuals in telephonic*

18   *communications did not consent to being monitored or recorded by GCS or its employees,"*

19   contending it is immaterial to the finding of a violation that GC Services monitors or records only its

20   own telephone calls as part of its ordinary course of business. Opp. 3:22-26. Cal. Penal Code § 632(a)

21   

22   facially requires that "all parties" to a confidential conversation consent to the monitoring or recording

23   thereof by any "person," outside of evidence collection for particular crimes. *See* <u>Warden</u>, 99

24   

25   

26   [16]    Analysis of state statutes' "ordinary course of business" exception (the existence of which the
parties dispute), as with analysis of the Title III "ordinary course of business" exception (18 U.S.C. § 2510(5))

27   requires factual inquiry into the actual manner and purpose of the "interceptions" and bears on their
characterization under that doctrine. *See, e.g.* <u>Arias</u>, 182 F.R.D. 407.

28   [17] Moreover, the question would remain whether Plaintiffs could prevail on any of the other legislative
regimes cited in the FAC. The CIPA is only one of a dozen sued under.

1   Cal.App.3d at 812 ("the presence of section 633.5[18] in the Invasion of Privacy Act is inexplicable

2   except on the assumption that the legislature intended at least some portion of the act to apply to

3

4   participant [monitoring] or recording").

5       Both sides rely on Ribas, 38 Cal.3d 355 in support of their contrary positions.[19]   Although

6   Ribas was decided under CIPA section 631, a provision Plaintiffs do not rely on, the case discusses

7   the legislative objectives of the CIPA statute.   The Privacy Act has been read to require the assent of

8   all parties to a communication before another can listen, "to 'protect a person placing or receiving a

9
    call from a situation where the person on the other end of the line permits an outsider to tap his
10

11  telephone or *listen* in on the call.'"   Ribas, 38 Cal.3d at 363 (adding italics to quotation from

12  Comment, *Electronic Surveillance in California:  A Study in State Legislative Control* (1969) 57

13  Cal.L.Rev. 1182, 1202, fn.120).   *See* Mot. 3:1-3.   Plaintiffs observe the California Attorney General

14  has cited Ribas for the proposition:   "The Act is applicable to a confidential telephone call, and

15
    prevents one party to a conversation from recording it without the other's consent."   82 Op. Atty. Gen
16

17  Cal. 148, *citing* Ribas, 38 Cal.3d at 362.   Opp. 4:1-4.

18              The Plaintiffs do not propose that any and all monitoring or
            recording is outlawed by the [state] law cited in the FAC.   Instead, the
19          Plaintiffs' position is that all monitoring or recording done by any party
            to a conversation, without the consent of the other party, is illegal.   The
20          cure is obvious and has been a business practice of most reputable
            companies for a very long time:   Provide an oral disclosure to the
21

22

23  [18]   CIPA § 633.5 provides:   "Nothing in Section 631, 632, . . . prohibits one party to a confidential
    communication from recording the communication **for the purpose of obtaining evidence reasonably**
24  **believed to relate to the commission by another party to the communication of the crime of extortion,**
    **kidnapping, bribery, any felony involving violence against the person,** or a violation of Section 653m.
25  Nothing in Section 631, 632, . . . renders any evidence so obtained inadmissible in a prosecution for extortion,
    kidnapping, bribery, any felony involving violence against the person, a violation of Section 653m, or any
26  crime in connection therewith."   Warden, 38 Cal.App.3d at 812-13 (emphasis added), *citing, inter alia*, Forest
    E. Olson, Inc. v. Superior Court, 63 Cal.App.3d 188, 192 (1976).

27      [19]   The Ribas court concluded the CIPA, in particular Section 631(a), penalizes various forms of secret
    monitoring of conversations, not merely the use of electronic amplifying and recording devices, and can
28  encompass use of an extension telephone for eavesdropping on confidential communications "in any
    unauthorized manner . . . to learn the content . . . of any . . . communication."   Ribas, 38 Cal.3d at 359-60.

alleged debtor prior to monitoring or recording the conversation. That's
it. That's all that is necessary to comply with the CIPA, or any other
similar law.

Opp. 10:15-21.

If the conduct alleged does not come within the statutory prohibition, Plaintiffs cannot prevail

on their state law claims. Judgment on the pleadings of such a claim would be proper because "[n]o

factual development could possibly justify a right to recover under the eavesdropping statute."

Sullivan v. Gray, 324 N.W.2d 58, 60 (1982). However, the court finds factual development is

necessary in this case before it may be said Plaintiffs could prove no set of facts under any of the state

laws they cite entitling them to relief on the Second or Third causes of action, particularly as the other

cited state laws do not appear to be identical to CIPA.

For example, the Michigan statute identified in the FAC has been interpreted to permit the

recording of a conversation by one of the participants without the consent of the other participant(s).

"A recording made by a participant is nothing more than a more accurate record of what was said."

Sullivan, 324 N.W.2d at 60 ("Whether an individual should reasonably expect that an ostensibly

private conversation will be related by a participant to third parties depends on that individual's relation

to the other participant").[20]   The Massachusetts wiretapping statute cited in the FAC has been

---

[20]   In addition to certain distinctions noted above with respect to the Massachusetts privacy statute, the Michigan statute also sued under (M.C.L. § 750.539, et seq.) might not prohibit participant recording under a telephone conversation eavesdropping theory alleging defendant violated the statute by recording the conversation. See Sullivan, 324 N.W.2d 58 (applicable statute does not prohibit a party to a telephone conversation from tape recording conversation absent consent of all other participants, even though the statute criminalizes the willful use of "any device to eavesdrop upon the conversation without the consent of all parties thereto," and also "prohibits the use or divulgence of information obtained by eavesdropping," based on the statutory definition of "eavesdrop" as a "means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse"). The Sullivan court was deciding an issue "novel" to that jurisdiction, outside the context of the eavesdropping statute's impact on the admission of evidence in criminal trials: whether participant recording is forbidden. Applying purely statutory construction principles, that court found "the statutory language, on its face, unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to 'the private discourse of others.'" Sullivan, 324 N.W.2d at 59-61. "The statute contemplates that a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on," otherwise the phrase "of others" might have been excluded or changed to "of others or with others." Id. at 60. That court

- 18 -                                              05cv0940

construed in the context of challenges to a defendant company's recording of calls between employees of a telephone company call center and customers. *See* O'Sullivan v. NYNEX Corp., 687 N.E.2d 1241, 1246 (Mass 1997) (upholding *summary judgment* in favor of defendant and holding that telemarketing calls randomly monitored and recorded without the customers' knowledge was done in the ordinary course of business for the legitimate business activity of monitoring employees' performance to assess the quality of customer service, with no outside function, and, therefore, did not violate the Massachusetts' statute).[21]  Resolution of the issues in this case will require elaboration of the facts associated with GC Services' actual conduct, equipment, the manner of use in the business, and the like.  The O'Sullivan court could make such determinations because it was deciding a motion for summary judgment on a developed evidentiary record rather than a facial challenge to the pleading. *See* O'Sullivan 687 N.E.2d at 1245 (indicia such as that the conversations recorded were limited to those necessary for training and supervision, that access was strictly limited to quality management supervisors, and that the recording device at issue qualified as "telephone equipment" resulted in a holding the company was using the system to intercept calls "within the ordinary course of business").

For all the foregoing reasons, the court **DENIES** judgment on the pleadings based on GC Services' business call monitoring theories.

\\

\\

---

acknowledged an "incongruity," but one not amounting to an "inconsistency," in the result that under the statute: "[w]hile a participant may record a conversation with apparent impunity, his sole consent is insufficient to make permissible the eavesdropping of a third party," so that "while a participant may record a conversation, he apparently may not employ third parties to do so for him." Id.  The dissent in Sullivan would find instead that "the statute prohibits the recording of a conversation, whether by a third party or participant, unless *all* persons involved in the conversation have given their permission."  Id. at 61.

[21]  The O'Sullivan court, relying on the body of cases involving situations where an employer was monitoring employee conversations, articulated a "general rule:"  "monitoring business calls is legal, but eavesdropping on private calls is illegal unless there 'is a legitimate business purpose' for the employer to monitor an employee's conversation."  O'Sullivan 687 N.E.2d at 1245-46.

### 3.    Failure To Allege Plaintiffs' Own Telephone Calls Were Monitored

GC Services also challenges the Second and Third Causes of Action as failing to state a claim because Plaintiffs purportedly do not allege GC Services actually monitored or recorded their calls. The FAC descriptions of each individual plaintiff allege three of them participated in calls with GC Services' employees without knowing the calls "might be" or "may be" recorded or monitored, and one of them was told of that possibility, whereupon he terminated the call.  FAC ¶¶ 26-28, 30-31, 36, 39.

Applying Rule 12(c) standards of review, the court construes the FAC allegations in the light most favorable to Plaintiffs.  Without forming any opinion on the merits, the court finds the pleading adequate to survive judgment on the pleadings with respect to at least one of the remaining putative class representatives.   Each plaintiff individually alleges telephone contact with GC Services associated with debt collection, a confidential subject matter.  Paragraph 40 of the FAC describes GC Services' "policies and practices complained of" as initiating and accepting telephone communications from persons "such as the Plaintiffs named herein, and to record and/or monitor and/or eavesdrop upon said telephone calls, without advising these persons that said telephone calls are being recorded and/or monitored and/or eavesdropped upon. . . ."  The description of the class Plaintiffs purport to represent expressly alleges they are all persons whose calls were recorded/monitored/eavesdropped upon, and consists of "all persons who engaged in at least one telephone conversation with a person employed by Defendant GC SERVICES participating therein and who have had said conversations with a GC SERVICES employee recorded and/or monitored and/or eavesdropped upon."  FAC ¶ 41; *see also* FAC ¶¶ 59; FAC  ¶ 45 ("The Plaintiffs' claims are typical of the class members.  All are based upon the same facts and legal theories"); FAC  ¶ 52 ("The Plaintiffs and other persons compose a class of all persons who had their telephone communications with individuals employed by Defendant GC SERVICES recorded without their consent, in violation of applicable state/commonwealth laws

1   prohibiting recording of telephone calls without two-party consent"). The court accordingly **DENIES**

2   the Motion for partial judgement on the pleadings of the Second and Third causes of action on grounds

3   of that alleged pleading defect.

4

5   **III.    CONCLUSION AND ORDER**

6           For the foregoing reasons, **IT IS HEREBY ORDERED** GC Services' Motion For Judgment

7   on the pleadings with respect to the state law claims is **DENIED**.

8           **IT IS SO ORDERED.**

9   DATED: _____5-27-06_____         _Larry A. Burns_
                                      _____
10

11                                   **HONORABLE LARRY ALAN BURNS**
                                     United States District Judge
12

13   cc:   MAGISTRATE JUDGE CYNTHIA ANN BENCIVENGO
            ALL COUNSEL OF RECORD
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28