








KAJ    7/31/06    13:55
3:05-CV-00940    THOMASSON V. GC SERVICES LTD PRT
*110*
*DECL.*

```
 1  ROBERT L. ARLEO, ESQ. (Federal Bar No. 7506)
    1375 Broadway, Third Floor
 2  New York, New York   10018
    Telephone: (646) 278-5648
 3
    ROBERT E. SCHROTH, ESQ. SR., ESQ. (SBN 103063)
 4  ROBERT E. SCHROTH, JR., ESQ.        (SBN 212936)
    2044 First Avenue, Suite 200
 5  San Diego, CA   92101-2079
    Telephone: (619) 233-7521
 6  Facsimile:  (619) 233-4516

 7  CHRISTOPHER K. MONELT, ESQ.
    2044 First Avenue, Suite 200
 8  San Diego, CA   92101-2079
    Telephone: (619) 233-8034
 9  Facsimile:  (619) 233-4516

10  Attorneys for Plaintiffs
```

**FILED**

06 JUL 31 AM 10: 41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**NUNC PRO TUNC**

BY: _____ DEPUTY
JUL 24 2006

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| ANDREW T. THOMASSON and REBECCA THOMASSON, on behalf of themselves and all other similarly situated, | CASE NO. 3:05 CV940 LAB (CAB) |
| | **DECLARATION OF ROBERT L. ARLEO IN SUPPORT OF *EX PARTE* APPLICATION TO VACATE ORDER DATED JUNE 2, 2006** |
| Plaintiffs | |
| -against- | |
| GC SERVICES LIMITED PARTNERSHIP and DOES 1 through 25 inclusive, | HON. CATHY ANN BENCIVENGO<br>Date: TBD<br>Time: TBD<br>Place: TBD |
| Defendants | |

Robert L. Arleo, declares as follows,

1. My name is Robert L. Arleo. I am over the age of 18 and competent to make this declaration. The information contained herein is true and correct of my own personal knowledge. If called upon to testify in this matter, I could and would competently testify as to the matters stated herein.

THOMASSON V. GC SERVICES                    CASE NO. 3:05 CV940 LAB (CAB)

110 vaj

1　　　2. I am an attorney-at-law licensed to practice in the State of New York and admitted *pro*

2　*hac vice* to practice before this Court. I am co-counsel of record for the Plaintiffs in this case,

3　Andrew and Rebecca Thomasson.

4

5　　　3. I submit the herein declaration in support of the Plaintiffs' *ex parte* application to vacate the

6　Order issued by Your Honor dated June 2, 2006 (hereinafter "the Order").

7

8　　　4. Initially, reference is made to that portion of the Order which asserts that I essentially hung

9　up on Your Honor after the conclusion of the last teleconference. Please be advised that such was

10　not the case. As all other counsels who participated in the teleconference can confirm all business

11　before Your Honor was completed at the time I left the teleconference.

12

13　　　5. I sympathize with Your Honor in regard to the difficulties surrounding discovery issues in

14　regard to the above-entitled action. However, Your Honor may rest assured that said difficulties have

15　been caused solely due to the intentional tactics invoked by the Defendant and zealously advanced

16　by its counsels, especially attorney Thomas Gilbertsen.

17

18　　　6. Although I was greatly troubled by the contents of the Order, I have purposely delayed

19　filing any application to vacate said Order so that Your Honor would have the opportunity to

20　continue to personally view the obstructive and improper tactics which the Plaintiffs, my co-counsels

21　and I have been forced to confront since the inception of this action. However, our problems and

22　resultant frustrations have been especially enhanced since Mr. Gilbertsen filed his notice of

23　appearance. Based upon the slew of motions which the Plaintiffs have been forced to file in order

24　to effect their right to conduct discovery, said motions presently before Your Honor, the magnitude

25　of abuse which the Plaintiffs, my co-counsels and I have been compelled to suffer at the hands of

26　the Defendant and Mr. Gilbertsen should now be patently obvious to Your Honor.

27

28　THOMASSON V. GC SERVICES　　　　　　　　CASE NO. 3:05 CV940 LAB (CAB)

7. Mr. Gilbertsen has been especially adept at causing my co-counsels and I to devote many hours in effort to compel the Defendant, Mr. Gilbertsen, and Mr. L'Estrange to comply with the Federal Rules of Civil Procedure. It is quite simply for Mr. Gilbertsen to use the resources of a large law firm (such as his) to create havoc. Rest assured that Mr. Gilbertsen has availed himself of this luxury.

7. I am well versed in the tactics which are invoked by this particular Defendant. I was compelled to withstand these same tactics a decade ago in conjunction with the matter of Labbate-D'Alauro v. G C. Serv. LTD. P'ship, 168 F.R.D. 451 (E.D.N.Y. 1996). Indeed, the same obstructive tactics and personal attacks upon the Plaintiff therein and myself were invoked by the Defendant and its counsels therein. After much time and effort I was able to effect a successful result in regard to the Labbate-D'Alauro matter. I expect the same successful result herein.

8. I have been practicing law for 15 years. Most of my legal practice has been devoted to protecting consumers, and assisting debt collectors, in regard to the Fair Debt Collection Practices Act (FDCPA). I teach Consumer Law in conjunction with my capacity as Adjunct Professor of Law at Thomas Jefferson School of Law. Also, I have served on the faculty at New York University wherein I taught legal ethics at its School of Continuing Education, Department of Law and Taxation. I am absolutely aware of my responsibilities as an attorney at law.

9. I am particularly sensitive to the fact that I have never appeared before Your Honor prior to the herein action. However, I have previously appeared in this Court before Magistrate Judge Stiven and Magistrate Judge Brooks in conjunction with two other FDCPA class action lawsuits. Furthermore, the Honorable Herbert B. Hoffman served as a Special Master in conjunction with one of said FDCPA lawsuits. I am comfortable in asserting that all three of these jurists would attest to not only my professionalism but to my zealous advocacy on behalf of my clients and the classes of

THOMASSON V. GC SERVICES                    CASE NO. 3:05 CV940 LAB (CAB)

persons at issue in the subject lawsuits. With the valued assistance of each of these jurists each of these lawsuits were ultimately settled on a class action basis and each received a final approval order.

10. I appeared last year before the United States Court of Appeals for the Ninth Circuit. Should Your Honor request I can provide a copy of the tape of my oral argument therein.

11. In sum, I have appeared before Judges in federal courts in regard to numerous cases in the States of New York, California and Massachusetts. Furthermore, I have appeared before judges in actions filed under the laws of the states of New York and New Jersey. I have tried cases in both federal and state courts. I have never been sanctioned by any judge nor have I ever been adjudged to have violated any legal ethics by any grievance committee. Therefore, the Order issued by Your Honor has caused me great concern.

12. In sum, my actions before Your Honor were caused solely by the conduct of Mr. Gilbertsen invoked in advancement of the scorched earth defense invoked by the Defendant herein. His blatant misrepresentations to the Court, and his propensity to continually refer to me as "he" when he speaking to Your Honor during the several telephonic conferences which have occurred in regard to the herein action, was simply unacceptable to me. My actions during the teleconferences before Your Honor were absolutely necessary to indicate to Mr. Gilbertsen, Mr. L'Estrange and to the Defendant that I will zealously protect myself and the respective interests of my clients and the putative class of persons to whom I owed a fiduciary duty since the start of the herein action.

13. In considering the herein application I respectfully request that Your Honor remain cognizant of the fact that the Defendant herein is one of the largest collection agencies in the world. The tactics invoked by the Defendant, and advanced by their counsels, are typical of the attitude of rogue collection agencies in general. I attache herewith a copy of an article which appeared in the

THOMASSON V. GC SERVICES                    CASE NO. 3:05 CV940 LAB (CAB)

July 5, 2006 edition of the New York Times. Said article, entitled "An Outcry Rises as Debt Collectors Play Rough", reports on the recent dramatic increase in complaints against collection agencies. Indeed, the conduct of Mr. Gilbertsen, and the scorched earth defense which he and Mr. L'Estrange have orchestrated, indicates that the Defendant herein considers the herein action to be nothing more than a nuisance and simply an obstruction to their end-all goals, i.e. the collection of massive amounts of monies in order to realize their contingent fees.

14. Indeed, the motions now pending before Your Hour indicate that the Order has simply embolden the Defendant, Mr. Gilbertsen and Mr. L'Estrange.

15. Based upon all of the foregoing I respectfully request that Your Honor vacate the Order dated June 2, 2006.

I declare under the penalty of perjury under the laws of the State of New York and the State of California that the foregoing is true and correct. Executed this 14th day of July, 20006 at New York, New York.

DATED: New York, New York
July 14, 2006

ROBERT L. ARLEO
Attorney for Plaintiffs Rebecca
and Andrew Thomasson

THOMASSON V. GC SERVICES                    CASE NO. 3:05 CV940 LAB (CAB)

## Harassing phone calls and threats of arrest as incentives to pay up.

wrote to state and city officials. In April, the city's Department of Consumer Affairs got Midland to acknowledge that the debt was erroneous. But that was not the end of it, because in the meantime, in March, Mr. Rhodes heard from a second collection agency, Phillips & Cohen Associates of Westampton, N.J., demanding payment on the same account, this time for $1,900. Mr. Rhodes sent letters of protest and contacted the city again.

J. Brandon Black, the chief executive of Encore, said, "The vast majority of fraud or mistaken-identity complaints and concerns are taken care of at the level of the issuer." Matthew A. Saperstein, a vice president at Phillips & Cohen, said it closed the account on May 12 after receiving a letter from Mr. Rhodes.

Ms. Guillet, the Bronx woman with the gasoline charges, spent two years insisting that her credit card charges were not valid. Finally, lawyers for New Century Financial Services of Cedar Knolls, N.J., which had bought the debt, obtained a judgment in New York City Civil Court that led Emigrant Savings Bank to freeze her account. Ms. Guillet, who has fibromyalgia, a muscle pain and fatigue disorder, lives on $1,324 a month in Social Security Disability Insurance.

Although companies must serve notice before getting permission to freeze a bank account, such notices are often misdirected or, as in Ms. Guillet's case, ignored by people who are fearful or confused.

A nonprofit legal clinic, MFY Legal Services, got the account unfrozen in January and, after providing extensive documentation that Ms. Guillet had saved over two years, reached a settlement with New Century, which agreed to stop contacting her and dropped the case. (A company official, Jeff Esposito, said he could not discuss the case.)

"It stressed me out so bad," Ms. Guillet said of being pursued for a debt she did not incur. "I wondered what else might be out there that I don't know about."



## Complaints About Aggressive Tactics

Consumer complaints about improper debt collection practices have recently skyrocketed nationally and in New York City while the number of licensed debt collection agencies has grown.

Sources: Federal Trade Commission, National Consumer Law Center, New York City Department of Consumer Affairs

aggressive and sometimes unscrupulous tactics by debt collection agencies, a phenomenon that has government regulators increasingly concerned.

In April, the Federal Trade Commission, which enforces the federal law that governs debt collection practices, reported that it received 66,627 complaints against third-party debt collectors last year — more than against any other industry, and nearly six times the number in 1999.

The agencies often buy the debt from more established companies for pennies on the dollar and seek to collect even if the debt has been paid or was never valid to begin with. Sometimes, consumers pay up simply because they are worn down by Chase credit card bill for $2,300, including five charges from Amoco gasoline stations in the Bronx. She has never owned a car or had a driver's license.

The bank agreed that the charges were not valid, but the debt case hung on because the bank turned it over to a collection agency. Last November, that agency obtained a court order allowing it to freeze Ms. Guillet's bank account even though it could not demonstrate that the debt was valid.

"I felt helpless," said Ms. Guillet, 57, a nurse who is retired on full disability. "I couldn't pay my rent, buy food or pay my electricity bills."

Officials in New York City, which has some of the most stringent consumer protection laws in the country, ... in 2005, 509 in 2004 and 422 in 2003.

The city's Department of Consumer Affairs recently subpoenaed records from eight companies with the most complaints and is considering whether to propose tougher regulations. And last month, New York's attorney general, Eliot Spitzer, sued a national debt collection company, accusing it of trying in thousands of cases to collect on debts that could not be verified.

The Federal Trade Commission enforces the Fair Debt Collection Practices Act, the 1977 law that prohibits abusive, deceptive and unfair tactics by collection agencies. Last July, the commission won $10.2 million — its biggest judgment for ille-

Continued on Page B4



agency had the bank account of Judith Guillet, right, frozen even though the charges on her credere invalid. Karuna B. Patel, with MFY Legal Services, helped her resolve the situation.

Ruby Washington/The New York Times

gal collection practices — in a case against National Check Control of Secaucus, N.J. The company, now out of business, overstated the amounts consumers owed and threatened them with arrest and prosecution.

"We're very concerned about the increase in complaints about debt collection, and we are stepping up our enforcement against the debt collection industry," said Peggy L. Twohig, who directs the F.T.C.'s Division of Financial Practices.

In its most recent annual report on the act, the commission identified tactics that have become particularly common: misrepresenting the nature, size and status of a debt; making constant harassing and abusive phone calls at all hours; contacting a debtor's relatives, employers and neighbors; failing to investigate claims by consumers that a debt is paid, expired or fraudulent; and threatening to sue or seek prosecution. (Such threats are illegal unless the collector has both the legal basis and the intent to take such action.)

In addition to filing complaints with regulators, a growing number of consumers are suing over debt collection abuses, according to the National Association of Consumer Advocates.

Stephanie M. Clark, 36, and her husband sued the Triad Financial Corporation of Huntington Beach, Calif., and Verizon Wireless in Federal District Court in Santa Ana, Calif., in August 2004. After they fell behind on their car payments, the suit alleged, Triad hired a collector

who threatened them with arrest, posed as a Verizon Wireless employee, changed the password on their cellphone account and obtained their cellphone records. According to the suit, the collector called dozens of the couple's relatives, friends and business associates, posing as a law enforcement officer and telling them that there was an arrest warrant for the Clarks.

"They contacted former and future employers," said Ms. Clark, who now lives in Healdsburg, Calif. "It was very stressful. We felt completely violated. Humiliated." In June 2005, before the case was to go to trial, the companies settled with the Clarks for an undisclosed sum. (Both companies said they could not discuss the settlement, which also resolved the original debt, because of a confidentiality agreement.)

Last July, Leigh A. Feist, 39, of Minneapolis, took out a cash-advance loan of around $570. From September to April, a collection agency, Riscuity, called Ms. Feist constantly on her cellphone and at her job at a health insurer, according to a suit that her lawyer, Peter F. Barry, filed on May 25. The calls were so frequent, Ms. Feist said, that her supervisor examined the record of incoming calls and reprimanded her.

Edward Chen, president of Riscuity, based in Marietta, Ga., said that he was not aware of the suit but that the company stops calling debtors at work at their request.

Regulators and consumer advocates say many creditors prefer to hire collection agencies or sell bundled debts to debt buyers because of the expense of litigation.

Robert J. Hobbs, the deputy director of the National Consumer Law Center, an advocacy organization based in Boston, attributed the rise in complaints about abusive collection practices to three broad trends: the rapid growth in the number of collection agencies, the tightening of bankruptcy-protection laws last year and the record level of consumer debt, now totaling $2.2 trillion, complicated by rising interest rates and stagnant personal incomes. Identity theft and Internet fraud are also cited as factors.

Rozanne M. Andersen, the general counsel at ACA International, which represents 3,600 debt collection agencies, more than half of the estimated 6,000 to 7,000 such companies in the United States, said its members adhere to a rigorous code of ethics. "To the extent there are abusive practices taking place in the industry, ACA International absolutely denounces those practices that fall outside of the law," she said.

Eric M. Berman, a lawyer in Babylon, N.Y., and an officer of the National Association of Retail Collection Attorneys, whose members represent creditors, said complaints filed with the government were not always legitimate. For example, he said, some debtors complain when debt collectors will not accept partial payments on the same installment terms that the original lender provided, a practice that may be frustrating to the debtor but is legal.

"People need to get much more education about credit accounts and what they're getting into," Mr. Berman said. "In addition, there are a small minority who are scammers — people who will run up credit with no intent of paying it and then try to negotiate their way out of it."

While consumer advocates say that abusive collection practices have a disproportionate effect on poor people, the elderly, immigrants and people with limited English, the rise in complaints seems to span the social and economic spectrum.

*Karen James contributed reporting for this article.*

The New York Times

Mary H. Monroe, 71, a retiree in Williamsburg, Brooklyn, received repeated calls last year from Diversified Collection Services, part of the Performant Financial Corporation of Livermore, Calif., insisting that she owed more than $8,000 in tuition and fees at a beauty school that she had never attended. "I thought they had to be kidding," she said.

She said the calls continued, despite her protests that the collectors had the wrong person. "I finally got a lawyer to write to them, and they haven't bothered me since," she said.

Maria Perrin, a senior vice president at Performant, said the company halts its efforts when it learns of cases of mistaken identity. "Honestly, we don't want to spend time with the wrong person," she said.

James M. Rhodes, 65, was not as lucky as Ms. Monroe. In November, Mr. Rhodes, a commercial lawyer and arbitrator on the Upper East Side of Manhattan, received the first of three letters from Midland Credit Management, part of the Encore Capital Group of San Diego. The company insisted that he pay $2,800 on a MasterCard he never had.

Mr. Rhodes repeatedly insisted that the debt was not his, and then

ROBERT L. ARLEO, ESQ. (RA 7506)
LAW OFFICES OF ROBERT L. ARLEO
225 East 79th Street, Suite 2B
New York, NY 10021
Telephone: (212) 517-9967
Facsimile: (212) 517-2919

ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
SCHROTH & SCHROTH, LLC
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-7521
Facsimile: (619) 233-4516

Attorneys for Plaintiffs, ANDREW T. THOMASSON, REBECCA J. THOMASSON,

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW T. THOMASSON, REBECCA J. THOMASSON, MACDONALD P. TAYLOR JR., and CHENOA R. TAYLOR on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GC SERVICES LIMITED PARTNERSHIP, and DOES 1 through 25 inclusive,<br><br>Defendants. | CASE NO. 05cv940 LAB (BLM)<br><br>**PROOF OF SERVICE BY U.S. MAIL** |

I, ~~Noreen Santz~~ Ian Schroth, declare as follows:

I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action. I am employed in the County of San Diego, California, within which county the subject service occurred. My business address is 2044 First Avenue, Suite 200, San Diego, California 92101. On 24th day of July, 2006, I served the following document(s):

**1. DECLARATION OF ROBERT ARLEO IN SUPPORT OF EX PARTE APPLICATION TO VACATE COURT ORDER.**

-1-

[ XX ]       BY MAIL as follows:

[XX]   By placing a copy thereof for delivery by FIRST CLASS MAIL in a separate envelope addressed to each addressee, respectively listed on the attached mailing list.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on the same day with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that, on motion of the party served, service is presumptively invalid if the postal cancellation date or postage meter date is more than once day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 24th day of July, 2006, at San Diego, California.

*[signature: Ian Schroth]*

~~Noreen Santa~~
Ian Schroth

-2-

Thomasson, et. al. v. GC Services
05cv940 LAB (CAB)

## SERVICE LIST

Attorneys for Defendant
GC SERVICES LIMITED PARTNERSHIP

LEWIS, BRISBOIS, BISGAARD & SMITH, L.L.P.
Tim J. Vanden Heuvel, Esq.
R. Gaylord Smith, Esq.
550 West "C" Street, Suite 800
San Diego, CA 92101-3540

KELLEY DRYE & WARREN, LLP
Thomas E. Gilbertsen, Esq.
3050 K Street, N.W., Suite 400
Washington, D.C. 20007-5108

WRIGHT & L'ESTRANGE
John H. L'Estrange, Jr., Esq.
701 B. Street, Suite 1550
San Diego, CA 92101