1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ANDREW T. THOMASSON, REBECCA J.            CASE NO. 05cv0940-LAB (CAB)
     THOMASSON, MACDONALD P.
12   TAYLOR JR., and CHENOA R. TAYLOR,          **ORDER DENYING PLAINTIFFS'**
     on behalf of themselves and all others     **MOTION FOR LEAVE TO FILE**
13   similarly situated,                         **SECOND AMENDED**
                                                 **COMPLAINT**
14                             Plaintiffs,
                                                 [Dkt No. 90]
15         vs.

16   GC SERVICES LIMITED PARTNERSHIP,
     and DOES 1 through 25, inclusive,
17
                               Defendants.
18
          This matter is before the court on plaintiffs' Motion For Leave To File Second Amended

19   Complaint ("Motion") in this putative class action alleging violations of the Fair Debt Collections

20   Practices Act and state invasion of privacy laws.  Defendant GC Services filed Opposition, and

21   plaintiffs filed a Reply.  Pursuant to Civ. L. R. 7.1(d)(1), the court finds the issues appropriate for

22   decision on the papers.  For the reasons discussed below, the Motion is **DENIED**.

23        Federal Rules of Civil Procedure ("Rule") 15(a) provides, in pertinent part: ". . . a party may

24   amend the party's pleading only by leave of court or by written consent of the adverse party; and leave

25   shall be freely given when justice so requires."  The strong federal policy favoring the disposition of

26   cases on the merits and permitting amendment with "extreme liberality" (DCD Programs Ltd. v.

27   Leighton, 833 F.2d 183, 186 (9th Cir. 1987)) is balanced against various factors:  (1) bad faith; (2)

28   undue delay; (3) prejudice to the opposing party; (4) futility of the proposed amendment; and (5)

1  impact on judicial economy, resources, and the court's ability to manage cases and control its dockets.

2  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).  The possibility of delay alone

3  cannot justify denying leave to amend.  DCD Programs, 833 F.2d at 186.  Courts give considerable

4  weight to whether prejudice would result to the non-moving party by permitting the amendment.  In

5  addition, if the moving party has previously amended its pleadings, that fact is relevant to the decision

6  whether to grant leave to amend again. Id. at 186 n.3; Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir.

7  1980); Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004) (the court's discretion to

8  deny leave to amend is "particularly broad" when the plaintiff has previously filed an amended

9  complaint).  The "underlying purpose of Rule 15 [is] to facilitate decision on the merits rather than

10  on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

11        This action was initiated on May 4, 2005 with the filing of a Complaint For Violations Of The

12  Fair Debt Collections Practices Act And California's Invasion Of Privacy Act ("Complaint") by

13  putative class representatives Andrew T. Thomasson (alleged to be a California resident residing in

14  Oceanside)  and Mary Jo Mial (alleged to be a California resident residing in Lakeside), naming as

15  the sole defendant GC Services (alleged to be a Delaware partnership with a principal place of

16  business in Houston, Texas engaged in the business of debt collections) and Does.  On August 17,

17  2005, before any responsive pleading was filed, plaintiffs filed a First Amended Class Action

18  Complaint ("FAC") terminating plaintiff Mial and adding as putative class representatives, in addition

19  to Andrew Thomasson, new plaintiffs Rebecca J. Thomasson, MacDonald P. Taylor, and Chenoa R.

20  Taylor.  The FAC represents the Taylors are residents of Delaware.

21        GC Services answered the FAC on October 17, 2005.  The court denied plaintiff's motion to

22  strike GC Services affirmative defenses.  GC Services unsuccessfully moved for partial judgment on

23  the pleadings.  On stipulation of the parties, by Order entered May 22, 2006, the court terminated the

24  Taylor plaintiffs and dismissed all their claims in this action without prejudice, leaving as putative

25  class plaintiffs only the Thomassons.

26        Case management dates in this action have been continued several times, and the docket

27  reveals a pattern of contentious discovery disputes requiring considerable intervention by Magistrate

28  Judge Cathy Ann Bencivengo in the form of multiple orders compelling discovery responses and

1 admonitions regarding potentially sanctionable conduct.  The number of docket entries has swelled

2 to 153 as of the date of this Order.  In addition to the instant Motion For Leave To File SAC, the

3 parties have three other motions pending before this court:  GC Services' Motion For A Limit On

4 Communications With Putative Class Members And For Sanctions, presently calendared to be heard

5 November 20, 2006; GC Services' Motion For Summary Judgment under the FAC, presently

6 calendared to be heard November 27, 2006; and plaintiffs' Motion For Class Certification (hearing

7 date vacated, to be reset after rulings on this Motion and the Motion For Summary Judgment).

8 The original Scheduling Order set a deadline of March 3, 2006 to file any motion to join

9 parties or to amend pleadings. Dkt No. 21.  On March 2, 2006, the parties filed a Stipulation, entered

10 as an Order, to continue to May 3, 2006 the deadlines to file any motion to join other parties, to amend

11 the pleadings, and to file the class certification motion.  The court annotated the Order:  "No further

12 extensions of time will be granted absent a <u>showing</u> of <u>good cause</u>." Dkt No. 39.  On May 3, 2006,

13 the extended deadline date, plaintiffs' counsel filed an *Ex Parte* Application to extend the deadline

14 again, on the asserted "good cause" grounds plaintiffs needed to "interview each putative class

15 member whose telephone conversations were admittedly monitored by the Defendant" to ascertain

16 whether they were advised that the conversations may be monitored, in consideration of "certain form

17 documents entitled 'GCS TELEPHONE MONITOR REVIEW'" allegedly produced by GC Services

18 in the course of discovery.  Dkt No. 41.  GC Services opposed the Application, arguing:  an

19 unresolved discovery dispute, which plaintiffs purportedly failed to raise for three months, was their

20 impetus for requesting yet another extension of time, and their lack of diligence should defeat a "good

21 cause" finding; even if the court were to find plaintiffs demonstrated good cause for the relief from

22 the deadline, GC Services disputes their asserted "right" to obtain the names and identities of putative

23 class members prior to class certification or to pursue *ex parte* "interviews" with those consumer

24 debtors; a failure to demonstrate any legitimate need for pre-certification discovery from the putative

25 class; and plaintiffs' violation of this court's Standing Order for failure to meet and confer before

26 submitting the request to continue deadlines.  Dkt No. 45.  Plaintiffs filed a "Reply" Declaration

27 contesting GC Services' representations. Dkt No. 48.  Judge Bencivengo granted plaintffs' Application

28 after telephonic hearings with the parties.  She extended the deadline to file any motion to join other

1    parties or to amend the pleadings and the deadline to file a motion for class certification to June 30,

2    2006, among other scheduling continuances.  Dkt No. 51.  Plaintiffs timely filed their Motion For

3    Class Certification.  However, this Motion was not filed until July 5, 2006.[1]  It is accordingly

4    untimely, and on that basis, in consideration of the procedural history of this case, the prior

5    amendment, and the prior extensions of the deadline to move to amend the pleadings, the Motion is

6    **DENIED**.

7         Even reaching the merits of the Motion, the court finds plaintiffs have not carried their burden

8    of persuasion.  They identify four changes between the FAC and the proposed SAC:  (1) the addition

9    of two additional entity defendants, DSL and GC Financial, both alleged to be Delaware corporations

10   affiliated with GC Services; (2) the addition of twelve newly named individual party defendants,

11   alleged to be managers within GC Services performing duties in a California call center operated by

12   GC Services; (3) the addition of two new putative class representative plaintiffs, Kenneth R. Glaspie

13   and Annie Lee Glaspie (alleged to be California residents residing in Hanford, California); and (4) a

14   "pared down scope" of the "previously defined class concerning the non-Fair Debt Collection

15   Practices Act claim" (*i.e.*, concerning the California Invasion of Privacy Act ("CIPA") claims only),

16   with the new definition of "all California residents affected by the Defendant's conduct and all non-

17   California residents affected by conduct of GC SERVICES employees working for the company in

18   California."  Mot. P&A p. 4.

19        Plaintiffs represent they are including no new matters in the proposed SAC compared to the

20   FAC.  They characterize the "only substantive differences" as "actually mak[ing] the case less

21   complicated and potentially expos[ing] the Defendants to less liability" than under the FAC.  Mot. 5:9-

22   13.  They contend the "'new' defendants, really are not new at all" because "[e]ach was previously a

23   fictitiously named defendant prior to this proposed amendment," so that "each is properly included

24   in this action."  Id. 5:13-15.  They continue:  "Defendant GC Services is the only entity which knows

25   for certain the identities of all persons who could conceivably become plaintiffs or members of the

26

27        [1]  Plaintiffs contend they only ascertained through discovery "within *the last few weeks*" before filing
     the Motion on July 5, 2006 all the information necessary to file "a complete second amended complaint."  Such
28   an explanation does not excuse the late filing because by that account, the June 30, 2006 deadline was also a
     "few weeks" away at the time plaintiffs purportedly discovered the basis for their requested amendment.

1   class."  Id. 5:15-16.  On that basis, they contend "there is no prejudice in adding representative

2   plaintiffs of which Defendant GC Services was (at least) constructively aware."  Id. 5:17-18.  They

3   summarily represent, in reliance on the Schroth Declaration, the amendment is "not proposed for any

4   bad faith purpose, prejudice, or delay."  Id. 5:19-20.  They assert the amendment should be "a

5   welcome development" because "the case becomes less complicated to all involved" (Id. 5:20-22), a

6   characterization GC Services and the fourteen proposed new defendants are not likely to embrace.

7       GC Services opposes the Motion on grounds, among others, "the proposed amendments are

8   futile, unnecessary, and designed solely to increase defendant's litigation costs at this late stage in the

9   case." Opp. 1:26-28; *see also* Opp. 5:19-21.  In reliance on the papers plaintiffs have already filed in

10  their pending Motion For Class Certification, GC Services contends the proposed simplification to

11  abandon the FAC allegations asserted under "two party" consent statutes in twelve other states is

12  unnecessary because the change is  already reflected in the modified putative class definitions:

13  "debtors who communicated on the telephone with GC Services' California debt collection facilities."[2]

14  Id. 2:1-4;  Id. 4:5-8 (the SAC's refinement of the alleged subclasses "are the same classes asserted by

15  plaintiffs' pending class certification under the FAC" based on the location of the putative class

16  members, with "each count divided into two classes comprised of (1) California residents, and (2) non-

17  California residents").

18      GC Services also contends the addition of two new named plaintiffs and fourteen new named

19  defendants is "unnecessary, unproductive, and futile." Opp. 2:8-9.  GC Services *admits* it monitors

20  some of its own debt collection telephone calls in the ordinary course of its business.  It objects the

21  SAC allegations against other GC Services affiliates and employees are conclusory and add nothing

22  to enhance plaintiffs' interests in the case:  the available relief remains the same; there is no allegation

23  GC Services lacks the resources to satisfy an adverse judgment in this case; and no defense has been

24  asserted that  would divert liability to GC Services' affiliates or employees.  Id. 2:9-15.  In addition,

25  GC Services argues allowing plaintiffs to file a third complaint adding the proposed new Glaspie

26  named plaintiffs would prejudice its case preparations late in this litigation.  "Each time a new plaintiff

27

28      [2] GC Services notes the SAC does not actually eliminate those allegations from its text and urges the court to order stricken references to any statutes other than California's, if this Motion is granted. Id. p. 2 n.1.

1   appears, GC Services must engage in discovery into that debtor's claims," creating a "moving target"

2   the court must fix with finality.  Opp. 2:19-20.  In contrast to itself were the Motion granted, GC

3   Services asserts "plaintiffs will suffer no harm if leave to amend is denied because the SAC does not

4   expand the scope of relief that would otherwise be available to the plaintiffs or the putative class

5   asserted in plaintiffs' pending certification motion," and the "amendments are futile and essentially

6   meaningless to the only putative class permitted by law to pursue CIPA claims -- California residents."

7   Id. 5:15-19.

8          In Reply, plaintiffs defend the "suitability" of the SAC amendments and party additions.  Reply

9   2:13-14.  The court may not avoid the actual exercise of its discretion in applying Rule 15(a) decision

10  factors merely because the proposed amendments would not be improper, particularly when the

11  proposed new pleading was presented after the amendment motion deadline had passed and when

12  plaintiffs have already amended their pleading once.  Representatives of the putative class are already

13  named plaintiffs.  Plaintiffs' counsel's belated assessment of their case -- over one year after filing suit

14  -- has resulted in their determination "that this lawsuit would be too complicated and, therefore, could

15  not be maintained as a class action unless it were limited only to the claims based upon the Federal

16  Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ('FDCPA') and the California Invasion of

17  Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ('CIPA'), and not the laws of several other states."  Id.

18  2:14-18.  "[I]t was on these bases alone the Plaintiffs' proposed SAC was presented for filing."  Id.

19  2:19.  Plaintiffs' remedy is simply not to prosecute its abandoned claims rather than to attempt to

20  reopen the pleadings, a development that would entail further delay in the resolution of this action.[3]

21         For all the foregoing reasons, **IT IS HEREBY ORDERED** plaintiffs' Motion For Leave To

22  File Second Amended Complaint is **DENIED**.

23         **IT IS SO ORDERED**.

24  DATED:  November 2, 2006

25                                              *Larry A. Burns*

26

27         [3]  In support of their disparate positions, both sides discuss the July 13, 2006 California Supreme Court
    decision in Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95 (2006).  Each attempts to demonstrate how
28  Kearney advances its legal arguments on the merits of the CIPA component of plaintiffs' lawsuit.  The court
    declines to reach the merits of the parties' claims and defenses in deciding a  Rule 15(a) Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HONORABLE LARRY ALAN BURNS**
United States District Judge