November 17, 2006

**BY HAND DELIVERY**

Hon. Cathy Ann Bencivengo
United States Magistrate Judge
940 Front Street
Courtroom E, First Floor
San Diego, CA 92101

      RE:  Thomasson, *et al.* v. GC Services LP, *et al.*
            Case No. 05cv940 (LAB) (CAB)

Dear Judge Bencivengo:

      This letter is a request that the Court order Defendant GC Services to comply with this Court's November 7, 2006 Order and sanction the defendant's for failing to produce discovery responses on or before November 10, 2006 in advance of the Plaintiff's deadline to file their Opposition to Summary Judgment.  The Plaintiffs do not relish the fact that they must again darken the court's door with yet another letter to Your Honor, and Plaintiffs realize that the Court has grown very tired of receiving letters from counsel every other day on issues that have already been determined.  However, even at the risk of further burdening the Court, the Plaintiffs have no recourse other than to again seek help from the Court.  It has been a week since the Court's ordered deadline for Defendant to produce documents vital to the plaintiff's case in opposition to summary judgment.  Yet, still no documents.

      The court ordered that the Debtor Detail Listing for 66 individuals be produced ***No Later Than*** November 10, 2006.  It is now November 17th, one full week later and five days after the Plaintiff's Opposition to Defendant's Summary Judgment Motion was due this past Monday, the 13th.  It seems apparent, based upon the telephonic discussions with the Court, that the Court chose the due date of Friday November 10, 2006 so that the Plaintiffs would at least have the weekend in which to work with the documents and incorporate them in it's Opposition to Summary Judgment.  The Defendants knew full well that the Plaintiffs' needed the documents for its opposition motion as well.

      However, the Defendant has successfully denied Plaintiffs the opportunity to use the debtor detail listing (and other Court ordered documents) which embody the notes from each and every contact the collectors have with consumers known to Plaintiffs to be members of this putative class.  The debtor detail listings contain a notation of every conversation between GC Services and the affected consumers including, but not limited to, whether the advisement (this call may be recorded or monitored) was given or whether it was not.  While it is true GC

Services admits it falsifies these documents [Andrade Depo., 40:14-19; McFarlane Depo., 133:10-134:6; Macias Depo., 30:15-32:12; Bond Depo., 103:18-104:2], they still contain extremely critical evidence.

Earlier, 75 pages of these redacted debtor detail listings were produced in response to Plaintiffs' first round of discovery, Bates stamps numbers 4799 though 4874. The few sheets that were produced pertain only to a few account numbers, which translates to only a handful of affected consumers. At a minimum, the debtor detail listings should have produce for each and every person that GC Services claims it monitored *from* California since at least that would be consistent with the Defendant's unilaterally imposed parameters of this case. (The list of 420). Of course, that did not occur.

On November 7, 2006 the Court ordered the Defendant to produce the debtor detail reports of the 66 individuals listed in Plaintiff request for Production of Documents number 26. To date, the Plaintiffs have produced authorizations from 20 of these individuals and continue to receive additional authorizations every day. On November 13, 2006, three days after the documents were due, Mr. L'Estrange wrote to the court again seeking reconsideration of the court's order in hopes of continuing to conceal these documents from the Plaintiffs. Mr. L'Estrange's letter completely ignores the fact these documents should have produced months ago in response to requests for production of documents (set one) numbers 2 and 3.

On January 26, 2006 the Plaintiffs propounded their first set of requests for production of documents. On February 24, 2006 GC Services served its objections and responses. In request for production No. 2, we asked for:

> **ANY DOCUMENTS CONCERNING** Defendant **GC SERVICES** collection efforts invoked pursuant to alleged consumer debts wherein telephone conversations occur between **PERSONS** employed as debt collectors for Defendant **GC SERVICES** and **PERSONS** who are alleged to be indebted to entities that retain Defendant **GC SERVICES** to effect debt collection on their behalf.

In Request for Production No. 3, we asked for:

> **ANY DOCUMENTS CONCERNING** the use of telephonic communications by Defendant **GC SERVICES** in regard to the collection of alleged debts.

Indeed, some, though not all, of those very documents (although redacted) were produced in response to these very requests (from the first set of discovery). Due to that fact, GC Services had a continuing obligation to seasonably supplement its discovery responses (Fed. R. Civ. P. 26(e)), and that obligation includes situations such as this one. The documents should have been produced long ago and the proffered justification for GC Services' failure to comply is simply a ruse to avoid providing crucial information.

Additionally, the Court's Order of November 7, 2006 (Doc. No. 161) stated only that the Defendant was not required to *further respond* to Plaintiffs' second set of discovery requests.

So, even assuming for the sake of argument that the requested documents are not responsive to Plaintiffs first set of discovery requests, and that Defendant does not have a duty under Rule 26 to provide the documents, it still has an obligation to live up to promises made in its *initial response* to Plaintiffs second set of requests for production.  Defendant stated it would produce the documents pursuant to Court order or after privacy concerns were cast aside.  Both have occurred and yet, the Defendant still refuses to produce the documents. Additionally, now that the Defendant is aware that Plaintiffs intend to call at trial members of the putative class to testify on the Defendant's advisement practice, the Defendant has a duty to provide (in addition to the authorizations requesting such information) documents related to that testimony under Fed. R. Civ. P. 23(e)(1), (2).

Counsel wrote the Defendant on Nov. 15, 2006 and requested that the defense comply with the court's order.  (See attached letter of R. Schroth Jr.).  The Plaintiffs are entitled to fairness in the resolution of discovery disputes.  Part of that fairness includes the Defendant not stonewalling the Court when ordered to play fair under the Rules.  The simple fact of the matter is that Plaintiffs should not have to waste their time, counsel time, staff time, and the time of this Court to recover documents and information to which they are rightfully entitled through discovery, particularly when that discovery has already been the subject of previous Orders to Compel.  This game must be put to an end.

We acknowledge the Court's admonishment regarding civility and name calling between counsel.  Our intent is not to increase the acrimony between the parties and counsel and the Court.  However, it deserves mention that an appearance of impropriety is obvious.  It seems to Plaintiffs that the Defendants refused to comply with the Courts Order on the eve of Plaintiff's filing their Opposition to Summary Judgment.  Plaintiff counsel does not believe the Court would ever condone these tactics.

The Plaintiff is also forced to seek the Court's assistance to once again compel the production of the names of the former managers previously ordered on November 7, 2006 to be produced ***No Later Than*** November 10, 2006.  The sequence of events involving the list of names of the former managers sums up this litigation so far.  The Court orally Ordered at the discovery conference on November 1st that the Defendant's produce a list of names of GC Services' mangers from the Irwindale credit card side and the San Diego collection offices.

Rather than abide by the Court's order, GC Services again (as it has throughout this case in discovery and motion practice) unilaterally limited the list of the names of the managers to those who are currently employed by the company.  All this despite the fact this case was filed a over year and a half ago.  The Plaintiffs then wrote back to defense counsel stating, please produce a list of *all* the managers during the time relevant to the complaint. (from 2003 to the present).  Then the Your Honor stepped in and specifically on November 7, 2006 order (at paragraph 3):

> …identify the managers employed by GC Services ***California debt collection operations*** in San Diego and Irwindale from January 2003 to the present, including the dates of their employment as managers at these locations.

Then in response to the Court's order, GC Services provided names for only persons employed in its "consumer" debt collection facilities in Irwindale and San Diego, excluding all managers from its Los Angeles Superior Court operation. (This limitation is also noted by Mr. L'Estrange in his November 13, 2006 letter to Your Honor). The Court's order was not limited in that fashion, but GC Services nevertheless unilaterally imposed such a limitation. Plaintiffs again wrote the Defendant again requesting the full list. (*see* Letter of Schroth Sr. attached hereto). Plaintiffs are aware of the names of several managers that are missing because of the deposition testimony of Mr. Jeffrey Bond.[1] Plaintiffs demanded the missing information from Mr. L'Estrange, but he did not supply it. Plaintiffs request that the Court require the defendants to produce the names of all the managers at these two facilities. If the Plaintiffs select to depose a manger whose knows nothing about the claims in this case then they do so at there own peril.

The reason behind the game of cat and mouse with the names of the mangers and the reason why the Plaintiff have twice now had write to your honor in regard to the list is that the Defendants do not want produce Bernadine Crisp, the compliance officer/training manager. Hours after the discovery conference Plaintiff's counsel asked to take her deposition. They refused, they said she is currently a manger in the Irwindale court collections' office. Since then her name has suspiciously not appeared on any of the lists. The Plaintiff have been allowed by the court to take two depositions, one manger from Irwindale credit card side and one manager from San Diego. Mr. Bond a former manger manager testified that Ms. Crisp was a manger at the both sides of the Irwindale facility.

On a related note, Plaintiffs would like to bring to the Court's attention that we have received *no* discovery related to the recording of telephone calls by GC Services or its clients, other than the testimony of Mr. Bond that calls were recorded by Providian with the consent of and in the presence of GC Services managers Bernadine Crisp. (See Attached Bond Depo., 11:13-12:10, 16:10-17:9, 36:16-37:19.)

Throughout this case, the Defendant has denied that any calls are ever recorded, but that appears to be untrue. Furthermore, Plaintiffs have received no documents or information related to Defendant's "first-party" debt collection efforts in California, such as for the *Los Angeles Times*. Mr. Bond testified that GC Services never gives the advisement on its calls for the LA Times. (See Attached Bond Depo., 29:4-23, 48:18-23, 105:8-106:6) Until Mr. Bond's deposition, we were unaware that such information existed because the Defendant has stated throughout this case that it did not. This is yet another example of Plaintiffs finding information through their own investigation that was not disclosed in discovery.[2] We believe these are

---

[1] Plaintiffs note for the record that GC Services employs an untold number of individuals in the State of California, who do not work at the San Diego or Irwindale facilities. News reports, including those of embezzlement by GC Services employees, and GC Services' own website (*See,* https://www.gcserv.com/Career/descriptionNext.asp?JobID=485) confirm this fact. Yet, GC Services has *never* mentioned this in discovery or otherwise. This too is a most serious discovery violation.

[2] Plaintiffs are concerned that the Court harbors a perception they have not been diligent in discovery. As the Court is aware, Plaintiffs have fought "tooth and nail" to get even the most

exceedingly serious discovery violations which cannot be tolerated and should be dealt with accordingly. For their part, the Plaintiffs request the discovery on these issues be reopened once the Defendant has actually complied with the Court's previous Orders to Compel.

Finally, we are compelled to respond to Mr. L'Estrange's estimate to Plaintiffs that it will cost over $100,000 to compile a list of telephone numbers from its own personnel files. Obviously, we do not agree with Mr. L'Estrange's estimate of costs. But, putting that concern aside for the moment, we believe we have devised a strategy which will allow compilation of the telephone numbers, at Plaintiffs' expense, without forcing Plaintiffs to spend a clearly exorbitant amount in completing the task. Our proposal is as follows: We will pay our law clerk, Christopher Saldaña, to travel to GC Services' headquarters in Houston, Texas to compile the requested information.

Mr. Saldaña has already signed the protective order agreement, he has graduated from law school and passed the California Bar Exam (though he is not yet admitted), and he has appeared before this Court with counsel on numerous occasions during this and other cases. We are confident Mr. Saldaña can complete the job in a timely fashion, and for far less expense than GC Services contemplates. Having already signed the protective order document, there are no privacy-related issues. We respectfully request that the Court modify its previous order and allow Mr. Saldaña to collate the information ordered for production.

There are still additional examples of this discovery stonewalling:

1. GC Services continues to argue that telephone calls to/from California residents to GCS centers outside of California are irrelevant. GCS has refused to produce any discovery on this point. [See, 10/31/2006 Gilbertsen letter to Bencivengo, J, Pg. 6, ¶ 3]. Whether the Defendant agrees or not, this has always been part of this case. In its motion for summary judgment, GC Services moved to dismiss those claims, yet it provided no discovery on the matter. Plaintiffs have repeatedly requested this information both informally and via motions to compel.

2. GC Services refuses to provide any discovery on the monitoring and recording of "first-party" calls with California residents to/from any of its California or GCS offices (e.g. names of debtors, clients, etc.). [See e.g., GCS further responses to Interrogatory Nos. 14 & 15 where responses are limited to "debt collection" as defined by the FDCPA. GC Services makes no mention of "first-party" debts such as Providian, GMAC, or Los Angeles Times. (Plaintiffs note, again, that the "first-party" and "third-party" monikers are distinctions without a difference for the purposes of the CIPA portion of this suit). GC Services has also informed Plaintiffs and the court, verbally and in writing, that "first-party" collections are off-limits (in/out of California operations). [*See also*, GC Services' General Objections to all discovery requests]. All this despite the Court's myriad previous rulings and orders to the contrary.

---

basic of information from the Defendant. That process has taken significant amounts of time (both Court and attorney time) and resources, which could not in many cases be brought to bear until after the Plaintiffs uncovered information on their own which was inconsistent with the Defendant's stance in this case, such as with Mr. Bond. Plaintiffs have taken discovery seriously and respectfully submit they have been diligent throughout.

3.  GC Services has limited all of its discovery responses to the "one-year" under the FDCPA and CIPA statute. [See, GC Services' "General Objections" to all discovery requests, and its further responses to Interrogatories]. Yet, this Court has ruled a number of times that GC Services should provide at least three years of discovery. Despite those Orders, GC Services has not updated any of its discovery responses to date (e.g. monitoring sheets, names of debtors, etc.). Moreover, as noted in Plaintiffs' opposition to summary judgment, 2:25-28, fn. 2:

> GC Services will likely attempt to argue some of Plaintiffs' evidence of recording accrued during a period outside the statute of limitations in place in this case. Plaintiffs note for the record that damages requested under Cal. Penal Code §637.2 are subject to the limitations period of one year under Cal. Code Civ. Proc. §340(a). However, the limitations period begins to run under California law only when the claimant knows or has reason to know she has been subject to an unlawful act. *Nodine v. Shiley Inc.*, 240 F.3d 1149, 1153 (9th Cir. 2001). Surreptitious conduct is at the very core of the claims at issue in this case, so any statute of limitations argument is misplaced.

GC Services' unilateral imposition of temporal limitations is misplaced.

4.  GC Services has stated it does not record calls "from its California facilities." However, as stated above, its arguments are consistently limited to only its unilateral definition of "third-party" debts and a "one-year" statute of limitations. Additionally, this argument only appeared after GCS Rule 30(b)(6) witness, Dennis Wojcicki, testified that GCS records California "first-party" and "customer service" telephone calls to/from its operations outside of California. Despite this, and despite the *Kearney* Court's analysis that such calls are actionable, GC Services has provided no information or documentation about such recording. Now that Mr. Bond's deposition testimony is in, Plaintiffs know that GC Services records (allows other to record) calls from its California facilities.

5.  GC Services argues in its Motion for Summary Judgment that it has a "nationwide" monitoring policy. But in discovery (Wojcicki, Bond, and McFarlane depositions, Defendant's responses to written discovery, and Defendant's letters/motions to the Court) it argues that each of its client contracts have different requirements that change their national policy. (*e.g. Los Angeles Times* requires no advisement, Providian does not want recording advisement, Los Angeles Superior Court wants verification before advisement, etc.). However, GC Services provided no copies of these contracts so that Plaintiffs could determine what the GC Services' actual policy requirements are for each specific client.

6.  GC Services produced scant documentary evidence concerning monitoring (and no information about recording) done by its compliance or legal departments. From discovery and independent investigation, Plaintiffs are aware that these GC Services departments are involved in such activity and also that these departments respond to complaints about GC Services' policies and practices. Yet, little to no information produced in discovery.

  7. GC Services has not disclosed any information concerning its other "operations" in California, as noted in footnote one above. Plaintiffs are informed, and believe, and on that basis thereon allege that GC Services has employees throughout the state performing such work on property not owned by the Defendant. Plaintiffs are also informed and believe and on that basis thereon allege that GC Services' Irwindale facility services superior courts other than the Los Angles Superior Court. However, no other information was ever provided to Plaintiffs about any of these matters.

  8. GC Services consistently argues the "disgruntled employee" defense when an employee informs of GC Services' misdeeds. For example, this happened in Ohio when confidential information was discarded in the trash and the attorney general stripped GC Services of its contract. This line of questioning was also used by the defense during the deposition of Mr. Bond in this case. Plaintiffs requested the employee phone numbers over 10 months ago, the court ordered GC Services to produce the numbers 2 ½ months ago. Nevertheless, only last week did GC Services even mention its "burden," and only after the Court had already ordered production of the information.

  9. Also, GC Services Project Manager Ricardo McFarlane provided testimony throughout his deposition that is inconsistent with the testimony of Mr. Bond and independently verifiable facts. This is important because GC Services initially attempted to force Plaintiffs to depose only Mr. McFarlane. Senior VP and General Counsel, Joseph Van Nest, appeared in Los Angeles only for Mr. McFarlane's deposition and no others. As it turns out, contrary to Mr. MacFarlane's testimony, McFarlane was the only manager we deposed who has worked in that capacity for both the consumer credit collections operation and Superior Court operation during the relevant time period. All other deposed managers have worked only for the Los Angeles Superior Court operation, so they knew nothing about the "first-party" operations/policies or recordings. Mr. MacFarlane had information that was discoverable, but he failed to provide that information at deposition, and in fact, misstated that he had never worked for the credit collection-side of the company and knew no one who had.

  On a final note, this practice of daily correspondence regarding modification and/or reconsideration of the Court's orders is not appropriate. The Plaintiffs do not have the resources to sustain a campaign of daily lobbying of the judge and would request an order from the Court addresses this issue in the future. For all these reasons articulated above, the Defendant should be held in contempt for its continuing failure to participate in discovery despite Your Honor's orders on discovery matters.

            Sincerely,

            Robert E. Schroth Jr.