ROBERT L. ARLEO, ESQ. (*Pro Hac Vice*)
**LAW OFFICES OF ROBERT L. ARLEO**
1375 Broadway, Third Floor
New York, New York 10018
Telephone: (646) 278-5648
E-Mail: R.ARLEO@Verizon.Net

ROBERT E. SCHROTH, SR, ESQ. (SBN 103063)
ROBERT E. SCHROTH, JR, ESQ. (SBN 212936)
**SCHROTH & SCHROTH**
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-7521
Facsimile: (619) 233-4516

[Additional Plaintiffs' counsel listed on last page]

Attorneys for Plaintiffs, ANDREW T. THOMASSON and REBECCA J. THOMASSON, and all others similarly situated

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW T. THOMASSON and REBECCA J. THOMASSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GC SERVICES LIMITED PARTNERSHIP, and DOES 1 through 25 inclusive,<br><br>Defendants. | CASE NO. 3:05cv940 LAB (CAB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX-PARTE* APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL POINTS AND AUTHORITIES AND SUPPLEMENTAL EVIDENCE IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

/ / /

/ / /

/ / /

/ / /

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .......... ii

**I. INTRODUCTION** .......... 1

**II. RELEVANT FACTS** .......... 2

**III. LEGAL ARGUMENT** .......... 2

**A. FACTS AND CIRCUMSTANCES PRESENTED AS TO CAPICCHIONI** .......... 3

**B. SELECTED PORTIONS OF DEPOSITION TRANSCRIPTS OF JASON SWANEY AND BERNADINE CRISP** .......... 4

**C. THE DECLARATION OF MIKE NELSON** .......... 11

**D. GIVEN THE UNDISPUTED FACTS FROM MANAGERS OF ALL THREE CALIFORNIA FACILITIES, THE COURT SHOULD *SUA SPONTE* ENTER JUDGMENT FOR PLAINTIFFS** .......... 12

**IV. CONCLUSION** .......... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Capicchioni v. Americredit Fin. Servs.* 2006 U.S. Dist. LEXIS 81778 (S.D. Cal. 2006) ........ 1, 3, 4

*Schering Corp. v. Home Ins. Co.* 712 F.2d 4, 10 (2d. Cir. 1983) ........ 2

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.* 30 F. Supp. 2d 1182 (D. Ariz. 1998) ........ 2

*Medical Lab. Mgmt. Consultants v. ABC* 306 F.3d 806 (9th Cir. 2002) ........ 2

*Murray v. Laborers Union Local No. 324* 55 F.3d 1445, 1452 (9th Cir. 1995) ........ 2

*Washington v. City of N. Las Vegas* 161 Fed. Appx. 637 (9th Cir. 2005) ........ 3

**Federal Rules**

Fed. R. Civ. P. 26(e)(1) ........ 9

Fed. R. Civ. P. 26(e)(2) ........ 9

Fed. R. Civ. P. 56 (f) ........ 2

**State Cases**

*Kearney v. Salomon Smith Barney, Inc.* 39 Cal.4th 95 (2006) ........ 1, 3, 4, 12

**State Statutes**

Cal. Pen. Code §§ 630, *et seq* ........ 4, 12

Cal. Pen. Code § 632 ........ 4

**I.**

**INTRODUCTION**

The Plaintiffs, ANDREW T. THOMASSON and REBECCA J. THOMASSON (collectively "Plaintiffs" or the "Thomassons"), by and thorough their counsel of record, respectfully submit this memorandum of points and authorities in support of their *ex-parte* application for leave of Court to file and serve a supplemental memorandum of points and authorities and supplemental evidence in support of their opposition to Defendant GC SERVICES LP'S ("Defendant" or "GC Services") motion for summary judgment. The Plaintiffs' application is based upon the following grounds:

(1) Defendant GC Services has failed to properly participate in discovery thereby frustrating the Plaintiffs' attempts to coalesce all of the evidence necessary and desired to present their opposition to the motion for summary judgment;

(2) due to these tactics of the Defendant, the Plaintiffs were forced to bring myriad motions to compel and the Defendant has refused to comply with the Magistrate Judge's Orders to Compel;

(3) to the extent the Defendant has complied with the Court's Orders to Compel, Plaintiffs only recently were able to discover information on the Defendant's policy and practice of monitoring and recording, which information constitutes newly discovered evidence and newly discovered corroborating evidence refuting the Defendant's claims on summary judgment;

(4) the Plaintiffs were prejudiced by not having available this information for inclusion in their opposition papers;

(5) despite claims to the contrary, Plaintiffs have been diligent in requesting this information; and

(6) Chief Judge Irma Gonzalez recently rendered a decision in a similar case [*Capicchioni v. Americredit Fin. Servs*., 06CV0014 IEG (NLS), 2006 U.S. Dist. LEXIS 81778 (S.D. Cal. 2006)] which contains an analysis of the California Supreme Court's decision in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (Cal. 2006) which supports the

Plaintiffs' analysis in opposition. The Plaintiffs also request leave to present that case to the Court.

**II.**

**RELEVANT FACTS**

This case has been heavily litigated since its inception. As part of that pattern, the parties have engaged in significant discovery and multiple depositions. From time to time, the parties have disagreed about the propriety of the propounded discovery, the good faith of the responses, and the legal basis for objections. Throughout, the parties have been unable to informally agree on their discovery differences and consequently they have inundated Magistrate Judge Bencivengo with multiple motions to compel.

As more fully set forth in the accompanying Declaration of Robert E. Schroth, Jr. in support, Plaintiffs have undertaken extensive efforts to timely identify potential witnesses and documentation supporting their claims. Unfortunately, those efforts have been stymied on every occasion. Rather than further burden the Court in this memorandum with a listing of these events, Plaintiffs rely upon the facts set forth in counsel's supporting declaration as evidence of their diligence, the Defendant's tactics, and resulting prejudice.

**III.**

**LEGAL ARGUMENT**

An application to supplement evidence and argument on summary judgment is governed by the Federal Rules of Evidence and Rule 56(f) of the Federal Rules of Civil Procedure, respectively. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d. Cir. 1983). The court may entertain argument on the question of whether a previously imposed opposition deadline on summary judgment should be honored in light of the facts and circumstances presented. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 30 F. Supp. 2d 1182, 1198, n.15 (D. Ariz. 1998) *affr'd* by *Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 826 (9th Cir. 2002). "[D]istrict court judges must have ample discretion to control their dockets." *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir. 1995). Resolution of whether or not to grant leave to supplement evidence and argument on summary judgment is a matter

within the discretion of the District Court. *Washington v. City of N. Las Vegas*, 161 Fed. Appx. 637, *9-*10 (9th Cir. 2005).

The Plaintiffs respectfully submit that the facts and circumstances surrounding discovery practice in this case virtually mandates leave to supplement as requested. The Defendant's discovery tactics in this case, as more fully set forth in the accompanying Declaration of Robert E. Schroth Jr., have had the effect of concealing potential witnesses whose testimony would have bolstered the Plaintiffs' opposition to summary judgment. Additionally, Plaintiffs have uncovered more evidence of recording and a case recently decided by this Court that entirely sets at rest the Defendant's mischaracterizations and faulty legal analysis of *Kearney*.

Finally, the Plaintiffs note for the record that they take very seriously the deadlines imposed by the Court in this case. Plaintiffs do not intend to alter the Court's previously set pretrial deadlines and do not wish to delay the trial of this matter. Consequently, the Plaintiffs request that any responsive briefing on this motion be entertained on shortened time as the Court may desire.

**A.**

**FACTS AND CIRCUMSTANCES PRESENTED AS TO CAPICCHIONI**

Judge Gonzalez' decision in *Capicchioni v. Americredit Fin. Servs*., 06CV0014 IEG (NLS), 2006 U.S. Dist. LEXIS 81778 (S.D. Cal. 2006) was not known to the Plaintiffs at the time of their deadline to oppose the summary judgment motion. The decision in *Capicchioni* was rendered on November 7, 2006 and Plaintiffs' opposition was due and filed on November 13, 2006. Despite Lexis and Westlaw searches up to and including November 13, 2006 for case law concerning *Kearney*, *supra*, *Capicchioni* did not appear to Plaintiffs until sometime thereafter.

*Capicchioni* therefore is new case law that emanates from this very Court. In *Capicchioni*, Chief Judge Gonzalez discusses *Kearney* and provides useful insight into a proper legal analysis of the case as well. The salient highpoints of her analysis are as follows:

/ / /

/ / /

(1) While *Kearney* is a "recording" case, monitoring is controlled by *Kearney* as well due to the fact it is the same statute (and therefore definitions) that proscribes both types of conduct. *Capicchioni*, 2006 U.S. Dist. LEXIS 81778 at *12, n.6;

(2) The California Invasion of Privacy Act "...**applies to any call to or from California**, even if the call originates in a state with a 'one-party consent' law. *Kearney*, 39 Cal. 4th at 128. Thus, for calls from an out of state business to a Californian resident or calls originating in California, any monitoring or recording that occurs must be disclosed to all parties to the conversation. n7. *Id*. at 117-18, 126." (Emphasis added). *Capicchioni*, 2006 U.S. Dist. LEXIS 81778 at *13-*14; and

(3) "The California Supreme Court stated that an out-of-state business can comply with California's statute by stating **at the outset of the telephone call** that the call is being recorded. By making this disclosure, the client no longer has a reasonable expectation of privacy, and thus a claim for invasion of privacy under Cal. Penal Code § 630 *et seq.* can be defeated. *Kearney*, 39 Cal.4th at 105; see Cal. Penal Code § 632[.]" (Emphasis added). *Capicchioni*, 2006 U.S. Dist. LEXIS 81778 at *14, n.7.

In essence, the Court in *Capicchioni* held that Plaintiffs' analysis of the applicability of *Kearney* to the claims made by Plaintiffs in this case is correct and the Defendant's in not [*See e.g.,* Defts. P&A on Summary Judgment, 3:1-2; 18:20-20:6]. On that basis, and in light of the facts more fully set forth above, the Court's opinion in *Capicchioni* is newly discovered and should be considered by Your Honor. Although the Defendant opposes this application, the defense has an ethical obligation to bring to the Court's attention any new material or case law, which may bear on the determination of this case. Given that, the Defendant's opposition should be overruled and the Court should consider this newly discovered and helpful case.

**B.**

**SELECTED PORTIONS OF DEPOSITION TRANSCRIPTS OF JASON SWANEY AND BERNADINE CRISP**

The Plaintiffs obtained leave via an order to compel to take the recently completed depositions of GC Services managers Bernadine Crisp and Jason Swaney. As part of her oral

order on November 1, 2006 (which was rendered twelve days prior to the due date of Plaintiffs' opposition to summary judgment), Magistrate Judge Bencivengo ordered the Defendant to disclose by November 10, 2006, the names of all current and former managers (going back three years) of the Defendant's Irwindale and San Diego facilities. The Defendant disclosed a list of *current* managers for its San Diego facility *only* on November 3, 2006. The Defendant, aware of the looming opposition deadline, procured leave of Court to take the deposition of a former manager of its Irwindale credit collection facility, Jeffrey Bond.

Mr. Bond's deposition was taken on November 10, 2006 -- the same date as the Court's ordered deadline to disclose the Defendant's management names. At Mr. Bond's deposition and on the record, taken a mere three days prior to the opposition deadline, the defense announced it would not comply with the Court's deadline until November 13, 2006 -- the same date Plaintiffs' opposition was due. The Defendant did disclose some names on the 13th, but not until late in the afternoon, and only then with a list that was incomplete in light of the testimony of Mr. Bond learned at the Defendant's own deposition.

The Plaintiffs have learned that many of the Defendant's former managers, such as Mr. Bond, disclose information which is otherwise unattainable through the Defendant's current managers. Given the Defendant's late and incomplete disclosure, Plaintiffs were unable to conduct any independent investigation or notice any deposition in time for incorporation into the Plaintiffs' opposition any newly discovered evidence. Plaintiffs' brought this to the attention of Magistrate Judge Bencivengo in the form of a supplemental motion to compel electronically filed on November 17, 2006. Plaintiffs have not received an order on that motion.

The Swaney deposition commenced as scheduled on December 21, 2006, but the deposition of Ms. Crisp was delayed until January 30, 2006, due to conflicts with her schedule. Through these depositions, Plaintiffs learned a number of important facts more fully set forth in the accompanying supplemental memorandum of points and authorities in support of opposition to summary judgment. Specifically, some of the items learned were:

(1)     There is no policy of the Defendant related to the written recordation or memorialization of whether an advisement of monitoring or recording (the "QMD") is given

during a particular call. That is, both Ms. Crisp and Mr. Swaney testified that often times calls are monitored and no written record is kept of the monitoring. [Swaney Depo., 69:18-70:15; 71:16-21; 81:1-6]. Ms. Crisp testified there is no monitoring policy at all of which she is aware. [Crisp Depo., 60:25-62:15]. (Recall that Ms. Crisp was until February 2005 the training and compliance manager for GC Services Irwindale credit collections facility and the court collections facility. She currently holds that position for only the Irwindale court collections facility due to a personality conflict with the former credit collections manager. [Crisp Depo., 111:17-23). The Defendant's argument on summary judgment is that one can deduce from its monitoring sheets whether the QMD was given, therefore, is mistaken. Similarly, the Defendant's argument that it is undisputed that the Thomasson's calls were not monitored because none of the Defendant's records reflect such monitoring [Defts. P&A on Summary Judgment, 24:17-23], also fails in light of the testimony of its own managers. [Swaney Depo., 72:22-73:4];

(2) The Defendant's alleged "nationwide" policy regarding monitoring is often changed by the requirements set forth in contracts between the Defendant and its clients. [Swaney Depo., 28:7-21; 29:2-4]. GC Services represented to Magistrate Judge Bencivengo, however, that such contracts are entirely "irrelevant" to this case. [Doc. No. 96, 18:7-13]. Given that representation, and the lack of information produced or disclosed as a result, the Defendant should be estopped from making any argument based upon those contracts and whether they include policies compliant with the CIPA or FDCPA;

(3) Ms. Crisp and Mr. Swaney testified that many calls are monitored by the Defendant's "compliance" department. The deponents testified that those calls are monitored to ensure "compliance" with GC Services' contracts and not – as stated on summary judgment -- solely for "quality control and training purposes." [*See e.g.*, Defts. P&A on Summary Judgment, 4:10-13]. Mr. Swaney testified that there is a difference between "compliance" monitoring and regular monitoring:

Q. Now, is compliance in training different in your mind?
A. Yes.
Q. How so?

A. Well, to me training is to do the functions of the job as a collector. Where compliance, we were a little bit more interested in making sure that the court requirements by court were being followed.
Q. Okay. So compliance would basically entail following instructions of the client?
A. Correct.
Q. And then training would be making sure that your GC Services employees were doing what GC Services management wanted them to do?
A. Yes.

***

Q. Compliance and what it entails would depend on the client?
A. Yes.

[Swaney Depo., 28:7-21; 29:2-4]. Mr. Swaney also testified that managers can announce their presence during the pendency of a call in order to assist in collecting money from the alleged debtor. [Swaney Depo., 84:11-18]. This is again a situation in which monitoring is performed for purposes other than "quality control," in this case to ensure collections are made.

(5) The Defendant argues that "[p]rior to any business being conducted, GC Services' debt collector representatives inform debtors that 'this call may be monitored for quality assurance.'" [Defts. P&A on Summary Judgment, 5:15-17]. (Mr. Swaney testified the disclosure is actually "[a]ll calls can be monitored for quality assurance." [Swaney Depo., 24:17-25:1]. Assuming any advisement is given at all, Mr. Swaney and Ms. Crisp testified that the Defendant's collectors are trained to first gather identifying information from the alleged debtor or consumer prior to providing an advisement.

(6) Mr. Swaney testified that the policy of GC Services (as distinguished from the *practice* of its collectors as argued by Plaintiffs) on monitoring telephone calls is different depending on whether the call is an "inbound call" or an "outbound call." Mr. Swaney testified that inbound calls are those where an individual has called into the GC Services center. An outbound call is one where a GC Services collector places the call to the affected individual. Mr. Swaney stated that all inbound calls are supposed to be answered by a collector whose first words should be the QMD. [Swaney Depo., 109:14-110:16]. Mr. Swaney testified that GC Services collects personal information prior to the QMD on all outbound calls. [Swaney Depo.,

110:6-16]. Thus, the QMD is given, if at all, neither at the outset of the call nor prior to the sharing of confidential and personal information.

(7) GC Services argues that all managers "immediately" stop any telephone conversation they may monitor should the collector fail to provide an advisement of monitoring once the collector has already gathered the alleged debtor's personal and confidential information. [Defts. P&A on Summary Judgment, 5:20-25]. However, Ms. Crisp, the compliance and training manager (within the last two years Ms. Crisp has held these positions at both Irwindale, California sites), testified that it does not matter when the advisement is given so long as it is given at some point prior to the end of the conversation. [Crisp Depo., 188:12-24; 189:6-9]. Ms. Crisp has witnessed instances where an alleged debtor will hang up when the QMD is given. [Crisp Depo., 172:20-23]. Presumably, this is the reason GC Services fails to provide the QMD at the outset of telephone calls, if at all, as required by law.

(8) In its reply, the Defendant states that former manager Jeffrey Bond placed the end date of surreptitious recording by the Defendant and Providian in the Irwindale credit office at or about November 2003. That statement was untrue as stated throughout the remainder of Mr. Bond's testimony, which is already before the Court. Ms. Crisp testified that she and Mr. Bond were present during the recording. [Crisp Depo., 57:7-9]. Additionally, Ms. Crisp testified that she could not recall the end date of the recording. [Crisp Depo., 52:3-53:20].

(9) Ms. Crisp, the current compliance and training manager of the Irwindale court collections facility (and formerly (until February 2005) the compliance and training manager of the both the Irwindale credit collections facility and the Irwindale court collections facility) testified that she cannot recall ever having trained or met with collectors regarding the need to provide a monitoring or recording disclosure. [Crisp Depo., 46:22-47:6].

(10) Ms. Crisp testified that she did not disagree with anything stated in the Declaration of Jeffrey Bond in Support of Plaintiffs' opposition, with the exception of the number of people he managed at one point in his tenure at GC Services. [Crisp Depo., 108:4-109:22].

(11) Finally, Mr. Swaney and Ms. Crisp both testified as to a number of classes of documents that either were never produced or never updated as required by Fed. R. Civ. P. 26(e)(1), (2). The information from these documents was discoverable as a disclosure or as responsive to Plaintiffs' discovery requests. Plaintiffs still do not have this information so they cannot attest that the need will not again arise to supplement the record on this motion. The information described by the deponents is as follows:

(a) Written complaints and transcribed oral complaints from individuals about GC Services debt collectors and managers. These complaints are received by GC Services and kept on file, but they were never disclosed. [Swaney Depo., 31:1-32:5; 33:2-11; 33:16-25]. These complaints, obviously, would tend to disclose the policies and practices of the Defendant and whether the type of conduct factually alleged in this case is similar to that for which complaints have previously been received.

(b) This case indisputably spans a limitations period of at least one year prior to the filing of the complaint in this matter (the complaint was filed May 4, 2005 – Doc. No. 1) to the present. So, all requests for documents and information span the period May 4, 3004 to the present, or nearly three years. (Plaintiffs argue that given the surreptitious nature of the conduct in this case, the limitations period is not applicable in such a precise manner, but these dates are included for the sake of argument). Plaintiffs received approximately 40 telephone monitor review sheets from the Defendant's San Diego credit collection office. [Schroth Decl., ¶11(g)(ii)]. The San Diego credit collection office employs approximately 95 account representatives. [Swaney Depo., 36:8-13]. Roughly 9,000 to 10,000 calls per day are made to and from the San Diego credit collection facility. [Swaney Depo., 51:24-52:5]. Approximately 400 to 500 of those calls result in a "contact" between GC Services and a "live" individual. [Swaney Depo., 53:15-54:16].

Managers of GC Services San Diego office typically conduct two (2) monitors per month for each debt collector. [Swaney Depo., 82:25-84:6]. If the collector is more experienced, monitoring may occur only once per month [Swayney Depo., 83:22-84:3], but GC Services suffers from a high turnover rate. [Swaney Depo., 125:16-22]. By extension, this

makes the one monitor of a collector less likely. Plaintiffs have not been provided by the Defendant all telephone monitor sheets for the San Diego credit collection office. [Swaney Depo., 116:12-117:5]. Two monitors per month for 90 collectors equals 180 monitor review sheets per month. Over three years (or 36 months) that equates to 6,480 monitor review sheets. Thus, Plaintiffs are missing approximately 6,440 monitor review sheets from the San Diego office. None of the compliance monitoring sheets (which are distinct from regular monitoring as discussed above) were ever produced. [Schroth Decl., ¶11(g)(ii)]. Stated another way, the Defendant has only produced ***0.62%*** of all monitoring review sheets in existence, which it admits were prepared and stored at its San Diego facility.

(c) The Defendant maintains a "corrective action" standard operating procedure manual that is followed by managers. [Swaney Depo., 32:1-4]. That manual was never produced in discovery. That manual apparently constitutes the written policy of the Defendant.

(d) As referenced and cited above, the client contracts of the Defendant, which constitute the grounds rules by which the Defendant performs its monitoring.

(e) Mr. Swaney testified there is a standard operating procedure for file reviews and monitoring. [Swaney Depo., 83:22-84:10]. This "policy" has apparently been reduced to writing but never shared with Plaintiffs despite their requests for such information.

(f) The training manual (which is six to seven inches thick) used by Ms. Crisp to train new collector for GC Services was never produced despite requests for such information. [Crisp Depo., 18:2-22]. This manual has a direct correlation to the policies of the Defendant.

(g) GC Services collection trainees and current employees attend monthly classes taught by Ms. Crisp during which they are required to sign into the class and eventually take a test. [Crisp Depo., 48:25-49:21]. Plaintiffs have requested those documents and have received none of them. Those documents are locked in a file cabinet under the control of Ms. Crisp. [Crisp Depo., 49:22-50:1].

(h) Ms. Crisp testified that at least one "compliance" monitor review sheet per month per collector exists for the Irwindale court collections facility. [Crisp Depo., 50:22-51:10]. Ms. Crisp estimates there are between 112 and 150 collectors at the Irwindale court facility. [Crisp Depo., 69:10-18]. Accordingly, during the three year period (again Plaintiffs believe this period is longer due to the nature of the conduct) of limitations for this case, the Defendant should have produced (using the lower 112 number) some 4,032 monitoring sheets. Instead, the Defendant has produced only approximately 1,800 (compliance and regular) monitor sheets and has never updated the production. This equates to production of only approximately 45% of the available "compliance" monitor review sheets. No telephone monitor review sheets were *ever* produced for the Irwindale credit collections facility.

**C.**

**THE DECLARATION OF MIKE NELSON**

Plaintiffs also request leave to supplement to evidence on summary judgment with the declaration of Mike Nelson, which has been provided under Rule 26 to the defense. Mr. Nelson lives in San Diego and recently contacted Plaintiffs' counsel, Robert E. Schroth, Jr. to complain about GC Services' practices. Mr. Nelson agreed to make a declaration in this case which shows that as recently as December 2006 the Defendant has continued its policy of stating to individuals that their calls are being recorded and also demonstrates that the Defendant's abusive debt collection practices continue unabated. There is but one conclusion to be reach from the evidentiary facts from Mr. Nelson and the testimony of Mr. Bond and Ms. Crisp: the Defendant is still recording telephone calls or allowing others to do so. Otherwise, there is no purpose in stating so to individuals upon their lines of questioning on such issues.

/ / /

/ / /

/ / /

/ / /

/ / /

**D.**

**GIVEN THE UNDISPUTED FACTS FROM MANAGERS OF ALL THREE CALIFORNIA FACILITIES, THE COURT SHOULD *SUA SPONTE* ENTER JUDGMENT FOR PLAINTIFFS**

It is undisputed from the argument and evidence set forth above that no advisement is given by *any* of the Defendant's employees in the State of California on "outbound" calls, until *after* confidential information is shared by those persons called. As a result, the strictures of Cal. Penal Code §§630, *et seq.* are not met by the Defendant's policy *or* practice and no evidence to the contrary has been provided. Furthermore, the Defendant has no evidence that could possibly alter the record now before the Court on this issue.

**IV.**

**CONCLUSION**

The Plaintiffs respectfully submit to the Court that in order to conduct a full and fair review of all *available* evidence in this matter, and not simply that evidence which the Defendant has decided of its own volition to share with Plaintiffs, the Court should allow the relief requested by this application. Via a motion to compel, Magistrate Judge Bencivengo provided leave to Plaintiffs to take the depositions at issue here. The Plaintiffs took those depositions, found important evidence from individuals previously concealed, and now wish to share that information with the Court. The Plaintiffs believe Magistrate Judge Bencivengo only provided such leave because of the facts and circumstances surrounding discovery in this case and because she was aware of how vital such testimony would be on summary judgment.

Moreover, the Plaintiffs have uncovered a case from this very Court which definitively puts to an end the faulty analysis of *Kearney* and Cal. Penal Code §§630, *et seq.* attempted in the Defendant's opening and supporting papers on summary judgment. The recently executed declaration of Mike Nelson supports Plaintiffs' claims that GC Services employees tell individuals that the Defendant records calls and it further supports the Plaintiffs position that the recording of calls by GC Services and its clients is more common than previously stated by the Defendant. As also more fully set forth above, the Plaintiffs request that the Court review the

record on this motion and make a determination of whether judgment should be entered in favor of the Plaintiffs *sua sponte* in accordance with Fed. R. Civ. P. 56.

In light of these facts and circumstances, and in conjunction with notions of fundamental fairness and due process, the Plaintiffs respectfully request that this Court provide leave to Plaintiffs as requested and that any responsive briefing be scheduled on shortened time in order to preserve the Court's previously instituted pretrial deadlines.

DATED: February 13, 2007

**SCHROTH & SCHROTH**
**LAW OFFICES OF ROBERT L. ARLEO**
**LAW OFFICES OF CHRISTOPHER MONELT**
-and-
**SHEWRY & VAN DYKE, LLP**
Attorneys for Plaintiffs, ANDREW T. THOMASSON, REBECCA J. THOMASSON, and all others similarly situated

By: */s/ Robert E. Schroth, Jr. /s/*
ROBERT E. SCHROTH, JR, ESQ.

**ADDITIONAL PLAINTIFFS COUNSEL:**

CHRISTOPHER K. MONELT, ESQ. (SBN 224478)
**LAW OFFICES OF CHRISTOPHER K. MONELT**
2044 First Avenue, Suite 200
San Diego, CA 92101-2079
Telephone: (619) 233-8034
Facsimile: (619) 233-4516

STEVEN M. SHEWRY, ESQ. (SBN 106333)
MICHELLE L. VAN DYKE, ESQ. (SBN 171477)
**SHEWRY & VAN DYKE, LLP**
402 West Broadway, Suite 810
San Diego, CA 92101-8504
Telephone: (619) 236-9864
Facsimile: (619) 233-1002