# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW T. THOMASSON, REBECCA J. THOMASSON, MACDONALD P. TAYLOR JR., and CHENOA R. TAYLOR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>GC SERVICES LIMITED PARTNERSHIP, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 05cv0940-LAB (CAB)<br><br>**ORDER DENYING PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR LEAVE TO FILE MOTIONS FOR RECONSIDERATION, WITH ADMONITION**<br><br>[Dkt No. 196] |

By Order entered July 16, 2007 in this Fair Debt Collection Practices Act putative class action, this court granted defendant GC Services Limited Partnership's ("GC Services") Motion For Summary Judgment and denied as moot both defendant's Motion For Limitation On Communications With Putative Class and plaintiffs' Motion To Certify Class. Dkt No. 192. A Clerk's Judgment was entered in GC Services' favor the same day. Dkt No. 193. On July 30, 2007, plaintiffs filed this *Ex Parte* Application For Leave To File After Judgment And Pursuant To FRCP 59(e) A Motion To Reconsider Orders: (1) Denying Motion For Leave To File Second Amended Complaint; (2) Granting Defendant's Motion For Summary Judgment; and (3) Denying As Moot Plaintiffs' Motion to Certify Class ("Application"). Dkt No. 196. The Application seeks reconsideration of the enumerated Orders on purported grounds of "newly discovered evidence" or alternatively "facts and circumstances not previously shown," clear error committed by the court, "manifest injustice" to Plaintiffs and others, and "unusual circumstances discernable from the record. . . . " Appl. 3:16-21.

The Application summarizes plaintiffs' arguments for reconsideration with the aim of setting aside the Judgement pursuant to FED. R. CIV. P. ("Rule") 59(e): (1) discovery disputes prevented the timely presentation of certain deposition testimony from two managers of GC Services' credit collection departments and constitutes "newly discovered" evidence; (2) the court committed "clear error" in denying on November 2, 2006 leave to add two additional putative class representative plaintiffs in a Second Amended Complaint who, the two named plaintiffs contend, could have saved the case from dismissal on standing grounds; (3) if the court determines upon reconsideration it clearly erred in denying the Motion For Leave To File Second Amended Complaint, "then it necessarily was also error for the Court to deny as moot Plaintiffs' Motion For Class Certification;" (4) Mr. Thomasson's deposition testimony that "'Ashley' admitted to him during a telephone conversation that said conversation was being monitored by an unknown third auditor" created a triable issue of material fact adequate to prevent summary judgment;[1] and (5) "The proceedings were so infected with irregularity reconsideration is warranted on that basis alone." Appl. pp. 3-5.

GC Services filed procedural Opposition to the *Ex Parte* Application, urging the court to deny the Application on untimeliness grounds.[2] Defendant argues any Rule 59(e) motion would be untimely, as the *Ex Parte* Application required under this court's Standing Order[3] to obtain prior authorization to file a motion for reconsideration is the only filing that technically can meet the 10-day

---

[1] Plaintiffs overstate the testimony. Mr. Thomasson asked Ashley if someone was listening in on the conversation. He testified **she said she did not know**, but someone might be. Shroth Decl. Exh. A, A. Thomasson Depo. foll. p. 32, ll. 8-13; *see also* FAC ¶¶ 26-28. He also testified **he thought Ashley said** in the course of that conversation "they record or monitor all of them or . . . something to that effect, that, you know, they have a policy of doing that." Id. 34:2-5; *see* Order Dkt No. 192, pp. 5-6.

[2] GC Services also requested leave to oppose the Application on the merits should the court consider granting leave to move for reconsideration of the challenged Orders.

[3] The Standing Order alerts the parties reconsideration motions are disfavored absent a showing of "new evidence, a change in controlling law, or establishes that the Court committed clear error in the earlier ruling." Standing Order ¶ 4.j. "No motion for reconsideration will be filed without leave of Court." Id. Leave of court is obtained as follows: "[T]he party desiring to move for reconsideration shall file an *ex parte* application for leave to file a motion to reconsider. The *ex parte* application shall be accompanied by a declaration as required by Civil Local Rule 7.1(i)(1). The *ex parte* application shall contain **a brief summary of the argument the party intends to present in a motion for reconsideration *and shall not exceed five pages in length***. Upon review of the *ex parte* application, the Court will either issue an order granting leave to file a motion for reconsideration, including a briefing schedule, or an order denying leave." Standing Order ¶ 4.j (emphasis added).

deadline prescribed by Rule 59(e) under which plaintiffs seek to proceed.[4] The court **OVERRULES** the untimeliness argument and construes the Application, filed within 10 days of the entry of Judgment, as a timely preservation of a Rule 59(e) motion with respect to the summary judgment ruling.[5] *See* Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989). GC Services also objected plaintiffs' Application violates the Standing Order's restrictions as to the maximum length of requests for leave to file for reconsideration. The 5-page Application was accompanied by an 8-page Declaration Of Robert E. Schroth, Jr., Esq. and the 14-page Arleo Declaration. GC Services asks the court to strike the 14-page Arleo Declaration on that basis.[6] The court **DENIES** GC Services request to strike the Arleo Declaration because its oratorical excess informs the disposition of the Application.

As a threshold matter, the court denied plaintiffs Motion For Leave To File Second Amended Complaint by Order entered November 2. 2006. Dkt No. 154. To be timely, any request for reconsideration of that Order had to be filed no later than 30-days after it was entered. *See* Civ. L. R. 7.1(i)(2) (imposing time limits for reconsideration of *prejudgment* motions). The court declines to entertain so belated a request, and **DENIES** reconsideration.

Similarly, the court finds the dismissal of plaintiffs' Motion To Certify Class on March 16, 2007 in connection with the resetting of case management dates to be untimely challenged at this late date, and in consideration of the summary judgment ruling disposing of the putative class action in its entirety, any class certification motion has been mooted. In addition, the March 16, 2007

---

[4] Rule 59(e) of the Federal Rules of Civil Procedure ("Rule") provides: "(e) Motion To Alter Or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

[5] A local requirement that leave of court be obtained before motions for reconsideration may be filed "need not be read to conflict with any other rule of civil procedure." Hinton v. Pacific Enterprises, 5 F.3d 391, 395 (9th Cir. 1993). The Application expressly invokes Rule 59(e), and the court declines to construe local rules regarding motions for reconsideration to conflict with or to foreclose that relief. *See* Hinton, 5 F.3d at 395. "A motion filed within the ten-day period set by Federal Rule 59 may be construed as a Rule 59 motion though labeled according to another federal rule [citation]; to a local rule, *see* Bestran Corp. v. Eagle Comtronics, Inc., 720 F.2d 1019 (9th Cir. 1983); or not labeled at all [citation]." Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989).

[6] The Standing Order limits to a total of 5-pages any application for reconsideration of an Order. Standing Order ¶ 4.j. Plaintiffs' Application totals 27 pages comprised of a 5-page Application summarizing plaintiffs' positions, Mr. Schroth's 8-page Declaration, and Mr. Arleo's 14-page Declaration. Plaintiffs' counsel represents plaintiffs' Application was purportedly kept short to avoid the court's prior criticism that multiplication of proceedings has plagued their presentation of their case. Schroth Decl. ¶ 19. However, the excuse of length control does not excuse the vagueness of the asserted bases for the reconsideration requests.

Order dismissing the class certification motion was particularly appropriate as that motion was predicated on class definitions from the rejected Second Amended Complaint, and the denial was without prejudice.[7] Finally, the court also declines to "reconsider" the rejection of class certification within the scope of the First Amended Complaint's surviving definitions because one basis for the granting of summary judgment was the court's finding these named plaintiffs lack standing to pursue the claims presented, on their on behalf or on behalf of anyone else.[8] The court accordingly evaluates plaintiffs' Application under Rule 59(e) only as it pertains to the summary judgment ruling, even though the court need not have reached issues other than the standing issue.

"A district court may reconsider its grant of summary judgment under [Rule 59(e)], (motion to alter or amend a judgment) . . . ." School Dist. No. 1J, Multonomah County v. ACandS, Inc., 5 F.3d 1255, 1266 (9th Cir. 1993).

> While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." [Citation.]. . . . Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with **newly discovered evidence**, committed **clear error**, or if there is an **intervening change in the controlling law**." [Citation].

Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (emphasis added) (Rule 59(e) motions intended to alter a Judgment may not be used to present for the first time arguments or evidence that could reasonably have been presented earlier in the litigation); Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 887, 890 (9th Cir. 2000); School Dist. No. 1J, 5 F.3d at 1266 (motions to alter or amend judgments are warranted only where: (1) newly discovered evidence is presented; (2) the court

---

[7] The court also stated at that time a new class certification motion hearing and briefing schedule would be set in due course if appropriate. Dkt No. 186. The grant of summary judgment on July 13, 2007 terminated the putative class action. Moreover, plaintiffs are disingenuous in purporting now to belatedly have the court reconsider denial of that motion because plaintiffs did not move to file the Second Amended Complaint until several days after they filed the Motion To Certify Class. Leave to file the Second Amended Complaint was denied, rendering the motion content immaterial in the actual procedural posture of the case. Plaintiffs also disingenuously suggest the court acted solely on its own initiative, whereas the parties in fact acknowledged any class certification motion would have to be reworked to conform to the operative pleading, hence the court's denial *without prejudice* to the bringing of a future motion should the case survive summary judgment for defendant. *See* fn 10, below.

[8] Plaintiffs contend that *had they been granted leave* to file a Second Amended Complaint, they *would have* added two other named plaintiffs who *would have* had standing to represent a class certifiable in this litigation. The court does not deal in hypotheticals about what might have been.

"committed clear error or the initial decision was manifestly unjust;" or (3) there is an intervening change in controlling law); *see* <u>Sissoko v. Rocha</u>, 440 F.3d 1145, 1153-54 (9th Cir. 2006).

Plaintiffs' Application identifies no change in controlling law. They do not convince the court they can demonstrate "manifest injustice" occurred in the granting of summary judgment, despite the invective in counsel Robert L.Arleo's supporting Declaration. The only remaining ground that could support granting these plaintiffs leave to set aside or modify the Judgment is "clear error." However, rather than succinctly identify any discrete mistakes, plaintiffs' arguments instead advance vague contentions of sweeping, wholesale, and generalized error. The Application foreshadows that were leave granted to file motions to reconsider, plaintiffs would reargue the entire breadth of their previously rejected contentions based solely on their disagreement with outcome. The Schroth Declaration identifies ten general areas and theories he states plaintiffs "will discuss" in their post-judgment reconsideration motions if the Application were granted:

(1) Upon review in a "fully briefed motion for reconsideration" of plaintiffs' facts and analysis, plaintiffs argue "the Court would be compelled to reach a different conclusion in ruling upon the Defendant's motion for summary judgment." Schroth Decl. ¶ 9. However, their proposed "facts and analysis" would take the court beyond "reconsideration" of its summary judgment ruling to admit different evidence and argument than was before the court in reaching the challenged result, a proposition the court **REJECTS**.[9] If the court erred, it must be demonstrated based on the matters properly presented in reaching the result, not on a modified set of facts.

(2) Plaintiffs propose to demonstrate on reconsideration of the denial of their motion to file a Second Amended Complaint that the *proposed new plaintiffs* "undeniably had standing" to pursue this putative class action. As noted above, the court **REJECTS** as untimely any attempt now to revisit that nine-month-old ruling and to retroactively alter the posture of the case from its circumstances when defendant was granted summary judgment.

---

[9] Plaintiffs note the court rejected their February 13, 2007 *ex parte* request to supplement their opposition to summary judgment -- after the motion was fully briefed and under submission -- with new points and authorities, additional authority, and additional evidence from deposition testimony of two former GC Services managers and a Mr. Mike Nelson, identified in the request as a San Diego resident who had recently contacted plaintiffs' counsel to complain about GC Services' practices and who provided counsel with a declaration about call recording. The court denied the request for the reasons state in its February 21, 2007 Order (Dkt No. 183), and declines post-judgment to revisit the exercise of that discretion.

(3) "If leave to file a motion to reconsider [the summary judgment ruling] is granted, Plaintiffs will also discuss whether the Court's rulings on standing were correct. Plaintiffs aver they were not and clear error is present." Schroth Decl. ¶ 11. Such a bare assertion of "clear error" does not inform the court of the nature of its purported error on what authority. A party's mere disagreement is insufficient to convince the court it would probably reach a different result on reconsideration.

(4) Similarly, the bootstrapped argument that "[b]ecause the Court's rulings on standing were [purportedly] incorrect, it was clear error to use those rulings as a basis to deny as moot Plaintiffs' motion for class certification" (Schroth Decl. ¶ 10) merely begs the question. Even had the court not rejected reconsideration of denial of the class certification motion for the reasons discussed above, plaintiffs offer no insight into the manner in which they would demonstrate how the court may have erred in the standing rulings, and the court finds they simply disagree with the result.

(5) Plaintiffs want to re-argue their position disputed material facts purportedly should have precluded summary judgment in a reconsideration motion "discuss[ing] whether the Court[] incorrectly ruled there existed no genuine disputes of material fact. . . ." Schroth Decl. ¶ 13. If plaintiffs believe they are entitled to a *de novo* review of the summary judgment motion in its entirety, as their unfocused criticism of the result suggests, they may present their contentions to a higher court. Moreover, the time for plaintiffs to have isolate and directed the court's attention to discrete material facts in dispute supported by the evidence was in their initial opposition to summary judgment, not on reconsideration. Plaintiffs are mistaken to suggest the mere volume of material somehow establishes the existence of triable issues of discrete material fact. The court declines to revisit every ground and page of the parties' voluminous filings. *De novo* review of district court rulings are reserved for courts of appeals.

(6) Plaintiffs also seek to "present argument that the Court committed clear error by refusing to suspend the proceedings until after the assigned Magistrate Judge resolved discovery issues put before the Court by Plaintiffs." Schroth Decl. ¶ 14. However, motions for summary judgment may be filed and granted at any time in the litigation after a reasonable period for discovery.[10] GC Services

---

[10] The procedural history of this case is revealing. Excerpting pertinent history from among the 200 docket entries in this case: Plaintiffs filed their complaint May 4, 2005. They filed their First Amended Complaint August 17, 2005, adding and dropping named plaintiffs. The Early Neutral Evaluation was held December 2, 2005. The January 9, 2006 Case Management Order, among other things, set discovery cut-off

filed its Motion For Summary Judgment on October 26, 2006, nearly 18 months after plaintiffs initiated this litigation. The court acknowledges from the case docket much time was expended in acrimonious disputes and motions to compel, and case management deadlines were modified accordingly. Nevertheless, the contentiousness of the discovery process does not foreclose any party from attempting a Rule 56 showing this far into the litigation. Plaintiffs sought not to stay the proceedings, but rather to augment the briefing incrementally with respect to their own positions alone.

(7) Plaintiffs aver they would use an opportunity to file a motion for reconsideration to "discuss whether the Court's rulings so misconstrued the law that they amount to clear error." Schroth Decl. ¶ 15. They sweepingly identify as the alleged errors of law "the California Invasion of Privacy Act and the federal Fair Debt Collection Practices Act," purportedly causing "in turn, misappli[cation of] the law to the facts in this case." Id. No such generality offers the court any principled basis to entertain yet more imprecise argument in a second-bite-at-the-apple attempt to oppose summary judgment in the guise of reconsideration briefing with a goal to have the Judgment set aside.

(8) Plaintiffs contend they would "discuss whether the Court's ruling on evidence and evidentiary objections were correct," averring "that *many of the [unspecified] rulings* contain clear

---

for October 5, 2006. On May 30, 2006, the court denied defendant's Motion For Partial Judgment On The Pleadings. Numerous discovery disputes have peppered this case, causing the Magistrate Judge to devise procedures for bringing such disputes to the court's attention as memorialized in her June 2, 2006 Order, including warnings to plaintiff's *pro hac vice* counsel, Mr. Arleo, to discontinue discourteous and disrespectful behavior before the court or else face sanctions. Contentious discovery disputes continued. A Protective Order issued in the case, resulting in am extraordinarily broad portion of the evidentiary record presented under seal. Plaintiffs moved for class certification on June 30, 2006 as if new named plaintiffs sought to be added via a Second Amended Complaint were already part of the action. They did not file their Motion For Leave To File Second Amended Complaint until July 5, 2006. On August 23, 2006, the court denied plaintiffs' *ex parte* application for leave to supplement their briefing in support of the Class Certification motion, vacating the September 11, 2006 hearing of that motion. On November 2, 2006, the court denied plaintiffs' motion for leave to file a Second Amended Complaint as untimely, but elaborated in the 7-page Order the reasons leave would also be denied on the merits. GC Services moved for summary judgment on October 26, 2006. By Order entered February 21, 2007, after that motion was fully briefed and had been under submission for three months for decision on the (voluminous) papers (replete with acrimonious and unprofessional characterizations between opposing counsel as noted in the November 14, 2006 Order taking the matter under submission), the court denied plaintiffs' *ex parte* application to augment its opposition points and authorities and its evidence, admonishing plaintiffs to desist their "piecemeal" briefing approach. By Order entered March 16, 2007, the court continued pre-trial dates and denied without prejudice plaintiffs' pending Class Certification Motion **"in consideration of the parties' acknowledgment additional briefing of the putative class issues will likely be needed,"** and indicating a new class certification motion hearing and briefing schedule would be addressed in due course, noting the Class Certification Motion being denied was predicated on a Second Amended Complaint rather than on the operative pleading, the First Amended Complaint. Dkt No. 186. Any class certification motion became a moot issue as stated in the July 16, 2007 Order granting summary judgment for GC Services. Dkt No. 192 (emphasis added).

1  error and therefore rise to the level of an abuse of discretion." Schroth Decl. ¶ 16 (emphasis added).
2  Considering over eleven pages of the 52-page Order at issue addresses each of the multitude of
3  evidentiary objections presented by the parties before reaching the merits of the summary judgment
4  motion, so vague and vast a challenge again suggests no principled basis on which to reopen
5  consideration of any discrete portion of the record on grounds supportive of Rule 59 relief.

(9) Plaintiffs want the opportunity to argue open-endedly that "manifest injustice to Plaintiffs" resulted from the "irregularities" of the "proceedings conducted before this Court." Schroth Decl. ¶ 17. The intemperate content of the Arleo Declaration foreshadows and provides the court with considerable insight into the likely content of the filings it might expect were leave to file Motions For Reconsideration granted. He expounds at length, among other things, his opinion of this court's purported incompetence, further obfuscating any argument on the merits. For example, Mr. Arleo disrespectfully excoriates the court's reasoning, results, and process. He repeatedly, most vehemently, and quite mistakenly accuses this court of bias and prejudice against his clients, as well as judicial misconduct in the manner of its rulings, blatant and intentional misapplication of legal standards, and the like.[11] Mr. Arleo summarizes:

> [T]he Friday the 13th Order is patently baseless, unjust and without any merit in fact or law. As set forth above, it is my contention that the Court herein is absolutely and undeniably biased against the Plaintiffs and views each as debtors who should simply shut up and pay up.
> . . .
> Unfortunately, the degree of bias and prejudice evidenced in the Friday the 13th Order has compelled me to advise this Court that the Plaintiffs herein have authorized me to request that: (a) the Court herein *sua sponte* vacate its Friday the 13th Order; and (b) Your Honor recuse himself from the herein action and direct the Clerk of Court herein to randomly assign this case to another district judge.

Arleo Decl. ¶¶ 35, 36.

---

[11] Taking a few of the multiple examples from the Arleo Declaration, he accuses the court, *inter alia* of: "prejudice;" "bias;" going to "shocking lengths. . . to rid its calendar of an unwanted case;" the construing of plaintiff's *actual contention* they were entitled to summary judgment in their favor, *as stated in their opposition papers*, as "patently ridiculous and simply further clear and unmistakable evidence of the Court's consistent pattern of bias levied against the Plaintiffs;" "the Court is undeniably biased against the Plaintiffs herein;" contrary to the court's assertion in the Order signed July 13, 2007, any professional or lay person or "high school student, or the parent of a newborn infant" hoping the child becomes "a pre-law student" would conclude from Order pages 29 through 39 "the Court herein absolutely, unequivocally, and undeniably assessed the credibility of the testimony provided by the Defendant's managers;" the court purportedly manifested "clear and undeniable disdain . . . for the Plaintiffs;" certain of the court's conclusions are "unfathomable" and "especially ridiculous;" and "recklessness."

1  The court denies both of Mr. Arleo's requests as wholly improper and unwarranted.

2  (10) Plaintiffs finally assert they would also discuss in a motion for reconsideration "whether the proceedings conducted before this Court were so irregular and filled with error as to constitute cumulative error requiring that the disputed orders be vacated as they comprise in aggregate a manifest injustice to Plaintiffs." Schroth Decl. ¶ 18. The court disagrees and finds allegations of that nature must be addressed to and assessed by a reviewing court. If reversible error occurred, this court respectfully awaits corrective instructions from that court.

For the reasons set forth above, and in consideration of plaintiffs' extravagant attack on this court's integrity, misstatements of portions of the court's rulings, and misrepresentations of the record advanced in support of their *Ex Parte* Application, the Application for leave to move for reconsideration in the hope of vacating the Judgment is **DENIED**. In particular, **IT IS HEREBY ORDERED:**

1. Plaintiffs' *Ex Parte* Application for reconsideration of the November 2, 2006 Order denying Motion For Leave To File Second Amended Complaint is **DENIED AS UNTIMELY**.

2. Plaintiffs' *Ex Parte* Application for reconsideration of the Order dismissing the motion for class certification without prejudice is **DENIED AS UNTIMELY, MOOT, AND UNMERITORIOUS** because predicated on an amended pleading never authorized for filing, with any renewed Motion To Certify Class necessarily foreclosed by the summary judgment result.

3. Plaintiffs' *Ex Parte* Application for reconsideration of the Order Granting Summary Judgment is **DENIED**.

4. The "requests" in the Arleo Declaration are **DENIED**. The undersigned District Judge need not "recuse" himself. Judgment has been entered, the case is closed, no further proceedings are contemplated here, and accusations this court is biased or harbors prejudice against these plaintiffs or any others similarly situated is wholly unfounded.

5. Robert L. Arleo, Esq., a New York attorney, was granted *pro hac vice* status to represent plaintiffs in this action. He has exhibited extraordinary disrespect to the undersigned District Judge as well as to the Magistrate Judge assigned to this case during the conduct of this litigation. Mr. Arleo is hereby admonished, should he make any future application to appear *pro hac vice* in any matter

Case 3:05-cv-00940-JAH-KSC   Document 201   Filed 08/09/07   PageID.2930   Page 10 of 10

1  which may be assigned to the undersigned District Judge, he shall accompany the application with a
2  copy of this Order and shall inform the Clerk of Court prior authorization of this court is required
3  before Mr. Arleo will be granted any future *pro hac vice* privileges.
4      **IT IS SO ORDERED**.
5  DATED: August 9, 2007

          *[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 10 -      05cv0940